

# U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Bardavid, Joshua E.
Bardavid Law
277 Broadway, Suite 1501
New York NY 10007

**DHS/ICE Office of Chief Counsel - NYC**
**26 Federal Plaza, 11th Floor**
**New York NY 10278**

Name: YAW TOTIMEH, DAVID

A 208-125-369

**Date of this Notice: 03/11/2026**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam: Docket

EOIR-000001



# U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

YAW TOTIMEH, DAVID
1694 DAVIDSON AVENUE
APT 4A
BRONX NY 10453

DHS/ICE Office of Chief Counsel - NYC
26 Federal Plaza, 11th Floor
New York NY 10278

Name: YAW TOTIMEH, DAVID

A 208-125-369

**Date of this Notice: 03/11/2026**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam: <u>Docket</u>

EOIR-000002

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

David YAW TOTIMEH, A208-125-369

Respondent

**FILED**
Mar 11, 2026

ON BEHALF OF RESPONDENT: Joshua E. Bardavid, Esquire

IN REMOVAL PROCEEDINGS
On Appeal from a Decision of the Immigration Court, New York, NY

Before: Terrien, Temporary Appellate Immigration Judge[1]

TERRIEN, Temporary Appellate Immigration Judge

The respondent, a native and citizen of Ghana, appeals the Immigration Judge's December 6, 2019, decision denying his applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A), and protection under the regulations implementing the Convention Against Torture.[2] The appeal will be dismissed.

We review the findings of fact, including the determination of credibility, made by the Immigration Judge under the "clearly erroneous" standard. 8 C.F.R. § 1003.1(d)(3)(i). We review all other issues, including issues of law, discretion, or judgment, under the de novo standard. 8 C.F.R. § 1003.1(d)(3)(ii).

As an initial matter, we will affirm the Immigration Judge's adverse credibility finding (IJ at 2-3), which is supported by "specific, cogent reasons" derived from the record. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 77 (2d Cir. 2018). At his individual hearing, the respondent testified that his name was "David Yaw Totimeh" and that he was born in 1982 (Tr. at 32, 39). During direct examination, however, he explained that this identity—under which he had filed his asylum application and was appearing in Immigration Court—was not his true identity, and that he had traveled to the United States under this name using fraudulent travel documents prepared by a friend who is also named Totimeh (IJ at 2-3; Tr. at 40-47, 51-53, 78-81; Exh. 1-A; Exh. 2 at 1; Exh. 3 at 1). The respondent presented an English language copy of what he claimed was his own Ghanaian birth certificate for an individual named "Alhassan Mohammed Yaro" born in

---

[1] Temporary Appellate Immigration Judges sit pursuant to appointment by the Attorney General. *See generally* 8 C.F.R. § 1003.1(a)(1), (4).

[2] The Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17; 8 C.F.R. § 1208.18(a) (2020).

A208-125-369

1979 to the court, but did not offer the original document for forensic inspection and said this document had also been procured by Totimeh, the same individual who fabricated his travel documents (IJ at 2-3, 5; Tr. at 45-47, 82-87; Exh. 7).

Considering the totality of the circumstances and all relevant factors, the Immigration Judge properly based the credibility determination on the respondent's false representation to the court regarding his identity, which necessarily goes to the heart of his claim. *See* INA § 208(b)(1)(B)(iii) (providing that the trier of fact may properly consider any "falsehoods" in the record), 8 U.S.C. § 1158(b)(1)(B)(iii). As we explained in *Matter of O-D-*, 21 I&N Dec. 1079 (BIA 1998), an alien's identity is central to his or her ability to establish nationality and thus refugee status. While the respondent is correct that "[t]he use of fraudulent documents to escape the country of persecution itself is not a significant adverse factor," *Matter of Pula*, 19 I&N Dec. 467, 474 (BIA 1987), an Immigration Judge is permitted to draw an adverse inference about an alien's credibility when such a fraudulent document is entered into evidence during the course of an Immigration Court proceeding to establish an element of his claim, such as his identity, nationality, or citizenship (Respondent's Br. at 7-8). *See Matter of O-D-*, 21 I&N Dec. at 1081-82 (affirming that a fraud on the court that "pertains to a central element of [an applicant's] claim, i.e., his identity, . . . significantly undermines the credibility of his request for asylum"). Thus, if proof of identity is lacking, or if the evidence presented on this issue is not credible, the underlying claim may fail. *Id.* at 1081. *See also Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) (noting that "a single false document . . . may . . . infect the balance of the alien's uncorroborated or unauthenticated evidence").

On this record, the Immigration Judge did not clearly err in finding that the respondent failed to establish his identity and consequently lacked credibility (IJ at 2-3). *See, e.g., Qihua Jiang v. Gonzales*, 231 F. App'x 81, 83 (2d Cir. 2007) (affirming the Immigration Judge's adverse credibility determination based on the alien's failure to establish his identity, where the notarial birth certificate he submitted to establish his identity was unauthenticated and questionably obtained). The respondent argues that his use of a fraudulent identity should be excused because he disclosed both identities to United States immigration officials (Respondent's Br. at 7-8). However, he did not apply for relief and protection in Immigration Court under his claimed given name of "Alhassan Mohammed Yaro" but instead continued to use an admittedly fraudulent identity to pursue his applications and listed his claimed given name as an alias (Exh. 2 at 1; Exh. 3 at 1). We disagree with the respondent that that the Immigration Judge impermissibly conflated credibility and corroboration (Respondent's Br. at 7), as his use of an admittedly false identity throughout his proceedings "creates serious doubts regarding the respondent's overall credibility." *Matter of O-D-*, 21 I&N Dec. at 1083.

2

EOIR-000004

A208-125-369

Overall, this single falsehood adequately supports the Immigration Judge's credibility assessment. Consequently, we need not consider the respondent's arguments with respect to corroboration (Respondent's Br. at 8-11). *See INS v. Bagamasbad*, 429 U.S. 24, 25-26 (1976) (stating courts generally do not need to assess issues that are unnecessary to the results reached).

Alternatively, we will affirm that the respondent did not suffer harm rising to the level of persecution on account of a protected ground or meet his burden to establish a well-founded fear of future persecution. *See* 8 C.F.R. §§ 1208.13(b), 1208.16(b).

First, the respondent did not suffer cumulative harm rising to the level of persecution (IJ at 3-4; Respondent's Br. at 13). The respondent claims he and his brother had an altercation at a mosque in 2012 over their father's will, during which his brother and others beat him (IJ at 4-5; Tr. at 57-64). When the respondent and his brother sought to resolve the dispute with an Imam in 2014, his brother beat him and cut his face with a knife (IJ at 4; Tr. at 75-77). On reviewing the record, there is insufficient evidence that these harms cumulatively rose to the level of persecution. *See, e.g., Benny v. Holder*, 463 F. App'x 44, 46 (2d Cir. 2012) (finding no error in the Board's determination that being beaten and cut with a knife did not rise to the level of persecution). There is no evidence that any of his attackers were operating in an official capacity; and both attacks happened in a public place, not in the context of an arrest or detention. *See Beskovic v. Gonzales*, 467 F.3d 223, 226 (2d Cir. 2006) (explaining that the degree of harm "must be assessed with regard to the *context* in which the mistreatment occurs"); *e.g., Ramirez-Galvez v. Barr*, 821 F. App'x 19, 22 (2d Cir. 2020) (finding that two beatings causing injuries, coupled with a death threat, did not cumulatively constitute persecution). The respondent did not identify any material facts that the Immigration Judge did not consider in reaching this conclusion (Respondent's Br. at 13-14). *See Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) (providing that only "some indication that the [Immigration Judge] considered material evidence supporting [an alien's] claim" is needed in the decision (citation omitted)).

Second, the Immigration Judge correctly determined that the respondent was not attacked on account of his religion or his membership in the proposed particular social groups, "descendants of Mohammad Yaru" and "members of the nuclear family of Mohammad Yaru" (IJ at 4-5; Tr. at 112-113).[3] INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A); *see also Matter of M-E-V-G-*, 26 I&N Dec. 227, 251 (BIA 2014); *Matter of W-G-R-*, 26 I&N Dec. 208, 223-24 (BIA 2014). We discern no clear error in the Immigration Judge's determination that the respondent's brother was centrally motivated to harm him based on a personal dispute over the use of the land in their father's will, rather than on account of any protected characteristic he may possess (IJ at 4-5; Tr. at 53-54). *See Zelaya-Morena v. Wilkinson*, 998 F.3d 190, 199 (2d Cir. 2021) (stating that "fears of retribution over purely personal matters . . . do not constitute cognizable bases for granting

---

[3] While the respondent now states that he seeks asylum based on his nationality (Respondent's Br. at 16), he did not check the box indicating that he seeks asylum on account of his nationality in his amended Application for Asylum and for Withholding for Removal (Form I-589) and did not raised a claim based on his nationality before the Immigration Judge (Exhs. 3, 8). Therefore, this issue has not been adequately preserved for appeal. *See Matter of Garcia-Reyes*, 19 I&N Dec. 830, 830 (BIA 1988) (discussing issue preservation).

3

A208-125-369

asylum" (citation and quotes omitted)); *Matter of N-M-*, 25 I&N Dec. 526, 532 (BIA 2011) (explaining that a persecutor's motive is a finding of fact reviewed by the Board for clear error).

The Immigration Judge permissibly found that the respondent's religious beliefs, or lack thereof, were not a central reason for his harm (IJ at 5). *See Garcia-Aranda v. Garland*, 53 F.4th 752, 757 (2d Cir. 2022) (finding that a proposed protected ground cannot be a "minor, incidental, or tangential reason for the harm"). The record demonstrates that the respondent's brother attacked him because the respondent disagreed with giving their father's land to a mosque (IJ at 5; Tr. at 54-60, 67, 71, 74). While the respondent claims on appeal that he was persecuted because his brother believed he was no longer a Muslim (Tr. at 60; Respondent's Br. at 16-17), the Immigration Judge correctly observed that the respondent did not stop practicing Islam until 2014, 2 years after the land dispute with his brother began and after he was first attacked in 2012 (IJ at 3, 5; Tr. at 67). The record supports the Immigration Judge's conclusion that on both occasions, the respondent's brother attacked him over a disagreement with what to do with their father's land, and that any religious animus was incidental to that motivation (IJ at 5; Tr. at 54-60, 67, 71, 74).[4] *See Cooper v. Harris*, 581 U.S. 285, 293 (2017) (holding that, where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous); *see also Zelaya-Morena v. Wilkinson*, 998 F.3d at 199.

Additionally, the respondent has not established that his proposed family-based groups are socially distinct in the society in question (IJ at 4-5).[5] *See Quintanilla-Mejia v. Garland*, 3 F.4th 569, 588 (2d Cir. 2021) (explaining that it is the respondent's burden to show that "the people of a given society would perceive a proposed group as sufficiently separate or distinct" (quoting *Matter of M-E-V-G-*, 26 I&N Dec. at 241)). *L-E-A- II*, 27 I&N Dec. at 594 (stating that a general recognition of the societal importance of family units "says nothing about whether a *specific* nuclear family would be recognizable by society at large" (citation and quotes omitted)). While his appellate brief urges us to undergo a "case-by-case" assessment of his groups' validity, *see Ordonez Azmen v. Barr*, 965 F.3d 128, 135 (2d Cir. 2020), he has not identified any objective evidence or made arguments explaining how these individuals are socially distinct within Ghana (Respondent's Br. at 19-21). Moreover, considering that he has not proved his identity, he cannot establish his membership in his proposed groups (IJ at 2, 4-5). *Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189, 191 (BIA 2018) (explaining that "even if a particular social group is deemed cognizable, an applicant must establish her membership in that group").

---

[4] To the extent that the respondent relies on decisions from other circuits, the respondent's case arises within the jurisdiction of the United States Court of Appeals for the Second Circuit, and we are not bound by decisions from other circuits. *See, e.g.*, *Matter of Anselmo*, 20 I&N Dec. 25, 31 (BIA 1989).

[5] We reject the respondent's contention that these proceedings should be remanded because the Immigration Judge's decision relied on *Matter of L-E-A-*, 27 I&N Dec. 581 (A.G. 2019) ("*L-E-A- II*"), which was later vacated (Respondent's Br. at 19). *See Matter of L-E-A-*, 28 I&N Dec. 304 (A.G. 2021) ("*L-E-A- III*"). On September 2, 2025, the Attorney General vacated *L-E-A- III* and instructed adjudicators to adhere to *L-E-A- II*. *Matter of R-E-R-M- & J-D-R-M-*, 29 I&N Dec. 202 (A.G. 2025). Consequently, *L-E-A- II* is valid, binding precedent in this case.

4

A208-125-369

Lastly, the respondent has not established an objectively reasonable well-founded fear of persecution from his brother in Nima, Ghana. Where, as here, a respondent fears harm at the hands of private actors, he or she bears the burden of establishing that it would not be reasonable to relocate. 8 C.F.R. §§ 1208.13(b)(3)(i), 1208.16(b)(3)(i). The respondent previously relocated 3 hours away from Nima in Adenta for 2 years without his brother harming him (IJ at 4). *See Singh v. Sessions*, 706 F. App'x 732, 734 (2d Cir. 2017) (noting that the fact that the alien had been able to relocate within India and live without harm undermined his claimed fear of future persecution). The respondent argues the Immigration Judge did not expressly state that it would be "reasonable" for him to relocate away from Nima to avoid his brother (Respondent's Br. at 11-13). *See* 8 C.F.R. §§ 1208.13(b)(2)(ii), 1208.16(b)(2)(ii). However, he does not challenge the Immigration Judge's finding that the second altercation occurred not because his brother sought him out after he relocated, but because he voluntarily returned to Nima to confront his brother and resolve the land dispute (IJ at 4). *See, e.g., Kandel v. Barr*, 832 F. App'x 67, 70-71 (2d Cir. 2020) (agreeing that the respondent had not shown relocation was unreasonable where he lived unharmed in one city for approximately a year, and had not shown that the alleged persecutors would find him there, since they did not previously find him while he was living there); *Matter of F-B-A-*, 29 I&N Dec. 456, 460 (BIA 2026) (finding prospective internal relocation to be reasonable where there was " insufficient evidence demonstrating [the respondent's] family maintains an interest in locating her more than 2 years after they last threatened her"). The respondent has not explained his appellate statement that he "could not afford to remain in hiding" (IJ at 4; Respondent's Br. at 13). *See Singh*, 706 F. App'x at 735 (illustrating that it is the alien's burden to clarify his statements). Overall, the record does not show that the respondent's fear of countrywide persecution by his brother is objectively reasonable. *See Huang v. U.S. I.N.S.*, 421 F.3d 125, 129 (2d Cir. 2005) (holding that a fear is not objectively reasonable if it lacks "solid support" in the record).

Given the foregoing, the respondent has not satisfied his burden of proof for asylum or withholding of removal. *See* INA §§ 208(b)(1)(B)(i) and 241(b)(3)(C), 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(C); 8 C.F.R. §§ 1208.13(a), 1208.16(b)(2); *Quituizaca v. Garland*, 52 F.4th 103, 114 (2d Cir. 2022).

Finally, we affirm the Immigration Judge's denial of protection under the CAT (IJ at 6-7; Respondent's Br. at 21-23). The respondent has proffered insufficient objective evidence that he is likely to be tortured in the future by private actors in Ghana with the consent or acquiescence of the Ghanaian government (IJ at 6-7). *See* 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1)-(2); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 185 (2d Cir. 2004). While the respondent claims on appeal that the Immigration Judge "made no findings about CAT" (Respondent's Br. at 22-23), the Immigration Judge explicitly found that he did not establish the necessary state action (IJ at 6). This finding is supported by the respondent's testimony that he never reported the first incident and only asked Ghanaian police for advice before confronting is brother a second time, not afterwards (IJ at 5-6). *See Martinez De Artiga v. Barr*, 961 F.3d 586, 592 (2d Cir. 2020) (holding that an applicant for CAT relief must show "government officials kn[e]w of or remain[ed] willfully blind to an act and thereafter breach[ed] their legal responsibility to prevent it" (citations and quotes omitted)); *e.g., Lemus v. Barr*, 781 F. App'x 40, 42 (2d Cir. 2019)

5

EOIR-000007

A208-125-369

(agreeing that police telling the respondent there was nothing they could do did not establish their acquiescence where she gave them insufficient information and reported only one of three incidents to police). The respondent has not identified any material facts or factors not considered in the Immigration Judge's decision (Respondent's Br. at 22). Consequently, he has not met his burden to prove the necessary state action or acquiesce in any past or future harm (IJ at 6-7).

Accordingly, the following order will be entered.

ORDER:. The appeal is dismissed.

NOTICE:   If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by the Department of Homeland Security, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* INA § 274D, 8 U.S.C. § 1324d; 8 C.F.R. § 280.53(b)(14).   Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a).

EOIR-000008

# MENSAJE A LOS INMIGRANTES ILEGALES: UNA ADVERTENCIA PARA LA AUTODEPORTACIÓN

## BENEFICIOS:

**Autodeportación es mas seguro.** Puede viajar bajo sus propios términos y elegir su vuelo.

**Mantenga su dinero ganado en los Estados Unidos.** Si se autodeporta como un inmigrante no criminal.

**Oportunidades de inmigración legal en el futuro.** Si se autodeporta usando la aplicación CBP Home en lugar de ser deportado por ICE.

**Posibles vuelos a casa.** Podrá ser eligible a que su vuelo sea pagado si no puede pagarlo por su cuenta.

Para más información:



SCAN ME

## Consecuencias:

**Deportación Inmediata.** Sera arrestado por DHS sin tener la oportunidad de poder hacer ningún arreglo de antemano.

**Multas y Sanciones.** Una multa de $998 por día si recibe una ultima orden de deportación y decide quedarse. Una multa de $1,000 - $5,000 si no se auto deporta después de haber dicho que si lo haría.

**Posible Encarcelamiento.** Si no se autodeporta, será sujeto a tiempo en prisión.

**Prohibido Regresar.** Prohibido de regresar a los Estado Unidos por el sistema legal de migración.

EOIR-000009

# MESSAGE TO ILLEGAL ALIENS:
# A WARNING TO SELF-DEPORT



**For More Information:**




SCAN ME

## Benefits:

**Self-deportation is safe.** Leave on your own terms by picking your departure flight.

**Keep money earned in the U.S.** If you self-deport as a non-criminal illegal alien.

**Future opportunity for legal immigration.** If you self-deport using CBP Home instead of being deported by ICE.

**Possible Flights Home.** You may be eligible to a subsidized flight if you cannot afford to leave.

## Consequences:

**Immediate deportation.** You will be apprehended by DHS with no opportunity to get your affairs in order beforehand.

**Fines and penalties.** A fine of $998 *per day* if you received a final order of removal and stayed. A fine of $1,000 - $5,000 if you fail to self-deport after claiming that you will.

**Possible imprisonment.** If you fail to self-deport, you may be subject to jail time.

**Barred from returning.** Prohibited from reentering the U.S. through the legal immigration system.



EOIR-000010

Joshua E. Bardavid, Esq.
277 Broadway, Suite 1501
New York, NY 10007
(212) 219-3244
Josh@bardavidlaw.com
*Counsel to Respondent*

NOT DETAINED

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## BOARD OF IMMIGRATION APPEALS

| |
|---|
| In the Matters of |
| **YAW TOTIMEH, DAVID** |
| Respondent in Removal Proceedings |

A208-125-369

### BRIEF IN SUPPORT OF APPEAL

A208-125-369, YAW TOTIMEH, David

1

EOIR-000011

## FACTUAL AND PROCEDURAL BACKGROUND

Respondent David Yaw Totimeh a/k/a Mohammed Adiza Alhassan is a native and citizen of Ghana born on January 28, 1982 in Accra. He entered the United States on or about April 7, 2015 by presenting himself as the border and asking for asylum. On May 14, 2015, the Department of Homeland Security issued a putative Notice to Appear charging him as subject to removal pursuant INA § 212(a)(7)(A)(i)(J). He timely filed an 1-589 Application for Asylum and Withholding of Removal, and protection under the United Nations Convention Against Torture ("CAT").

On December 6, 2019, Respondent appeared before Immigration Judge Cathy Sagesse in the New York Immigration Court. See Tr. 1-121. His testimony can be summarized as follows: Mr. Totimeh was born in Accra, Ghana as Adiza Mohammad Yaru Tr. 39-40. He later changed his name to "David Yaw Totimeh" following a dispute with his family. Tr. 40. He was given the name of David Taw Totimeh along with corresponding identity documents by Mr. Yaw Totimeh ("Mr. Yaw"), a friend of his departed father, while in Ghana although he never legally changed his name. Tr. 40, 52-53. He was forced to obtain those identity documents to flee Ghana. Tr. 78-81.

Mr. Totimeh's mother was born as Adisa Suliman Mohammad in Koforidua, Ghana and she resides in Accra, Ghana. Tr. 41. Mr. Totimeh's father was born Mohammad Yaru in an unknown location believed to be in Nigeria. Tr. 41-42. He passed away in 2000 although Mr. Totimeh does not possess a death certificate as he is unaware of Muslims in Ghana being issued such a document. Tr. 42-43.

Mr. Totimeh has never been issued a passport in his birth name but did obtain a birth certificate containing his name Alhasa Mohammad Yaru. Tr. 82-83. The birth certificate was sent from Ghana to Mr. Totimeh after his arrival to the United States from Ghana by his brother who retrieved it from Mr. Yaw. Tr. 83. Mr. Totimeh does not know why Mr. Yaw changed his name. Tr. 86. Mr. Totimeh's date of birth under his natural born name of "Adzasa Mohammad Yaru" is August 21st, 1979, while the date of birth associated with "David Yaw Totimeh" is 1982 and is the one listed on his I-589 application. Tr. 45-47. There are no other documents labeling his name as Adzasa

EOIR-000012

Mohammad Yaru except for a voter ID that he possessed while still in Ghana, but Mr. Totimeh does not know where that ID is. Tr. 92. Working as a merchant selling shoes and clothes did not require him to obtain any other documents which might otherwise label his identity. Tr. 92-92.

The dispute between Mr. Totimeh and his family stems from a will left by his father in which Mr. Totimeh and his siblings were bequeathed a large plot of land located in Accra, Ghana in 2000. Tr. 53-57. Mr. Totimeh's oldest sibling, Ussef Mohahhad Yaru ("Mr. Yaru"), wanted to sell the land to a mosque, but Mr. Totimeh refused. Tr. 54. The will remains in Mr. Yaru's possession as it is his intention to control the fate of the land himself. Tr. 54. Mr. Yaru contends that the land was willed by the father to be sold to the mosque, but Mr. Totimeh disputes this. Tr. 57. The disagreement between them began in 2010. Tr. 57.

In 2012 Mr. Totimeh and his brother attended a meeting at their local mosque in Accra, Ghana with the imam and other members of the mosque to address the dispute about the land. Tr. 58. Mr. Yaru is the secretary of the imam. Tr. 59. When Mr. Totimeh asserted that their father did not want to give the land to the mosque his brother Mr. Yaru and others at the mosque began assaulting him, punching his face and injuring his mouth and cheeks. Tr. 59-60. His brother exclaimed during the attack that he would kill Mr. Totimeh and that Mr. Totimeh was not a Muslim. Tr. 60. Mr. Totimeh stopped practicing Islam in 2014, but the allegation levied against him by his brother of not being a Muslim in 2012 was in response to Mr. Totimeh stating he would leave Islam if his brother did in fact sell the land to the mosque. Tr. 67-68.

During the attack Mr. Totimeh was able to extricate himself from the mosque and attempted to obtain medical treatment at a doctor but was informed he could not offer sufficient money for their services, and thereafter visited a neighbor named Hijia Samira for treatment. Tr. 61-62. Ms. Samira provided him with medicine for a headache and massaged his facial injuries. Tr. 62-63. Mr. Totimeh did not report the incident to the police as he is confident that the authorities would have referred him back to the same

A208-125-369, YAW TOTIMEH, David

3

EOIR-000013

imam with whom he had the confrontation in the first place. Tr. 63. This was previously Mr. Totimeh's experience in attempting to enlist the assistance of the police. Tr. 63-64.

After the 2012 attack Mr. Totimeh left Accra and traveled three hours by car to Adenta, Ghana where he stayed with his friend Ibram Ceki. Tr. 69-70. Mr. Totimeh lived with Mr. Ceki from 2012-2014 during which time he temporarily returned to Accra four times without incident. Tr. 70. There was no interaction between Mr. Totimeh and his oldest brother during this time. Tr. 70. Mr. Totimeh was unable to support himself during his time with Mr. Ceki as he did not possess and could not afford to purchase the required tools and as a result he was supported by Mr. Ceki directly. Tr. 71-72. Mr. Ceki remains in Ghana and did not provide a letter of corroboration for Mr. Totimeh as Mr. Ceki was unaware of the dispute between Mr. Totimeh and his family. Tr. 72-73.

In 2014 Mr. Totimeh returned to Accra after received a call from his younger brother informing him that Mr. Yaru was about to build a mosque on their land. Tr. 71. Upon arrival in Accra Mr. Totimeh attempted to enlist of the police to help resolve the conflict as he believed himself to have no other available option. Tr. 74. The police instructed him to return to the imam to solve the dispute. Tr. 75.

Mr. Totimeh met with Mr. Yaru and the imam at the mosque where he was told by the imam that the land was meant to have a mosque on it, but Mr. Totimeh disagreed. Tr. 76. Immediately following the meeting Mr. Yaru attacked Mr. Totimeh outside of the mosque and said he would kill him for being a nonbeliever, cutting him with a knife. Tr. 76. Mr. Yaru was also joined by many other members of the mosque in attacking Mr. Totimeh. Tr. 76. The attack only ceased once local book vendors on the street observed the conflict and came to his assistance. Tr. 77. Following the attack Mr. Totimeh attempted to obtain medical treatment for his multiple injuries at a hospital but was once again refused for inability to pay. Tr. 77. He did not inform the police of the attack or request their assistance as he knew they would not help him. Tr. 77-78.

That night Mr. Totimeh traveled to another part of Accra to meet with Mr. Yaw, who was a friend of his father's. Tr. 78-79. Mr. Totimeh informed Mr. Yaw of the dispute and conflict with his brother. Tr. 79. Mr. Totimeh did not wish to remain in

A208-125-369, YAW TOTIMEH, David

4

EOIR-000014

Accra as he was afraid of being killed by his brother or the members of the mosque, but he could not return to Adenta, Ghana because Mr. Ceki could not afford to support him any longer. Tr. 79. Mr. Yaw responded to Mr. Totimeh's predicament by presenting him with new identity papers under the name of "David Yaw Totimeh" along with money to help him leave the country to save his life. Tr. 79-81. Mr. Totimeh could not have stayed elsewhere in Ghana because the police had already failed to protect him and he would not be safe. Tr. 81. Mr. Totimeh did not seek out a doctor after receiving money from Mr. Yaw as he was focused instead on escaping from the threat. Tr. 82.

Mr. Totimeh is afraid to return to Ghana because he believes his brother and the members of the mosque who previously attacked him would kill him. Tr. 93. At the time of questioning the mosque has not been built on the land but Mr. Totimeh's younger brother informed him that its construction was imminent. Tr. 93-94. His younger siblings provided affidavits to the Court in his support but were not able to provide any documentation or identification attesting to Mr. Totimeh's identity. Tr. 96-97.

On December 6, 2019 IJ Cathy Sagesse issued an oral decision denying all relief sought. IJ Dec. 1-7. First, the IJ found that Mr. Totimeh was not credible. IJ Dec. 2-4. Second, the IJ claimed that Mr. Totimeh failed to provide sufficient corroborating evidence. Third, the Judge stated that even if credible, she would still deny because she concluded that "the respondent has not established that he has been persecuted on a protected ground." IJ Dec. 3. The Judge claimed "the level of harm that he suffered does not amount to persecution" without explaining more. IJ Dec. 4. Fourth, the IJ asserted that Mr. Totimeh failed to establish a well-founded fear of future persecution because he had allegedly safely relocated internally. IJ Dec. 4. Fifth, "[t]he court finds that the respondent has not established a nexus to a protected ground as well," asserting that Mr. Totimeh was neither persecuted because of his religion because he had given up the Muslim faith nor on account of a particular social group. IJ Dec. 4 (relying on *Matter of L-E-A-*, 25 I&N Dec. 581, 594 (A.G. 2019) (vacated)). Sixth, Judge Sagesse asserted that there was no evidence that the Ghanaian government is unwilling or unable to afford him protection because Mr. Totimeh allegedly did not give the police sufficient

A208-125-369, YAW TOTIMEH, David

5

EOIR-000015

opportunity to protect him in the past. IJ Dec. 5-6. Finally, with respect to Mr. Totimeh's claim for protection under the Convention Against Torture, the IJ denied that application as well "[b]ecause the respondent's claim is based on the same factual predicate as his unsuccessful asylum claim he is necessarily unable to meet his burden that he is more likely than not to be tortured for CAT relief." IJ Dec. 6. It is from that decision that Mr. Totimeh appealed to this Board.

## DISCUSSION

### POINT ONE: THE IMMIGRATION JUDGE'S NEGATIVE CREDIBILITY DETERMINATION WAS ENTIRELY UNSUPPORTED BY BOTH THE RECORD AND UNSUPPORTED BY ANY ACTUAL FINDINGS

The Immigration Judge erred as a matter of law and due process in reaching her negative credibility determination. She did not point to a *single* inconsistency, omission, exaggeration or other factor in Mr. Totimeh's testimony to find him not credible. Not one. Instead, she erroneously conflated identity and corroboration with credibility. Such a muddling of the legal standards and requirements and patent disregard for the underlying claim requires reversal as it is dispositive of the outcome of the claim.

The "REAL ID Act requires IJs to evaluate inconsistencies or omissions in light of the 'totality of the circumstances, and all relevant factors,'" consistent with the "well-established rule that review of an agency's adverse credibility determination 'is conducted on the record as a whole'" in reaching a negative credibility determination. *Gao v. Sessions,* 891 F. 3d 67, 79 (2d Cir 2018) (quoting *Tu Lin v. Gonzales,* 446 F.3d 395, 402 (2d Cir. 2006)); *see Gurung v. Barr,* 929 F.3d 56, 60 (2d Cir 2019) (noting the Court will defer to the IJ's credibility determination only if "based on reasonable, substantial, and probative evidence in the record") (quotations omitted). The Second Circuit consequently requires that, at minimum, an "IJ's evaluation of a witness's credibility... be 'tethered to the evidentiary record.'" *Id.* at 61 (quoting *Siewe v. Gonzales,* 480 F.3d 160, 169 (2d Cir. 2007)).

A208-125-369, YAW TOTIMEH, David

6

## A. Mr. Totimeh's Identity Documents Are Not Reflective of Credibility

There is not one alleged inconsistency, omission or other incredible aspect of Mr. Totimeh's claim. Instead, the IJ seems to believe that because Mr. Totimeh has used a life-long alias that he was inherently incredible. Yet, IJ entirely disregarded Mr. Totimeh's statement that his name change was because "[t]here was a problem between myself and my family." Tr. 40. The IJ erred as a matter of law in failing to even acknowledge this testimony and therefore, the negative credibility determination cannot be said to be ground in the record.

Importantly, it is well established that the use of the alias and that the manner and means of escaping persecution is irrelevant to an applicant's burden of proof. *See Matter of Pula,* 19 I&N Dec. 467, 474 (BIA 1987) ("[t]he use of fraudulent documents to escape the country of persecution itself is not a significant adverse factor..."); *Matter of O-D,* 21 I & N Dec. 1079, 1083 (BIA 1998) (same); *Akinmade v. INS,* 196 F.3d 951 (9th Cir. 1999) (same). In fact, the Second Circuit explicitly found that it would be "unreasonable … to penalize an applicant for lying to escape a country where he or she faces persecution." *Lin v Gonzales,* 445 F.3d 127, 134 (2d Cir. 2006). The Court in *Lin* elaborated on this rule, noting that:

> A person who obtains false documents to escape persecution does not, as a result, face a higher burden of persuading an IJ of his or her credibility. People attempting to escape persecution reasonably use all means at their disposal to do so. They may *lie to their government*; indeed, the greater the danger of persecution, the more likely it is that they will.

*Id* (emphasis added).

Here, it was even more unreasonable for the IJ to penalize Mr. Totimeh for using an alias given that at all times when given the opportunity, he properly disclosed his identity top U.S. officials. *Id* ("[p]eople attempting to escape persecution…may lie to their government"); *see also, Paramasamy v. Ashcroft,* 295 F.3d 1047, 1054 (9th Cir. 2002) (holding that an asylum-seeker's "use of false documents for travel is not a proper basis for an adverse credibility determination."). Further, because Mr. Totimeh

A208-125-369, YAW TOTIMEH, David

7

EOIR-000017

expressly obtained identity papers under his alias to escape persecution, Tr. 79-81, the IJ erred as a matter of law in finding that this negatively reflected on his credibility.

**B. The Immigration Judge erred as a matter of law in requiring corroboration**

The Immigration Judge erred as a matter of law in both requiring corroboration. Further, to the extent that she may permissibly have required corroboration, she provided zero legally sufficient analysis of the corroboration requirements steps outline by this Board and the Second Circuit.

First, because the IJ cited to not a single inconsistent or improbable testimony or document, the IJ had no legal reason to require further corroboration. See *Matter of Mogharrabi*, 19 I &N Dec. 439 (BIA 1987) (citing 8 CFR § 208.13(a) ("The testimony of the applicant, if credible in light of general conditions in the applicant's country of nationality or last habitual residence, may be sufficient to sustain the burden of proof without corroboration." Corroborating evidence is not necessary if an alien's own testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear of persecution.)). Because the IJ does not have a sufficient reason not disbelieve Respondent based on the evidence in the record, the requirement that he obtain additional evidence is erroneous. See *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir.2001) (the IJ impermissibly required Singh to present a document that presumably is in the possession of his persecutors)); *Abankwah v. INS*, 185 F.3d 18, 26 (2d Cir.1999) ("a genuine refugee does not flee her native country armed with affidavits, expert witnesses, and extensive documentation.")

Further, to the extent that the IJ was permitted to require additional corroboration, including about Mr. Totimeh's identity, the BIA and the Second Circuit require that "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim... an asylum applicant should provide documentary support for material facts which are central to his or her claim and easily subject to verification." *Liu v. Holder*, 575 F.3d 193, 197 (2d Cir. 2009) (quoting *Matter of S-M-J-*, 21 I. & N. Dec. 722, 725 (BIA 1997) (quotation marks omitted)). Thus, "when an IJ determines that the applicant failed to meet his burden of proof based on the

failure to provide corroborating evidence, the IJ should...(1) point to specific pieces of missing evidence and show that it was reasonably available, (2) give the applicant an opportunity to explain the omission, and (3) assess any explanation given." *Wei Sun v. Sessions,* 883 F.3d 23, 31 (2d Cir. 2018) (citing *Liu,* 575 F.3d at 198).

Here, the Immigration Judge utterly failed to meet this requirement. Instead, she simply found that the evidence was reasonably available *without explaining why.* By failing to explain why it was reasonable to expect additional documentation, the IJ erred as a matter of law in reaching her negative credibility determination. The IJ also failed to explain why she believed the documents she desired were reasonably available where Respondent stated that the evidence was not available and/or he was not otherwise given an opportunity to explain the availability of the individual documents sought. *See e.g.,* Tr. 85-86 (stating that he never obtained a birth certificate in Ghana and only obtained a copy of his original birth certificate after leaving the country).

In sum, in failing to consider the indicia of reliability on the record, the IJ failed to properly consider the record as a "whole." *Iouri v. Ashcroft,* 487 F.3d 76, 81 (2d Cir. 2007) (the agency's decision must be supported by "the record when considered as a whole"); *Biao Yang v. Gonzales,* 496 F. 3d 268, 272 (2d Cir. 2007) (this Court "may...vacate and remand an adverse credibility determination if...the IJ has failed to 'act fairly in judging credibility and in assessing the sufficiency of the evidence'") (citing *Cao He Lin,* 428 F.3d at 400). For all of these reasons, the IJ's negative credibility determination was fatally flawed and compels reversal. *Id* ("issues regarding authentication and chain of custody generally go to the weight of the evidence") (citing *United States v. Vidacak,* 553 F.3d 344, 350 (4th Cir. 2009) (internal citations omitted)); *see Felzcerek v. INS,* 75 F.3d 112, 115 (2d Cir. 1996) ("records made by public officials in the ordinary course of their duties, and accordingly evidence strong indicia of reliability... because public officials are presumed to perform their duties properly and generally lack a motive to falsify information") (citing Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6759, at 663 (interim ed. 1992)); *see also, Fei Yan Zhu v. Att'y Gen. of United States,* 744 F.3d 268, 274 (3d Cir. 2014) (an asylum

A208-125-369, YAW TOTIMEH, David

9

applicant may "'attempt to prove the authenticity ... through other means'... in various ways...the proponent could provide information concerning how the document was obtained, identify the source of the information contained in the document...") (quoting *Lin v. Att'y Gen.,* 700 F.3d 683, 686-87 (3d Cir. 2012)). Accordingly, it was clear and unambiguous legal error and clear factual error for the IJ to deny the applications for asylum and withholding of removal.

Here, like in *Tang v. U.S. Atty. Gen.,* another REAL ID Act case, the record contains alternative evidence corroborating the facts the IJ believed required corroboration. 578 F.3d 1270, 1281 (11th Cir. 2009). Generally, 8 C.F.R. § 1287.6(a) requires authentication for certain foreign "official records" and "public documents." *Id.* However, it is well-settled that the procedure provided by regulation "is not the exclusive means of authenticating records before an immigration judge.'" *Cao He Lin,* 428 F.3d at 404 (quoting *Gui Cun Liu v. Ashcroft,* 372 F.3d 529, 532 (3d Cir. 2004)); *see Qin Wen Zheng v. Gonzales,* 500 F.3d 143, 148 (2d Cir. 2007) (citing *Xue Deng Jiang v. Gonzales,* 474 F.3d 25, 29 (1st Cir. 2007) (the IJ may not reject "documents solely because they were not authenticated in strict conformity with the regulation"); *Khan v. INS,* 237 F.3d 1143, 1144 (9th Cir. 2001) (noting that "[t]he procedure specified in 8 C.F.R. § 287.6 provides one, but not the exclusive, method" of authentication)). Rather, "official records and public documents from foreign governments may be authenticated either through the requirements of 8 C.F.R. § 1287.6 or through any recognized procedure." *Matter of D-R-,* 25 I&N Dec. 445, 458 (BIA 2011); *see Matter of H-L-H- & Z-Y-Z-,* 25 I&N Dec. 209, 214 n.5 (BIA 2010) (an alien may "attempt to prove the authenticity of a document through [regulation] or any other means") (citing *Cao He Lin,* 428 F.3d at 404)).

In this case, the IJ failed to explain, address, or other analyze whether the alternative evidence in the record established the facts allegedly needing corroboration and authentication of Mr. Totimeh's birth certificate. This included an affidavits from the Respondent's sister, *See Tab D, pg. 28-29*; an affidavit from Yaw Totimeh, the originator of Respondent's name, *See Tab D, pg. 30-31*; an affidavit from Adiza

A208-125-369, YAW TOTIMEH, David

10

EOIR-000020

Mohammed, Respondent's mother, *See Tab D, pg. 32-33*; and affidavits and statements from others confirming all relevant facts. *See Tab D, pg. 34-40.* Because these documents established all relevant facts including the Respondent's identity, and because the IJ failed to explain or even discuss why these documents were insufficient to establish the facts she sought to be established, the IJ erred as a matter of law in reaching her negative credibility determination buttressed by a corroboration finding. Given that she also failed to analyze country conditions evidence relating to corroborating evidence or discuss the reasonableness of seeking corroborating documents, the IJ erred as a matter of law in her corroboration requirement.

### POINT TWO: THE REMAINING REASONS FOR DENYING WERE LEGALLY INSUFFICIENT AND FACTUALLY ERRONEOUS AND COMPEL REVERSAL

The IJ's remaining reasons for denying Mr. Totimeh's claim were not grounded in law, logic, and were not based on the totality of the circumstances and record as a whole, but rather, "read[s] like a progression of flawed sound bites that gives the impression that the [IJ] was looking for ways" to deny Mr. Totimeh's claim, rather than adjudicate it. *Dia v. Ashcroft*, 353 F.3d 228, 250 (3d Cir. 2003); *see also, Blares v. INS*, 856 F.2d 89, 91 (9th Cir. 1988) (The role of the Board in conducting, *rather than foreclosing* hearings is viewed as furthering the interests of due process). On this basis, the decision of the IJ compels reversal and remand to a different Immigration Judge.

### A. The IJ provided legally insufficient analysis for internal relocation that is dispositively fatal to her decision

The Immigration Judge failed to determine whether it would be reasonable to expect Mr. Totimeh to internally relocate. The regulations unambiguously state that an applicant who established past persecution shall be denied if she could "avoid" persecution by relocating safely within her home country, and "under all the circumstances, it would be *reasonable* to expect" her to do so, or in the case of well-founded fear only, show "it would not be *reasonable* for him or her to relocate." 8 C.F

A208-125-369, YAW TOTIMEH, David

11

R. §§ 1208.13(b)(1)(i)(B), (b)(3)(i) (emphasis added). Both subparagraphs are subject to the lager provision which lists certain relevant factors the agency "should consider" under the circumstances[1] in determining "whether it would be reasonable for the applicant to relocate." *Id.* at § (b)(3).

Every Circuit has recognized and applied the regulation's two-part inquiry as to the possibility of return and the reasonable of relocation. *See Kone v. Holder*, 596 F.3d 141, 143 (2d Cir. 2010) (prospect of safe return alone does not show reasonable relocation); *Gambashidze v. Ashcroft,* 381 F.3d 187, 192 (3d Cir. 2004) ("regulation envisions a two-part inquiry: whether relocation would be successful and whether it would be reasonable"); *Mohamed v. Ashcroft*, 396 F.3d 999, 1006 (8th Cir. 2005) ("[r]elocation must not only be possible, it must also be reasonable"); *Oryakhil v. Mukasey*, 528 F.3d 993, 998 (7th Cir. 2008) (asking "whether safe relocation was both (1) possible and (2) reasonable"); *Afriyie v. Holder*, 613 F.3d 924, 936 (9th Cir. 2010) (requiring "showing that internal relocation is both safe and reasonable under all the circumstances"); *Melkonian v. Ashcroft*, 320 F.3d 1061, 1069 (9th Cir. 2003) (same); *Eduard v. Ashcroft*, 379 F.3d 182, 194 (5th Cir. 2004) (ability to "relocate 'if necessary' in no way" meets "the requisite standard of proof that relocation be 'not reasonable'"); *Da Silva v. Ashcroft*, 394 F.3d 1, 8 (1st Cir.2005) ("[t]he touchstone is whether, under all the circumstances of a particular case, internal relocation is a reasonable solution"); *Arboleda v. US Atty. Gen.*, 434 F.3d 1220, 1223 (11th Cir. 2006) ("regulations have…instructed the IJ to consider" whether "it would be reasonable to expect the applicant [to relocate]"); *see also, Dieng v. Holder*, 698 F.3d 866, 872 (6th Cir. 2012);

---

[1] The non-exhaustive factors which "may, or may not, be relevant, depending on all the circumstances of the case, and are not necessarily determinative," include "whether the applicant would face other serious harm in the place of suggested relocation; any ongoing civil strife within the country; administrative, economic, or judicial infrastructure; geographical limitations; and social and cultural constraints, such as age, gender, health, and social and familial ties." *Id.*

A208-125-369, YAW TOTIMEH, David

12

EOIR-000022

*Essohou v. Gonzales*, 471 F.3d 518, 522 (4th Cir. 2006); *Karki v. Holder,* 715 F.3d 792, 806 (10th Cir. 2013).

Moreover, the Courts of Appeals have consistently required the agency to consider the reasonableness factors listed in 8 C.F.R. § 208.13(b)(3). *See Id* (the BIA failed to consider regulatory factors "in determining whether a relocation is reasonable"); *Hagi-Salad*, 359 F.3d at 1044 (remanding to the BIA for a reasonableness determination based on factors in 8 CFR § 208.13(b)(3)); *Arboleda*, 434 F.3d at 1226 (the "BIA erred in failing to…mention any of the other factors it should have considered in making its determination"); *Melkonian*, 320 F.3d at 1070 (the "regulations list, without limitation, some of the factors an IJ should consider when evaluating reasonableness… under the correct legal standard"); *Eduard*, 379 F.3d at 194 (noting factors the "regulations direct the IJ to consider"); *see also, Knezevic v. Ashcroft*, 367 F.3d 1206, 1214 (9th Cir. 2004) ("the IJ failed to take into account the numerous factors for determining reasonableness outlined in 8 C.F.R. § 1208.13(b)(3)"); *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1091 (9th Cir. 2005) (the "IJ failed to consider the 'serious harm' …which made such relocation unreasonable.").

The IJ did none of that and therefore, the IJ erred as a matter of law. To the extent that the IJ believe it reasonable, the IJ ignored the fact that Mr. Totimeh was only able to internally relocate safely for two years and could not afford to remain in hiding. Two years does not equate to a lifetime. He was able to reside in Ghana for periods of time safely, even in the area of persecution. But eventually those who seek and sought to harm him will and did catch up to him. Without proper analysis, the IJ's conclusion was fatally flawed and compels reversal.

### B. The harm inflicted rose to the level of persecution

The Immigration Judge's stunningly truncated "discussion" of the persecution suffered does not constitute a legally sustainable analysis. Simply put, stating a conclusion is not analysis. The facts and evidence overwhelmingly establish that, had the IJ provided an analysis of the claim, she would have been compelled to conclude that

A208-125-369, YAW TOTIMEH, David

13

the harm inflicted upon Respondent rose to the level of persecution. Because she conducted zero analysis, her decision compels reversal.

Generally, "persecution is the infliction of suffering or harm upon those who differ on the basis of a protected statutory ground." *Ivanishvili v. U.S. Dep't of Justice,* 433 F.3d 332, 341-42 (2d Cir. 2006) (persecution "encompasses a variety of forms of adverse treatment, including non-life [-] threatening violence and physical abuse"). The "difference between harassment and persecution is necessarily one of degree that must be decided on a case-by-case basis." *Ivanishvili,* 433 F.3d at 341; *see Beskovic v. Gonzales,* 467 F.3d 223, 226 (2d Cir. 2006) (whether "physical mistreatment amounts to persecution" is dependent on the degree it is inflicted on "the basis of a protected statutory ground").

Here, the IJ merely stated, but did not explain why, being attacked, beaten and stabbed/slashed in the face does not constitute persecution. Thus, it is not that the factual analysis of the IJ was clearly erroneous (although it was), it is the very failure to conduct such an analysis that constitutes reversable *legal* error.

To the extent that the IJ conducted a reviewable factual inquiry (although she did not), being stabbed in the face, expelled from a mosque, beaten and threatened rises to the level of persecution. The *cumulative* impact of these harms (none of which were considered cumulatively by the IJ contrary to well established law) amounts to persecution.

Additionally, the IJ gave no discussion of whether the harm Mr. Totimeh would face upon return would rise to the level of persecution. Even if it did not rise to the level of persecution in the past, it most certainly *could* rise to the level of persecution in the future, making Mr. Totimeh's fears well founded.

### C. The government was unwilling and unable to protect Mr. Totimeh

Contrary to the IJ's finding, Mr. Totimeh demonstrated that the Gambian government was and will be unable to protect him in the future. The IJ erroneously imposed a prerequisite of reporting the attacks to the police, even though the law expressly does not require such a test. Even if such a test exists, Mr. Totimeh did report

A208-125-369, YAW TOTIMEH, David

14

to the police who simply told him to resolve the matter with the Mosque on his own. Thus, the government was and will be unwilling and unable to protect him.

The evidence demonstrates the "inability on the part of the government to prevent" such persecution. *Aliyev v. Mukasey*, 549 F.3d 111, 116 (2d Cir. 2008) (quoting *Pavlova v. INS*, 441 F.3d 82, 91 (2d Cir. 2006); *see also, Sotelo-Aquije v. Slattery*, 17 F. 3d 33, 37 (2nd Cir. 1994) (persecution by private actors and a showing that the government failed to afford protection can establish eligibility for asylum); *Matter of O-Z & I-Z-*, 22 I. & N. Dec. 23, 26 (BIA 1998) (applicant may show the government was "unable or unwilling to control the [alien's] attackers."). There is no requirement that an applicant report threats, as the courts have "long held that a victim of abuse need not report it to government authorities." " *Bringas-Rodriguez v. Sessions*, 850 F. 3d 1051, 1062 (9th Cir. 2017) (quoting *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010) and citing *Korablina,* 158 F.3d 1038)). An "applicant who seeks to establish eligibility for withholding of removal under ... on the basis of past persecution at the hands of private parties the government is unwilling or unable to control need not have reported that persecution to the authorities if he can convincingly establish that doing so would have been futile or have subjected him to further abuse." *Id.* at 1065-66 (citing *Ornelas-Chavez v. Gonzales,* 458 F.3d 1052, 1058 (9th Cir. 2006); *Afriyie,* 613 F.3d at 933-34)). Thus, although "[w]hether a victim has reported or attempted to report violence or abuse to the authorities is a factor that may be considered," the agency must also consider "credible testimony or documentary evidence explaining why a victim did not report." *Id.* at 1070.

As such, because the record contains "objective facts that lend support to the applicant's subjective fear," Mr. Totimeh was persecuted in the past and has a well-founded fear of persecution on account of private actors whom the government is unwilling or unable to control. *Guan Shan Liao v. U.S. Dept. of Justice*, 293 F.3d 61, 68-69 (2d Cir. 2002) (finding that "an individual can have a subjectively and objectively well-founded fear of persecution even if it is improbable that he will be persecuted upon his return to his own country"); *see also, Tambadou v. Gonzales*, 446 F. 3d 298, 303 (2d

Cir. 2006 (even a "slight, though discernable, chance" of persecution could establish an applicant's fear is well-founded").

**D. The Immigration Judge erred as a matter of law in finding that Mr. Totimeh was not and would not be persecuted on account of a nexus to a protected ground.**

Mr. Totimeh was persecuted on account of multiple protected grounds including religion, nationality, and membership in a particular social group. Contrary to the IJ's findings, the fact that Mr. Totimeh gave up Islam is precisely the reason for the religious based persecution. Persecution for absence of belief is no different than persecution for beliefs. Similarly, Mr. Totimeh was persecuted on account of his family membership and the IJ's reliance on a since-vacated decision in and of itself is reason to reverse.

At the outset, the IJ's erroneous negative credibility determination undoubtedly affected and infected her determination regarding nexus. The IJ erroneously found that Mr. Totimeh could not establish his identity, he could not establish his membership in his family as a social group. However, as discussed *supra*, because that finding was clearly and legally erroneous, the claim of nexus need not be reached by this Board as the other errors are dispositively fatal to the IJ's finding.

Nevertheless, the IJ's finding regarding persecution on account of religion is strikingly flawed. The IJ merely asserted that because Mr. Totimeh gave up Islam, he could not demonstrate persecution on account of religious beliefs. This assertion ignores the law and facts of the claim.

The Immigration Judge entirely ignore Mr. Totimeh's testimony that he was persecuted precisely because he had given up his faith as a Muslim. In 2012 Mr. Totimeh and his brother attended a meeting at their local mosque in Accra, Ghana with the imam and other members of the mosque to address the dispute about the land. Tr. 58. Mr. Yaru is the secretary of the imam. Tr. 59. When Mr. Totimeh asserted that their father did not want to give the land to the mosque his brother Mr. Yaru and others at the mosque began assaulting him, punching his face and injuring his mouth and cheeks. Tr. 59-60. His brother exclaimed during the attack that he would kill Mr. Totimeh and that

A208-125-369, YAW TOTIMEH, David

16

Mr. Totimeh was not a Muslim: " My brother was saying that I'm going to kill you, you're no longer a Muslim." Tr. 60.

In *Kazemzadeh*, the Eleventh Circuit noted it has "recognized that 'the [Immigration and Nationality Act] and related regulations ... do not require applicants ... to avoid signaling to others that they are indeed members of a particular race, or adherents of a certain religion, etc.'" *Id* (quoting *Antipova v. U.S. Att'y Gen.*, 392 F.3d 1259, 1264-65 (11th Cir. 2004)). The Court further indicated that the "suggestion that a petitioner seeking asylum on account of religious persecution may be required to practice his faith in the dead of night collides with our nation's ideals about the exercise of religious freedom" because the "right to practice one's faith and to do so in public stands at the heart of free exercise." The Court found the "circumstances support a finding that Kazemzadeh's apostasy will be discovered by the Iranian government in the future and that, as a result, he will face persecution in Iran on account of his religion" was that he "is a genuine apostate" who "regularly practices Christianity, attending two-hour long Sunday worship services three out of four Sundays a month and at least ten two-hour long religious education classes, and we, therefore, have every reason to expect that he will continue to practice his faith." *Id.* at 1361.

Similarly, the Ninth Circuit has held that requiring a petitioner "to practice his beliefs in secret is contrary to our basic principles of religious freedom and the protection of religious refugees." *Zhang v. Ashcroft*, 388 F.3d 713, 719-20 (9th Cir. 2004). The Eighth Circuit also has suggested that preventing a member of an unpopular religion from practicing could constitute religious persecution in *Woldemichael v. Ashcroft*, explaining that "[a]bsent physical harm, subjecting members of an unpopular faith to hostility, harassment, discrimination, and even economic deprivation is not persecution unless those persons are prevented from practicing their religion or deprived of their freedom." 448 F.3d 1000, 1003 (8th Cir. 2006) (emphasis added).

Thus, like the apostasy in *Kazemzadeh*, the abandoning of the Muslim faith *is* an expression of a religious belief. Thus, Mr. Totimeh need not expressly practice a faith to be persecuted on account of the lack of faith. Given the persecutor's expressions of his

A208-125-369, YAW TOTIMEH, David

17

will to harm Mr. Totimeh precisely because the absence of faith, Mr. Totimeh was persecuted on account of his religious beliefs.

Similarly, the Second Circuit has long defined a "particular social group" as "'comprised of individuals who possess some fundamental characteristic in common which serves to distinguish them in the eyes of a persecutor — or in the eyes of the outside world in general.'" *Hernandez-Chacon v. Barr*, 948 F. 3d 94, 102 (2d Cir. 2020) (quoting *Gomez v. INS*, 947 F.2d 660, 664 (2d Cir. 1991)). "To constitute a particular social group, a group must be: '(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" *Id.* at 102 (2d Cir. 2020) (quoting *Matter of M-E-V-G-,* 26 I. & N. Dec. 227, 237 (BIA 2014)); *see Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014) (finding group must be "recognizable' as a discrete group by others in the society"); *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007) (noting that "the definition of the social group must have particular and well-defined boundaries"); *Ordonez Azmen v. Barr*, 965 F. 3d 128, 134 (2d Cir. 2020) (affirming social group requirements). All social groups claims require a "fact-specific inquiry...applied in the fact-specific context of an applicant's claim" and must be decided on a "case-by-case basis." *Id.* at 134-35 (citing *Paloka*, 762 F.3d at 198) (quoting *Matter of W-G-R-,* 26 I. & N. Dec. 208 (BIA 2014)).

In *Matter of M-E-V-G-,* the BIA held that in order for an applicant to have "membership in a particular social group," the group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-,* at 227. Initially, the proposed groups in this case are composed of common immutable characteristics that "the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *A- B-,* 27 I&N Dec. at 318 (noting the "shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances, it might be a shared past experience....")

A208-125-369, YAW TOTIMEH, David

18

EOIR-000028

(quoting *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985) (internal quotation marks omitted); *see Matter of M-E-V-G-*, 26 I. & N. Dec. at 244 (same).

Here, the IJ erred as a matter of law finding the family as not recognized as socially distinct in reliance on a since vacated AG decision. IJ Dec. 6 (relying on *Matter of L-E-A-*, 25 I&N Dec. 581, 594 (A.G. 2019). On June 16, 2021, the Attorney General issued a decision vacating *Matter of L-E-A-*, 27 I&N Dec. 581 (A.G. 2019) (*L-E-A- II*), which was in effect when the Immigration Judge issued his decision in this matter. *See Matter of L-E-A-*, 28 I&N Dec. 304 (A.G. 2021) ("*L-E-A- III*"). That recent decision explicitly noted that "on July 29, 2019, then-Attorney General Barr issued a decision in this matter considering whether a family may constitute a "particular social group" and holding that "in the ordinary case, a nuclear family will not, without more," qualify. *L-E-A- II*, 27 I&N Dec. at 589. Based on that holding, *L-E-A- II* overruled the portion of the prior decision of the Board finding that respondent's father's immediate family qualified as a "particular social group."" Id. at 596–97 (overruling Matter of L-E-A-, 27 I&N Dec. 40, 42–43 (BIA 2017) ("L-E-A- I"))." *Id.* At 304. *L-E-A- III* explained that *L-E-A- II* was "vacated in its entirety so as to return the immigration system to the preexisting state of affairs pending completion of the ongoing rulemaking process and the issuance of a final rule addressing the definition of "particular social group."" Under these circumstances, the matter should be remanded for further factfinding in light of *L-E-A-*.

The Second Circuit in *Ordonez Azmen v. Barr* reaffirmed that BIA precedent "require[s] the agency to determine on a case-by-case basis whether a group is a particular social group," and concluded the BIA committed legal error in rejecting the petitioner's proposed social group for "superficial" reasons rather than conduct a fact based inquiry on the record. 965 F. 3d at 134-35 (citing *Matter of W-G-R-*, 26 I. & N. Dec. at 214). The Court reaffirmed that the social group analysis "consists of a 'fact-specific inquiry,' which 'focuses primarily on how the society in which the group exists views the group.'" *Id.* at 134 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 240-41). The Court reiterated that particularity and social distinction, which "overlap"

A208-125-369, YAW TOTIMEH, David

19

EOIR-000029

considerably, "require inquiry into whether the group can be described in sufficiently distinct terms that it would be recognized, in the society in question, as a discrete class of persons" such that "members of society generally agree on who is included in the group." *Id.* at 135 (quoting *Matter of W-G-R-*, 26 I. & N. Dec. at 214) (quotation marks omitted)).

Since these social group requirements are linked to "views of the society in question " and the "inquiry is thus closely tied to the society out of which the claim arises," the Second Circuit held that a "particular social group analysis does not occur in isolation, but rather in the context of the society out of which the claim for asylum arises," *Id* (citing *W-G-R-,* 26 I. & N. Dec. at 214 (quotation marks omitted). As such, the Court affirmed that in considering the "overall definition" of particular social group, both the "'social distinction' and `particularity' requirements" are "applied in the fact-specific context of an applicant's claim for relief." *Id* (quoting *Matter of M-E-V-G-,* 26 I. & N. Dec. at 240-41).

Just like in *Ordonez,* a rational factfinder would be compelled to conclude the IJ failed to conduct the required social distinction and particularity inquiries "in the fact-specific context of [the] applicant's claim for relief" or "in the context of the society out of which the claim for asylum arises. *" Id.* at 134. The controlling law of this circuit therefore leaves this Board with no other choice but to remand for the social group analysis to be conducted in light of the record as a whole in the first instance. *Id* at 135(finding legal error requiring remand where "[i]t is not clear from its decision that the BIA" considered "whether the record evidence demonstrated that Sri Lankans actually share a common definition of who counts as a former gang member"); *see also, Scarlett v. Barr,* 957 F.3d 316, 328 (2d Cir. 2020) ("because we cannot conclude from the existing record that the agency gave reasoned consideration to all the facts relevant to assessing Scarlett's claim…we *must* remand for further proceedings…. we require 'a certain minimum level of analysis' to allow for meaningful judicial review")) (emphasis added) (quoting *Poradisova v. Gonzales,* 420 F.3d 70, 77 (2d Cir. 2005)); *see Zhi Yun Gao v. Mukasey*, 508 F.3d 86, 87 (2d Cir. 2007) (while the IJ and BIA need not

A208-125-369, YAW TOTIMEH, David

20

EOIR-000030

"expressly parse or refute on the record each . . . piece of evidence offered by the petitioner," there must be some indication of "reasoned consideration" and 'adequate findings'") internal quotation marks omitted)).

## POINT THREE: THE IJ ERRED AS A MATTER OF LAW IN FAILING TO CONDUCT AN INDEPENDENT ANALYSIS UNDER THE CONVENTION AGAINST TORTURE

The evidence establishes that Mr. Totimeh faces harm that would rise to the level of torture if returned to Ghana which would be carried out at the behest or with the acquiescence of the Ghanian government. By finding that Mr. Totimeh did not meet his burden of proof, the Immigration Judge erred as a matter of law and must be reversed.

Protection under Article III of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Torture Convention" or "CAT") exists in the form of withholding of removal to the country of torture. 8 C.F.R. § 1208.16(c)(4). The applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). However, the alien does *not* need to establish that they will be tortured as a result of their race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R. § 1208.16(c)(4). Withholding of removal is mandatory if the alien meets his burden in establishing the likelihood of torture. *Id.*

Here, the evidence discussed above[2] demonstrates that the private actors feared by Mr. Totimeh would subject him to treatment that constitutes torture or even potentially death. The documentation confirms that torture and extrajudicial killings exist on a widespread basis, and the government officials are complicit in those acts. This is particularly true given Mr. Totimeh's foreswearing of Islam.

---

[2] In the interest of brevity and judicial economy, Respondent will not restate arguments and recite evidence raised *infra*. Those arguments raised are expressly adopted and incorporated to his claim under the Convention Against Torture.

A208-125-369, YAW TOTIMEH, David

21

The IJ erred as a matter of law by relying exclusively and without elaboration on her findings for Mr. Totimeh's asylum claim to deny protection under the Convention Against Torture. Since the IJ did not conduct an independent analysis under CAT, and since the IJ's findings with respect to asylum were legally and factually erroneous, remand is compelled for further consideration of this forms of relief as well. Upon remand, the issues of withholding of removal and CAT warrant reconsideration in light of Ms. Totimeh's credible evidence and with the appropriate application of the law.

The IJ erred as a matter of law by failing to meaningfully consider the CAT claim. The IJ was obligated to consider all evidence related to torture to evaluate whether the treatment Mr. Totimeh will face will be intentionally inflicted for purpose a proscribed by regulation or defeats the object and purpose of CAT. The IJ's failure to properly engage the requisite factual and legal analysis compels remand.

"In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered" including "[e]vidence of gross, flagrant or mass violations of human rights within the country of removal" and "[o]ther relevant information regarding conditions." R*amsameachire v. Ashcroft,* 357 F.3d 169, 185 (2d Cir. 2004). Further, the "regulations require the [IJ and Board] to consider all evidence of possible torture proffered by the alien, regardless of the weight it accords the alien's testimony" because a CAT claim "focuses broadly on torture without regard for the reasons for that treatment." *Id.*

In the case at bar, the IJ made *no* findings about CAT. The IJ's denial of Mr. Totimeh's claim was only stating that she was denying it, not *why*. Yet, punishment "for any reason based on discrimination of any kind," or for the purpose of defeating "the object and purpose of the Convention Against Torture," could rise to the level of torture. *See Pierre v. Gonzales*, 502 F. 3d 109, 121 (2d Cir. 2007) (noting the Board explicitly "did not decide whether conditions of confinement, lawfully imposed are categorically 'lawful sanctions'") (citing *Matter of J-E-,* 23 I. & N. Dec. at 300). The regulations explicitly state:

A208-125-369, YAW TOTIMEH, David

EOIR-000032

> Torture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions. Lawful sanctions include judicially imposed sanctions and other enforcement actions authorized by law, including the death penalty, *but do not include* sanctions that defeat the object and purpose of the Convention Against Torture to prohibit torture.

8 C.F.R. § 1208.18(a)(3) (emphasis added); *see also* 8 C.F.R. § 1208.18(a)(1) (describing torture as "severe pain or suffering, whether physical or mental" when "intentionally inflicted ... for any reason based on discrimination of any kind.").

Here, the question of whether Mr. Totimeh would be tortured cannot be dismissed by a single bald sentence. *See Wang v. Ashcroft*, 320 F.3d 130, 134 (2d Cir. 2003) (A determination under CAT "is not simply a factual finding – it is based upon an application of the facts to the legal standard."). It requires an individual analysis of the facts and evidence. Without more, the IJ's analysis of CAT is woefully and legally insufficient. Therefore, it compels reversal. For the above reasons, under the proper legal standards and proper review of the record as a whole, asylum, withholding, and CAT should have been granted. The IJ's denial of all three applications for relief therefore compels reversal.

A208-125-369, YAW TOTIMEH, David

23

EOIR-000033

## CONCLUSION

For the above reasons, this Board should reverse the IJ's decision and grant all applications for relief, or in the alternative remand proceedings for the immigration judge to conduct a full and fair review of Respondent's applications for Asylum, Withholding of Removal and protection under the Convention Against and Torture on the record as a whole in the first instance.

Dated:      January 19, 2022
           New York, New York

Respectfully submitted,

Joshua E Bardavid, Esq.

A208-125-369, YAW TOTIMEH, David

24

EOIR-000034

## CERTIFICATE OF SERVICE

I, Joshua Bardavid, Esq., an attorney duly admitted in the Bar of the State of New York, affirm under penalty of perjury that on January 19, 2022, I served a true and correct copy of this **Brief In Support Of Appeal,** constituting 25 pages inclusive of this one, on opposing counsel by electronic service:

Office of the Chief Counsel

U.S. Immigration and Customs Enforcement
26 Federal Plaza

New York, New York 10278

Dated:    January 19, 2022
          New York, NY

Respectfully submitted,

Joshua E. Bardavid, Esq.

A208-125-369, YAW TOTIMEH, David

25

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Bardavid, Joshua Elliot
Bardavid Law
277 Broadway, Suite 1501
New York, NY 10007

DHS/ICE Office of Chief Counsel - NYC
26 Federal Plaza, 11th Floor
New York, NY 10278

Name: YAW TOTIMEH, DAVID

A 208-125-369

Type of Proceeding: Removal

Date of this notice: 12/21/2021

Type of Appeal: Case Appeal

Filed By: <u>Alien</u>

## NOTICE -- BRIEFING EXTENSION REQUEST GRANTED

Alien's <u>original</u> due date: 12/29/2021          DHS' <u>original</u> due date: 1/19/2022

o   The request by <u>the alien</u> for an additional amount of time to submit a brief, which was received on 12/17/2021          , is GRANTED.

o   The alien's brief must be **received** at the Board of Immigration Appeals on or before 1/19/2022

o   The DHS' brief must be **received** at the Board of Immigration Appeals on or before 2/9/2022

**PLEASE NOTE**

**WARNING:** If you indicate on the Notice of Appeal (Form EOIR-26) that you will file a brief or statement, you are expected to file a brief or statement in support of your appeal. If you fail to file a brief or statement within the time set for filing in this briefing schedule, the Board may summarily dismiss your appeal. See 8 C.F.R. § 1003.1(d)(2)(i)(E).

An extension has been granted in this case. Because the Board generally does not grant more than one extension per case, the parties should assume no further extensions will be granted. Each party's current due date is stated above.

<u>If you file your brief late</u>, you must file it along with a motion for consideration of your late-filed brief. There is no fee for such a motion. The motion must set forth in detail the reasons that prevented you from filing your brief on time. You should support the motion with affidavits, declarations, or other evidence. <u>Only one such motion will be considered by the Board</u>.

**NOTICE TO PARTIES – DHS/ICE prosecutorial discretion**: The Board is aware that DHS has issued memoranda regarding its enforcement priorities and framework to exercise prosecutorial discretion (memoranda are available on U.S. Immigration and Customs Enforcement (ICE) website at

www.ice.gov). See EOIR PM 22-25, Effect of Department of Homeland Security Enforcement Priorities, available at www.justice.gov/eoir. The parties may wish to assess whether this matter remains an enforcement priority and whether the exercise of prosecutorial discretion is warranted. However, as there are prohibitions on DHS's authority to exercise its prosecutorial discretion (e.g., individuals subject to mandatory detention pursuant to sections 236(c) and 241 of the Immigration and Nationality Act, 8 U.S.C. 1222(c) and1231; all inquiries regarding an individual respondent/applicant's eligibility for prosecutorial discretion must be made directly to DHS/ICE. If the parties jointly agree to the exercise of prosecutorial discretion, or if ICE otherwise intends to exercise some form of prosecutorial discretion, a motion should be filed with the Board to this effect and it should clearly contain the caption "EXERCISE OF PROSECUTORIAL DISCRETION" on the front of the motion.

**FILING INSTRUCTIONS**

**IMPORTANT: Briefs and other submissions should always be paginated. Parties must limit the body of their briefs or motions to 25 pages. If a party believes it cannot adequately dispose of the issues in the case within the page limit, the party should file the brief along with a motion to increase the page limit. See Chapter 3.3(c)(3) (Number of pages) and 4.6(b) (Brief writing guidelines) of the Board's Practice Manual.**

**The Board of Immigration Appeals has included two copies of this notice. Please attach one copy of this notice to the front of your brief when you mail or deliver it to the Board, and keep one for your records. Thank you for your cooperation.**

Use of an over-night courier service is strongly encouraged to ensure timely filing.

If you have any questions about how to file something at the Board, please review the Board's Practice Manual, found within the EOIR Policy Manual at www.justice.gov/eoir.

Certificate of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals -- including correspondence, forms, briefs, motions, and other documents. If you are the Respondent or Applicant, the "Opposing Party" is the DHS Counsel or the Director for HHS/ORR at the address shown above. Your certificate of service must clearly identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them. Any submission filed with the Board without a certificate of service on the opposing party will be rejected.

**FILING ADDRESS:**

> Board of Immigration Appeals
> Clerk's Office
> 5107 Leesburg Pike, Suite 2000
> Falls Church, VA  22041
>
> Business hours:  Monday through Friday, 8:00 a.m. to 4:30 p.m.

**Userteam:**

Joshua E Bardavid, Esq.
Bardavid Law, P.C.
277 Broadway, Suite 1501
New York, NY 10007
(212) 219-3244 (phone)
(212) 901-0949 (fax)
Elizabeth@bardavidlaw.com
*Attorney to Respondent*

**NOT DETAINED**



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
NEW YORK, NEW YORK

In the Matters of

**YAW TOTIMEH, DAVID**          A208-125-369

Respondents in Removal Proceedings

## MOTION FOR 21-DAY EXTENSION DUE TO MEDICAL LEAVE OF COUNSEL

Respondent, by and through counsel, respectfully requests an extension of the time within which to submit the brief in this matter by 21-days. Respondent's brief is currently due on December 29, 2021. However, undersigned counsel was not the attorney of record before the Immigration Court and requires additional time to familiarize himself with the transcript which was just received and is more than 120 pages long. Given the length of the transcript, the voluminous record, the complexities of the issues including a lengthy credibility determination by the

1

EOIR-000038

Immigration Judge, and office closures due to the holidays, additional time to properly and adequately address the issues in brief is requested. Given the importance and complexities of the issues presented including recent developments in caselaw, it is respectfully asserted that good cause exists to grant a 21-day extension of the briefing schedule.

### CONCLUSION

For the above-stated reasons, the this Board if respectfully requested to grant this motion and extend the briefing schedule for the parties by 21-days. Respectfully submitted,

s/ Joshua Bardavid, Esq.

Joshua Bardavid, Esq.



2

EOIR-000039

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Bardavid, Joshua Elliot**
**Bardavid Law**
**277 Broadway, Suite 1501**
**New York, NY 10007**

**DHS/ICE Office of Chief Counsel - NYC**
**26 Federal Plaza, 11th Floor**
**New York, NY 10278**

**Name: YAW TOTIMEH, DAVID**                    **A 208-125-369**

**Type of Proceeding: Removal**                    **Date of this notice: 12/8/2021**

**Type of Appeal: Case Appeal**                    **Filed By: Alien**

## NOTICE -- BRIEFING SCHEDULE

o    Enclosed is a copy of the decision of the Immigration Judge.

o    Enclosed is a copy of the transcript of the testimony of record.

o    Appealing party is granted until  12/29/2021          to submit a brief to the Board of Immigration Appeals.  The brief must be **RECEIVED** at the Board on or before this date.

o    Opposing party is granted until  1/19/2022          to submit a brief to the Board of Immigration Appeals.  The brief must be **RECEIVED** at the Board on or before this date.

**WARNING:** If you indicate on the Notice of Appeal (Form EOIR-26) that you will file a brief or statement, you are expected to file a brief or statement in support of your appeal.  If you fail to file a brief or statement within the time set for filing in this briefing schedule, the Board may summarily dismiss your appeal.  See 8 C.F.R. § 1003.1(d)(2)(i)(E).

If you are an alien and you received this notice, you are not represented by an attorney or accredited representative.  An attorney or accredited representative must file a Notice of Entry of Appearance (Form EOIR-27) to represent you.  8 C.F.R. §§ 1003.3(a)(3) and 1003-38(g).  Until a Form EOIR-27 is received, you are responsible for submitting a brief, and any submissions by anyone other than you will be rejected.

**NOTICE TO PARTIES – DHS/ICE prosecutorial discretion**: The Board is aware that DHS has issued memoranda regarding its enforcement priorities and framework to exercise prosecutorial discretion (memoranda are available on U.S. Immigration and Customs Enforcement (ICE) website at www.ice.gov).  See EOIR PM 21-25, Effect of Department of Homeland Security Enforcement Priorities, available at www.justice.gov/eoir.  The parties may wish to assess whether this matter remains an enforcement priority and whether the exercise of prosecutorial discretion is warranted.  However, as there are prohibitions on DHS's authority to exercise its prosecutorial discretion (e.g., individuals subject to mandatory detention pursuant to sections 236(c) and 241 of the Immigration and Nationality Act, 8 U.S.C. 1222(c) and1231, all inquiries regarding an individual respondent/applicant's eligibility for prosecutorial discretion must be made directly to DHS/ICE.  If the parties jointly agree to

EOIR-000040

the exercise of prosecutorial discretion, or if ICE otherwise intends to exercise some form of prosecutorial discretion, should be filed with the Board to this end it should clearly contain the caption "EXERCISE OF PROSECUTORIAL DISCRETION" on the front of the motion.

FILING INSTRUCTIONS -- In General.

IMPORTANT: The Board of Immigration Appeals has included two copies of this notice. Please attach one copy of this notice to the front of your brief when you mail or deliver it to the Board, and keep one for your records. Thank you for your cooperation.

A fee is not required for the filing of a brief. Your brief must be RECEIVED at the Clerk's Office at the Board of Immigration Appeals within the prescribed time limits. It is NOT sufficient simply to mail the brief and assume your brief will arrive on time. We strongly urge the use of an overnight courier service to ensure the timely filing of your brief.

Use of an over-night courier service is strongly encouraged to ensure timely filing.

If the alien is represented by counsel at the appeal level, a Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals (Form EOIR-27) must be filed with the Board.

If you have any questions about how to file something at the Board, you should review the Board's Practice Manual at www.justice.gov/eoir.

Proof of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals -- including correspondence, forms, briefs, motions, and other documents. If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the DHS or the Director for HHS/ORR at the address shown above. Your certificate of service must clearly identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them. Any submission filed with the Board without a certificate of service on the opposing party will be rejected.

FILING ADDRESS:

Board of Immigration Appeals
Clerk's Office
5107 Leesburg Pike, Suite 2000
Falls Church, VA  22041

Business hours:  Monday through Friday, 8:00 a.m. to 4:30 p.m.

Use of an overnight courier service is strongly encouraged to ensure timely filing.

FILING INSTRUCTIONS -- Extension Request.

Unless you receive a Board Notice granting your extension request, your brief will remain due on the date stated above.

Extensions of briefing time will only be granted for good cause. All extension requests must be in writing. Telephonic or fax requests will not be accepted.

Extension requests must be RECEIVED at the Board on or before the expiration of the initial briefing schedule. Requests for extension of briefing time received after expiration of the initial briefing schedule, will not be granted.

The policy of the Board is that no additional extensions will be granted.

SchlegeH
Userteam:CPT

## CERTIFICATE OF SERVICE

I certify that on December 13, 2021, I served a true and correct copy of the foregoing brief be served upon DHS by electronic service to: DHS/ICE, 26 Federal Plaza, Rm 1130, New York, NY 10278

Dated:          New York, New York

                New York

Respectfully submitted,

s/ Joshua Bardavid, Esq.

Joshua Bardavid, Esq.



3

EOIR-000042



PRI

M

## PRIORITY MAIL 2-DAY™

stamps
endicia
12/13/2021

Joshua E. Bardavid **0004**
Bardavid Law, P.C.
277 Broadway, Suite 1501
New York NY 10007-2007

C024

SHIP
TO:   Board of Immigration Appeals
      Office of the Chief Clerk
      5107 Leesburg Pike Suite 2000
      Falls Church VA 22041-3216

### USPS TRACKING #

9405 5112 0253 0414 1175 33

THIS PARCEL HAS BEEN X-RAYED

DEC 17 2021

RECEIVED #2

EOIR-000043



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia  22041*

Bardavid, Joshua Elliot
Bardavid Law
277 Broadway, Suite 1501
New York, NY 10007

DHS/ICE Office of Chief Counsel - NYC
26 Federal Plaza, 11th Floor
New York, NY 10278

Name: YAW TOTIMEH, DAVID

A 208-125-369

Type of Proceeding: Removal

Date of this notice: 12/8/2021

Type of Appeal: Case Appeal

Filed By: <u>Alien</u>

### NOTICE -- BRIEFING SCHEDULE

o   Enclosed is a copy of the decision of the Immigration Judge.

o   Enclosed is a copy of the transcript of the testimony of record.

o   Appealing party is granted until  12/29/2021          to submit a brief to the Board of Immigration Appeals.  The brief must be **RECEIVED** at the Board on or before this date.

o   Opposing party is granted until  1/19/2022          to submit a brief to the Board of Immigration Appeals.  The brief must be **RECEIVED** at the Board on or before this date.

**WARNING:** If you indicate on the Notice of Appeal (Form EOIR-26) that you will file a brief or statement, you are expected to file a brief or statement in support of your appeal.  If you fail to file a brief or statement within the time set for filing in this briefing schedule, the Board may summarily dismiss your appeal.  See 8 C.F.R. § 1003.1(d)(2)(i)(E).

If you are an alien and you received this notice, you are not represented by an attorney or accredited representative.  An attorney or accredited representative must file a Notice of Entry of Appearance (Form EOIR-27) to represent you.  8 C.F.R. §§ 1003.3(a)(3) and 1003-38(g).  Until a Form EOIR-27 is received, you are responsible for submitting a brief, and any submissions by anyone other than you will be rejected.

**NOTICE TO PARTIES – DHS/ICE prosecutorial discretion**:  The Board is aware that DHS has issued memoranda regarding its enforcement priorities and framework to exercise prosecutorial discretion (memoranda are available on U.S. Immigration and Customs Enforcement (ICE) website at <u>www.ice.gov</u>).  See EOIR PM 21-25, Effect of Department of Homeland Security Enforcement Priorities, available at <u>www.justice.gov/eoir</u>.  The parties may wish to assess whether this matter remains an enforcement priority and whether the exercise of prosecutorial discretion is warranted.  However, as there are prohibitions on DHS's authority to exercise its prosecutorial discretion (e.g., individuals subject to mandatory detention pursuant to sections 236(c) and 241 of the Immigration and Nationality Act, 8 U.S.C. 1222(c) and1231, all inquiries regarding an individual respondent/applicant's eligibility for prosecutorial discretion must be made directly to DHS/ICE.  If the parties jointly agree to

EOIR-000044

the exercise of prosecutorial discretion, or if ICE otherwise intends to exercise some form of prosecutorial discretion, a motion should be filed with the Board to this effect and it should clearly contain the caption "EXERCISE OF PROSECUTORIAL DISCRETION" on the front of the motion.

**FILING INSTRUCTIONS -- In General.**

**IMPORTANT: The Board of Immigration Appeals has included two copies of this notice. Please attach one copy of this notice to the front of your brief when you mail or deliver it to the Board, and keep one for your records. Thank you for your cooperation.**

A fee is not required for the filing of a brief. Your brief must be RECEIVED at the Clerk's Office at the Board of Immigration Appeals within the prescribed time limits. It is NOT sufficient simply to mail the brief and assume your brief will arrive on time. We strongly urge the use of an overnight courier service to ensure the timely filing of your brief.

Use of an over-night courier service is strongly encouraged to ensure timely filing.

If the alien is represented by counsel at the appeal level, a Notice of Entry of Appearance as Attorney or Representative before the Board of Immigration Appeals (Form EOIR-27) must be filed with the Board.

If you have any questions about how to file something at the Board, you should review the Board's Practice Manual at www.justice.gov/eoir.

Proof of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals -- including correspondence, forms, briefs, motions, and other documents. If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the DHS or the Director for HHS/ORR at the address shown above. Your certificate of service must clearly identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them. Any submission filed with the Board without a certificate of service on the opposing party will be rejected.

**FILING ADDRESS:**

Board of Immigration Appeals
Clerk's Office
5107 Leesburg Pike, Suite 2000
Falls Church, VA 22041

Business hours: Monday through Friday, 8:00 a.m. to 4:30 p.m.

Use of an overnight courier service is strongly encouraged to ensure timely filing.

**FILING INSTRUCTIONS -- Extension Request.**

Unless you receive a Board Notice granting your extension request, your brief will remain due on the date stated above.

Extensions of briefing time will only be granted for good cause. All extension requests must be in writing. Telephonic or fax requests will not be accepted.

Extension requests must be **RECEIVED** at the Board on or before the expiration of the initial briefing schedule. Requests for extension of briefing time received after expiration of the initial briefing schedule, will not be granted.

The policy of the Board is that no additional extensions will be granted.

SchlegeH
**Userteam**:CPT

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
NEW YORK, NY

Jan 10, 2020

A 208-125-369
YAW TOTIWEH, DAVID

TO:      Board of Immigration Appeals
         Office of the Clerk
         5107 Leesburg Pike, Suite 2000
         Falls Church, VA  22041

This Record of Proceeding (ROP) is forwarded to the Board of Immigration
Appeals for consideration of the following:

    [X] Appeal of the Immigration Judge decision.
    [ ] Appeal of Immigration Judge decision on a motion to reopen.

Please note:

    [ ] The respondent / applicant is DETAINED.
    [ ] Other _____
        _____

[ ] This ROP is for an appeal on a decision entered prior to July 1, 1996.
    This ROP is being submitted to APU at the following stage:

    [ ] Notice of Appeal filed.  Tapes need to be transcribed.
    [ ] IJ has signed decision.  Briefing schedule needs to be set.
    [ ] Motion for Extension of Time to Extend Briefing Schedule
        has been submitted.
    [ ] Briefing Schedule is complete / expired.

                                                              PZ

U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

**Bardavid, Joshua Elliot**
**Bardavid Law**
**277 Broadway, Suite 1501**
**New York, NY 10007**

**DHS/ICE Office of Chief Counsel - NYC**
**26 Federal Plaza, 11th Floor**
**New York, NY 10278**

Name: YAW TOTIWEH, DAVID

A208-125-369

Type of Proceeding: **Removal**

Date of this notice: **1/9/2020**

Type of Appeal: **Case Appeal**

Filed by:<u>Alien</u>

## FILING RECEIPT FOR APPEAL

The Board of Immigration Appeals acknowledges receipt of your appeal and fee or fee waiver request (where applicable) on   1/6/2020                      in the above-referenced case.

**WARNING:** If you leave the United States after filing this appeal but before the Board issues a decision your appeal will be considered withdrawn and the Immigration Judge's decision will become final as if no appeal had been taken (unless you are an "arriving alien" as defined in the regulations under 8 C.F.R. § 1001.1(q)).

**WARNING:** If you have been granted voluntary departure by the Immigration Judge, you must submit sufficient proof of having posted the voluntary departure bond set by the Immigration Judge to the Board of Immigration Appeals. Your submission of proof must be provided to the Board within 30 days of filing this appeal. If you do not timely submit proof to the Board that the voluntary departure bond has been posted, the Board cannot reinstate the period of voluntary departure. 8 C.F.R. § 1240.2(c)(3)(ii).

<u>PLEASE NOTE</u>:
In all future correspondence or filings with the Board, please list the name and alien registration number ("A" number) of the case (as indicated above), as well as all of the names and "A" numbers for <u>every</u> family member who is included in this appeal.

If you have any questions about how to file something at the Board, you should review the Board's <u>Practice Manual</u> at <u>www.justice.gov/eoir</u>.

<u>Proof of service on the opposing party at the address above is required for ALL submissions to the Board of Immigration Appeals</u> -- including correspondence, forms, briefs, motions, and other documents.  If you are the Respondent or Applicant, the "Opposing Party" is the District Counsel for the DHS or the Director of HHS/ORR at the address shown above. Your certificate of service must clearly *identify the document sent to the opposing party, the opposing party's name and address, and the date it was sent to them.* <u>Any</u> <u>submission filed with the Board without a certificate of service on the opposing party will be rejected.</u>

CC:                                                                       CheekL

Userteam:

EOIR-000047

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB# 1125-0002

**Notice of Appeal from a Decision of an Immigration Judge**

*Staple Check or Money Order Here. Include Name(s) and "A" Number(s) on the face of the check or money order*

**1.** List Name(s) and "A" Number(s) of all Respondent(s)/Applicant(s):

David Yaw Totiweh, A208-125-369

For Official Use Only

**! WARNING:** Names and "A" Numbers of **everyone** appealing the Immigration Judge's decision must be written in item #1. The names and "A" numbers listed will be the only ones considered to be the subjects of the appeal.

**2.** I am ☑ the Respondent/Applicant ☐ DHS-ICE *(Mark only one box.)*

**3.** I am ☐ DETAINED ☑ NOT DETAINED *(Mark only one box.)*

**4.** My last hearing was at 26 Federal Plaza, New York, New York 10278 *(Location, City, State)*

**5. What decision are you appealing?**

*Mark only one box below. If you want to appeal more than one decision, you must use more than one Notice of Appeal (Form EOIR-26).*

☑ I am filing an appeal from the Immigration Judge's decision *in **merits** proceedings* (example: removal, deportation, exclusion, asylum, etc.) dated 12/06/2019 .

☐ I am filing an appeal from the Immigration Judge's decision *in **bond** proceedings* dated _____. (For DHS use only: Did DHS invoke the automatic stay provision before the Immigration Court? ☐ Yes. ☐ No.)

☐ I am filing an appeal from the Immigration Judge's decision ***denying a motion to reopen or a motion to reconsider*** dated _____.

*(Please attach a copy of the Immigration Judge's decision that you are appealing.)*

Form EOIR-26
Revised Sept. 2019

**Page 1 of 3**

EOIR-000048

**6.** **State in detail the reason(s) for this appeal. Please refer to the General Instructions at item F for further guidance. You are not limited to the space provided below; use more sheets of paper if necessary. Write your name(s) and "A" number(s) on every sheet.**

David Yaw Totiweh, A208-125-369
The Immigration Judge erred as a matter of fact and law in denying the relief sought. Respondent demonstrated eligibility for asylum, withholding of removal, and protection under the Convention Against Torture. As undersigned counsel was not the attorney of record below, Respondent reserves the right to submit supplemental and/or alternative arguments upon receipt of the transcript.

*(Attach additional sheets if necessary)*

**WARNING:** You must clearly explain the specific facts and law on which you base your appeal of the Immigration Judge's decision. The Board may summarily dismiss your appeal if it cannot tell from this Notice of Appeal, or any statements attached to this Notice of Appeal, why you are appealing.

**7.** Do you desire oral argument before the Board of Immigration Appeals? ☐ Yes ☑ No

**8.** Do you intend to file a separate written brief or statement after filing this Notice of Appeal? ☑ Yes ☐ No

**WARNING:** If you mark "Yes" in item #7, you should also include in your statement above why you believe your case warrants review by a three-member panel. The Board ordinarily will not grant a request for oral argument unless you also file a brief.

If you mark "Yes" in item #8, you will be expected to file a written brief or statement after you receive a briefing schedule from the Board. The Board may summarily dismiss your appeal if you do not file a brief or statement within the time set in the briefing schedule..

**9.** | **Sign Here** ➡ | **X** _____ | **01/03/2020** |

Signature of Person Appealing
*(or attorney or representative)*

Date

Form EOIR-26
Revised Sept. 2019

Page 2 of 3

EOIR-000049

**10.**

| Mailing Address of Respondent(s)/Applicant(s) |
|---|
| David Yaw Totiweh |
| (Name) |
| 1694 Davidson Ave |
| (Street Address) |
| Apt 4A |
| (Apartment or Room Number) |
| Bronx, New York 10453 |
| (City, State, Zip Code) |
| 2122193244 |
| (Telephone Number) |

**11.**

| Mailing Address of Attorney or Representative for the Respondent(s)/Applicant(s) |
|---|
| Joshua E Bardavid |
| (Name) |
| 277 Broadway |
| (Street Address) |
| Suite 1501 |
| (Suite or Room Number) |
| New York, New York 10007 |
| (City, State, Zip Code) |
| 2122193244 |
| (Telephone Number) |

**NOTE:** You must notify the Board within five (5) working days if you move to a new address or change your telephone number. You must use the Change of Address Form/Board of Immigration Appeals (Form EOIR-33/BIA).

**NOTE:** If an attorney or representative signs this appeal for you, he or she must file *with this appeal*, a Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals (Form EOIR-27).

**12.**

## PROOF OF SERVICE (You Must Complete This)

I Joshua E Bardavid _____ mailed or delivered a copy of this Notice of Appeal

on 01/03/2020 _____ to DHS _____
(Date)                          (Opposing Party)

at 26 Federal Plaza, New York, New York 10278
(Number and Street, City, State, Zip Code)

SIGN HERE ➡ X _____
Signature

**NOTE:** If you are the Respondent or Applicant, the "Opposing Party" is the Assistant Chief Counsel of DHS - ICE.

**WARNING:** If you do not complete this section properly, your appeal will be rejected or dismissed.

**WARNING:** If you do not attach the fee or a completed Fee Waiver Request (Form EOIR-26A) to this appeal, your appeal may be rejected or dismissed.

### HAVE YOU?

☐ Read all of the General Instructions
☐ Provided all of the requested information
☐ Completed this form in English
☐ Provided a certified English translation for all non-English attachments
☐ Signed the form

☐ Served a copy of this form and all attachments on the opposing party
☐ Completed and signed the Proof of Service
☐ Attached the required fee or Fee Waiver Request
☐ If represented by attorney or representative, attach a completed and signed EOIR-27

Form EOIR-26
Revised Sept. 2019

EOIR-000050

IMMIGRATION COURT
26 FEDERAL PLZ, 12TH FL RM1237
NEW YORK, NY 10278

In the Matter of

Case No.: A208-125-369

YAW TOTIWEH, DAVID
Respondent

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on 12-6 . This memorandum is solely for the convenience of the parties. If the proceedings should be appealed or reopened, the oral decision will become the official opinion in the case.

[X] The respondent was ordered removed from the United States to GHANA or in the alternative to .

[ ] Respondent's application for voluntary departure was denied and respondent was ordered removed to GHANA or in the alternative to .

[ ] Respondent's application for voluntary departure was granted until , upon posting a bond in the amount of $ _____ with an alternate order of removal to GHANA.

Respondent's application for:

[X] Asylum was ( )granted (X)denied( )withdrawn.

[X] Withholding of removal was ( )granted (X)denied ( )withdrawn.

[ ] A Waiver under Section _____ was ( )granted ( )denied ( )withdrawn.

[ ] Cancellation of removal under section 240A(a) was ( )granted ( )denied ( )withdrawn.

Respondent's application for:

[ ] Cancellation under section 240A(b)(1) was ( ) granted ( ) denied ( ) withdrawn. If granted, it is ordered that the respondent be issued all appropriate documents necessary to give effect to this order.

[ ] Cancellation under section 240A(b) (2) was ( )granted ( )denied ( )withdrawn. If granted it is ordered that the respondent be issued all appropriated documents necessary to give effect to this order.

[ ] Adjustment of Status under Section _____ was ( )granted ( )denied ( )withdrawn. If granted it is ordered that the respondent be issued all appropriated documents necessary to give effect to this order.

[X] Respondent's application of (✓) withholding of removal ( ) deferral of removal under Article III of the Convention Against Torture was ( ) granted (X) denied ( ) withdrawn.

[ ] Respondent's status was rescinded under section 246.

[ ] Respondent is admitted to the United States as a _____ until _____.

[ ] As a condition of admission, respondent is to post a $ _____ bond.

[ ] Respondent knowingly filed a frivolous asylum application after proper notice.

[ ] Respondent was advised of the limitation on discretionary relief for failure to appear as ordered in the Immigration Judge's oral decision.

[ ] Proceedings were terminated.

[ ] Other: _____

Date: Dec 6, 2019

SAGESSE, CATHY
Immigration Judge

Appeal: Waived/Reserved    Appeal Due By:

EOIR-000051

1/3/2020

FedEx Ship Manager - Print Your Label(s)



ORIGIN ID:PCTA (212) 219-3244
JOSHUA BARDAVID
JOSHUA E. BARDAVID, ESQ.
277 BROADWAY, SUITE 1501
NEW YORK, NY 10007
UNITED STATES US

SHIP DATE: 03JAN20
ACTWGT: 1.00 LB
CAD: 7300723/INET4160

BILL SENDER

TO CLERKS OFFICE
BOARD OF IMMIGRATION APPEALS
5107 LEESBURG PIKE STE 2000

FALLS CHURCH VA 22041
(703) 305-0289
INV:
PO:
REF: DAVID YAW TOITWEH
DEPT:

TRK# 0201
7773 9187 8160

SA ZFOA

MON - 06 JAN 3:00P
STANDARD OVERNIGHT

22041
VA-US
IAD

567J2/18DD/05A2

J19211909190tuu

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

*Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.*
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

EOIR-000052

**U.S. Department of Justice**
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB#1125-0005

**Notice of Entry of Appearance as Attorney or Representative Before the Board of Immigration Appeals**

| (Type or Print) **NAME AND ADDRESS OF REPRESENTED PARTY** | | | **ALIEN ("A") NUMBER** (Provide A- number of the party represented or the visa beneficiary in this case.) |
|---|---|---|---|

David | | Yaw Totiweh | 208125369

(First) | (Middle Initial) | (Last)

| | | **USCIS Visa Appeal** (Provide beneficiary name) |

1694 Davidson Avenue | Apt 4A

(Number and Street) | (Apt. No.)

**Fine** (Provide fine number)

Bronx | 10453

(City) | (State) | (Zip Code)

**Disciplinary case** (Provide docket number)

**Attorney or Representative (please check one of the following):**

[✓] I am an attorney eligible to practice law in, and a member in good standing of, the bar of the highest court(s) of the following states(s), possession(s), territory(ies), commonwealth(s), or the District of Columbia (use additional space on reverse side if necessary) and I am not subject to any order disbarring, suspending, enjoining, restraining or otherwise restricting me in the practice of law in any jurisdiction (if subject to such an order, do not check this box and explain on reverse).

Full Name of Court New York State, App Div, 2d     Bar Number (if applicable) _____

[ ] I am a representative accredited to appear before the Executive Office for Immigration Review as defined in 8 C.F.R. § 1292.1(a)(4) with the following recognized organization:

_____

[ ] I am a law student or law graduate of an accredited U.S. law school as defined in 8 C.F.R. § 1292.1(a)(2).
[ ] I am a reputable individual as defined in 8 C.F.R. § 1292.1(a)(3).
[ ] I am an accredited foreign government official, as defined in 8 C.F.R. § 1291.1(a)(5), from _____ (country).
[ ] I am a person who was authorized to practice on December 23, 1952, under 8 C.F.R. § 1292.1(b).

**Attorney or Representative (please check one of the following):**

[✓] I hereby enter my appearance as attorney or representative for, and at the request of, the party named above.
[ ] EOIR has ordered the provision of a Qualified Representative for the party named above and I appear in that capacity.

I have read and understand the statements provided on the reverse side of this form that set forth the regulations and conditions governing appearances and representations before the Board of Immigration Appeals. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| SIGNATURE OF ATTORNEY OR REPRESENTATIVE | EOIR ID NUMBER | DATE |
|---|---|---|
| X _____ | GW790043 | 01/03/2020 |

**NAME OF ATTORNEY OR REPRESENTATIVE, ADDRESS, FAX & PHONE NUMBERS, & EMAIL ADDRESS**

Name: Joshua | E | Bardavid

(First) | (Middle Initial) | (Last)

Address: 277 Broadway

(Number and Street)

New York | Ne | 10007

(City) | (State) | (Zip Code)

Telephone: 3476157905     Facsimile: 2129010949     Email: josh@bardavidlaw.com

[ ] Check here if new address

Form EOIR - 27
Rev. July 2015

EOIR-000053

**Indicate Type of Appearance:**

☑ Primary Attorney/Representative          ☐ Non-Primary Attorney/Representative

I am providing pro bono representation.  Check one: ☐ yes ☑ no

---

**Proof of Service**

I (Name) Joshua E Bardavid _____ mailed or delivered a copy of this Form EOIR-27 on (Date) 01/03/2020 _____

to the ☒ DHS (U.S. Immigration and Customs Enforcement – ICE) at 26 Federal Plaza, New York, New York 10278 _____

☐ DHS (U.S. Citizenship and Immigration Services – USCIS) at _____

☐ EOIR Disciplinary Counsel at _____

X _____

　　　　　　　　　Signature of Person Serving

---

**APPEARANCES** - An appearance for each represented party shall be filed on a separate Form EOIR-27 by the attorney or representative appearing in each appeal or motion to reopen or motion to reconsider before the Board of Immigration Appeals (see 8 C.F.R. § 1003.38(g)), even though the attorney or representative may have appeared in the case before the Immigration Judge or the U.S. Citizenship and Immigration Services. If information is omitted from the Form EOIR-27 or it is not properly completed, the appearance may not be recognized and the accompanying filing may be rejected. When an appearance is made by a person acting in a representative capacity, his/her personal appearance or signature constitutes a representation that, under the provisions in 8 C.F.R. part 1003, he/she is authorized and qualified to represent individuals and will comply with the EOIR Rules of Professional Conduct in 8 C.F.R. § 1003.102. Thereafter, substitution or withdrawal may be permitted upon approval by the Board of a request of the attorney or representative of record in accordance with *Matter of Rosales*, 19 I&N Dec. 655 (1988). Please note that appearances for limited purposes are not permitted. *See Matter of Velasquez*, 19 I&N Dec. 377, 384 (BIA 1986).  Attorneys and Accredited Representatives (with full accreditation) must first update their address in eRegistry before filing a Form EOIR-27 that reflects a new address.

**FREEDOM OF INFORMATION ACT** - This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is in 28 C.F.R. §§ 16.1-16.11 and appendices. For further information about requesting records from EOIR under the Freedom of Information Act, see How to File a Freedom of Information Act (FOIA) Request With the Executive Office for Immigration Review, available on EOIR's website at http://www.justice.gov/eoir.

**PRIVACY ACT NOTICE** - The information requested on this form is authorized by 8 U.S.C. § 1362 and 8 C.F.R. § 1003.3 in order to enter an appearance to represent a party before the Board of Immigration Appeals. The information you provide is mandatory and required to enter an appearance. Failure to provide the requested information will result in an inability to represent a party or receive notice of actions in a proceeding. EOIR may share this information with others in accordance with approved routine uses described in EOIR's system of records notice, EOIR-001, Records and Management Information System, 69 Fed. Reg. 26,179 (May 11, 2004), or its successors and EOIR-003, Practitioner Complaint-Disciplinary Files, 64 Fed. Reg. 49237 (September 1999).

**CASES BEFORE EOIR** - Automated information about cases before EOIR is available by calling (800) 898-7180 or (240) 314-1500.

**ADDITIONAL INFORMATION:**

---

Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. The estimated average time to complete this form is six (6) minutes. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 22041.

Form EOIR - 27
Rev. July 2015

EOIR-000054



IMMIGRATION COURT
26 FEDERAL PLZ, 12TH FL RM1237
NEW YORK, NY 10278

In the Matter of

Case No.: A208-125-369

YAW TOTIWEH, DAVID
Respondent

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on 12-6-2019
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[X] The respondent was ordered removed from the United States to
GHANA or in the alternative to .

[ ] Respondent's application for voluntary departure was denied and
respondent was ordered removed to GHANA or in the
alternative to .

[ ] Respondent's application for voluntary departure was granted until
upon posting a bond in the amount of $ _____ .
with an alternate order of removal to GHANA.

Respondent's application for:

[X] Asylum was ( )granted (X)denied( )withdrawn.

[X] Withholding of removal was ( )granted (X)denied ( )withdrawn.

[ ] A Waiver under Section _____ was ( )granted ( )denied ( )withdrawn.

[ ] Cancellation of removal under section 240A(a) was ( )granted ( )denied
( )withdrawn.

Respondent's application for:

[ ] Cancellation under section 240A(b)(1) was ( ) granted ( ) denied
( ) withdrawn. If granted, it is ordered that the respondent be issued
all appropriate documents necessary to give effect to this order.

[ ] Cancellation under section 240A(b)(2) was ( )granted ( )denied
( )withdrawn. If granted it is ordered that the respondent be issued
all appropriated documents necessary to give effect to this order.

[ ] Adjustment of Status under Section _____ was ( )granted ( )denied
( )withdrawn. If granted it is ordered that the respondent be issued
all appropriated documents necessary to give effect to this order.

[X] Respondent's application of (X) withholding of removal ( X deferral of
removal under Article III of the Convention Against Torture was
( ) granted (X) denied ( ) withdrawn.

[ ] Respondent's status was rescinded under section 246.

[ ] Respondent is admitted to the United States as a _____ until _____.

[ ] As a condition of admission, respondent is to post a $ _____ bond.

[ ] Respondent knowingly filed a frivolous asylum application after proper
notice.

[ ] Respondent was advised of the limitation on discretionary relief for
failure to appear as ordered in the Immigration Judge's oral decision.

[ ] Proceedings were terminated.

[ ] Other: _____

Date: Dec 6, 2019

SAGESSE, CATHY
Immigration Judge

Appeal: Waived/Reserved    Appeal Due By:

Respondent only
Due by Jan.6, 2020

EOIR-000055

ALIEN NUMBER: 208-125-369       NAME: YAW TOTIWEH, DAVID

CERTIFICATE OF SERVICE
THIS DOCUMENT WAS SERVED BY:  MAIL (M)     PERSONAL SERVICE (P)
TO: [ ] ALIEN  [ ] ALIEN c/o Custodial Officer  [ ] ALIEN'S ATT/REP  [ ] DHS
DATE: 12-6-2019  BY: COURT STAFF _____
      Attachments: [ ] EOIR-33  [ ] EOIR-28  [ ] Legal Services List  [ ] Other

Q6

EOIR-000056

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
NEW YORK, NEW YORK

File: A208-125-369                                December 6, 2019

In the Matter of

DAVID YAW TOTIMEH          )          IN REMOVAL PROCEEDINGS
                           )
    RESPONDENT             )
                           )

CHARGES:

APPLICATIONS:

ON BEHALF OF RESPONDENT:  Melissa Malmgren

ON BEHALF OF DHS:  Carol Moore

## ORAL DECISION OF THE IMMIGRATION JUDGE

The respondent is a male, native and citizen of Ghana who entered the United States on or about April 7, 2015. On May 14, 2015, the Department of Homeland Security issued a Notice to Appear charging the respondent with inadmissibility. A form I-261 was subsequently filed amending the allegations in the Notice to Appear. The respondent through counsel admitted each of the factual allegations and conceded the sole charge of removability. And based on the respondent's admissions, the court sustained the charge and directed Ghana as the country of removal should removal be necessary. As relief from removal, the

EOIR-000057

respondent filed an application for asylum, withholding of removal, and protection under the Convention Against Torture on July 31st, 2015. The respondent offered documentary evidence in support of his application. The documentary evidence submitted by the respondent was listed as Exhibits 2 through 8. The court has considered the entire record in making its decision regarding the respondent's application for relief whether or not explicitly mentioned in this decision. In addition, the respondent offered testimonial evidence from himself, and he also submitted a written statement. A copy of the addendum of law stating the standards of law and burdens of proof relevant to these issues will be placed in the record of proceedings. That addendum is hereby incorporated into this decision by reference. Regarding the one-year filing deadline, the court finds the respondent's application to be timely filed and this is not a matter in dispute. Having reviewed the record in its entirety, the court finds that the respondent is not credible. In making that determination, the court has considered the totality of the circumstances, including the respondent's demeanor while testifying, his responsiveness to the questions that were asked, and the inherent plausibility of his claim, the consistency of his statements, and documentary evidence. The court finds the respondent is not credible and that he has not sufficiently proven his identity to the court and has not provided the court with a sufficient reason as to why he did not provide the court with any original documents associated with his identity. Identity is essential in this case as he is relying on his identity as a member of his family as grounds for his asylum request. The respondent is in court with a fictitious name and a fictitious date of birth. Fictitious identity visas and passports were made under this name by his friend Totimeh. The respondent used those fictitious travel documents to travel out of his country. The respondent continues to use this fictitious name here in the United States. The respondent provided the court with a copy of a birth certificate

A208-125-369                            2                  December 6, 2019

EOIR-000058

that he indicates belongs to him. The original document was never presented or provided to this court. The respondent testified that this document that he claims to be a copy of an original birth certificate were obtained from his friend Totimeh, the same friend that is responsible for creating the previous fictitious documents associated with his current fictitious name that he is using. The respondent has never legally changed his name. As to his accounts associated with what happened to him in Ghana the respondent has failed to provide sufficient corroborating evidence. The respondent has not supplied the court with his father's death certificate, his father's will, a copy of the deed to his property. The court finds the failure to supply these items do not comply with the REAL ID Act. The court finds that since 2000, the time in which he claims his father died, these documents were readily available to the respondent. Moreover, the respondent is also arguing that he has been persecuted by his brother as a result of his religion because he no longer practices the Muslim faith. He states that his brother is the secretary of a local mosque. The respondent has not provided the court with any corroborating evidence to support that his brother is a part of the local mosque. While the court is finding the respondent not credible and is denying the respondent's application as a result of him being not credible, even if the court were to find the respondent credible the court would deny the respondent's application on the merits as the respondent has not established that he has been persecuted on a protected ground. To qualify for a grant of asylum an applicant bears the burden of demonstrating that he meets the statutory definition of a refugee which requires a showing of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The court finds the respondent has failed to establish that the harm he suffered amounts to past persecution. Persecution is the infliction of suffering or harm upon those who differ on

A208-125-369                                   3                          December 6, 2019

the basis of a protected statutory ground and includes non-life-threatening violence and physical abuse. The respondent testified about two separate incidents that occurred where he was beaten up by his brother and friends. On at least one of those incidents, he claimed that his brother cut him with a knife on his face. The respondent was treated by a friend for one of those occasions and treated himself on another one of those occasions. He was never provided with any medical treatment from a medical facility. The court finds that the level of harm that he suffered does not amount to persecution. The court further finds that the respondent has failed to establish a well-founded fear of future persecution. The respondent testified that there was a two-year period where he had no further issues with his brother after the first incident. He lived three hours away in Adenta with his friend Ceki [phonetic]. The respondent was able to safely relocate while being supported by his friend. He chose to go back to Nima on his own free will where he was met with the circumstances surrounding the second incident. The facts support that the respondent can safely relocate to another part of the country as he has done in the past. The court finds that the respondent has not established a nexus to a protected ground as well. An applicant for asylum must also demonstrate that the persecution that he or she fears was or would be on account of his or her race, religion, nationality, membership in a particular social group, or political opinion. The respondent cannot establish that he is a member of a cognizable particular social group. A particular social group must first be comprised of members who share a common immutable characteristic, two, be defined with particularity, and three, be socially distinct within the society in question. The characteristic may be innate or based on a shared past experience. The respondent's proposed social group is descendants of Mohammad Yaru [phonetic] and members of the nuclear of the family of Mohammad Yaru. The respondent has failed to show that he is a member of the groups he claims

A208-125-369                                  4                          December 6, 2019

that he is a part of. He failed to provide the court with any sufficient identifying information to show that he is a member of his family group. He is in the United States with a fictious name and came here with fictitious travel documents. The only document that he has provided to the court that he says is his original birth certificate is a copy and not an original. Moreover, it was given to him by a friend who assisted him with the other fictitious documents created to leave his country. Because he has not provided these documents, he has not shown that he shares a common immutable characteristic with the family that he claims he is a part of. The court cannot very his information. He has not shown that his family is socially distinct within the society either. In the more recent Matter of L-E-A- decision the attorney general recently determined that an alien cannot show that his family is a particular social group unless he shows that it is distinct in the society in question, i.e., that it has some greater meaning in society. Matter of L-E-A-, 25 I&N Dec. 581, 594 (A.G. 2019). It is not enough that those targeting the alien view his family as a group set apart, the society in question must do so. The respondent has not made this showing. In other words, the respondent has not shown that the Mohammad Yaru family is socially distinct within the Ghana society, or socially distinct within the area of Nima. Social distinction means that society in general not just the alleged persecutors perceive and recognizes the person sharing the proffered characteristic of a group. See W-G-R- at 26 I&N Dec. 216 (2018). Further, the respondent has not shown that he was persecuted on account of his religion either. The respondent testified that he stopped practicing Islam in 2014. The first incident occurred in 2012, two years before this incident. There is no evidence to suggest that he was harmed because of his religion as opposed to a private family matter amongst siblings. The court further finds the respondent has not established that the government is unable or unwilling to protect him. The respondent never reported the first incident,

A208-125-369                                    5                       December 6, 2019

so he never gave the police or the government the opportunity to do anything. And regarding the second incident, the respondent indicated that he went to the police before the second incident took place. The police told him to have the imam handle it, he never went to the police after the second alleged beating, he never gave them the opportunity to do anything. So, for the aforementioned reasons, the court is denying the respondent's application with respect to asylum. In as much as the respondent has failed to satisfy the lower burden of proof required for asylum, it necessarily follows that he failed to satisfy the more stringent clear probability of persecution standard required for withholding of removal. So, the court is denying that application as well. The Convention Against Torture and its implementing regulations provide that no person shall be removed to a country where it is more likely than not that such person will be subject to torture. And torture is an extreme form of cruel and inhuman treatment defined in part as the intentional infliction of severe pain or suffering by, or at the instigation of, or with the consent, or acquiescence of a public official. Because the respondent's claim is based on the same factual predicate as his unsuccessful asylum claim he is necessarily unable to meet his burden that he is more likely than not to be tortured for CAT relief. The court would add that the respondent has failed to establish government acquiescence. Acquiescence of a public official requires the official have awareness or remain willfully blind to the activity constituting torture prior to its commission and therefore breach his or her legal responsibility to intervene. In this case, the respondent testified he never gave the police sufficient time to be involved in the incident. He never reported the matter immediately after the alleged beating took place. Moreover, it should be noted that his brothers were private citizens acting in their private capacities when these incidents took place. None of the respondent's brothers were government officials, or worked for the government, or were given permission to

A208-125-369                    6                    December 6, 2019

act on behalf of the government when these incidents took place. Again, this was a private matter amongst private individuals which involved private acts of violence. Accordingly, the court will enter the following orders. It is hereby ordered that the respondent's application for asylum under INA Section 208(b)(1) is denied. It is further ordered that the respondent's application for withholding of removal under INA Section 241(b)(3) is denied. It is further ordered that the respondent's application for protection under the Convention Against Torture is denied.

**_Please see the next page for electronic_**

**_signature_**

SAGESSE, CATHY
Immigration Judge

A208-125-369                    7                    December 6, 2019

EOIR-000063

//s//

Immigration Judge SAGESSE, CATHY

i:0e.t|eoir federation services|cathy.sagesse@usdoj.gov on
September 29, 2021 at 12:20 PM GMT

A208-125-369                          8                    December 6, 2019

EOIR-000064

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
NEW YORK, NEW YORK

File: A208-125-369                                          December 6, 2019

In the Matter of

DAVID YAW TOTIMEH          )          IN REMOVAL PROCEEDINGS
                           )
    RESPONDENT             )

CHARGES:

APPLICATIONS:

ON BEHALF OF RESPONDENT:  Melissa Malmgren

ON BEHALF OF DHS:  Carol Moore

<u>ORAL DECISION OF THE IMMIGRATION JUDGE</u>

The respondent is a male, native and citizen of Ghana who entered the United States on or about April 7, 2015. On May 14, 2015, the Department of Homeland Security issued a Notice to Appear charging the respondent with inadmissibility. A form I-261 was subsequently filed amending the allegations in the Notice to Appear. The respondent through counsel admitted each of the factual allegations and conceded the sole charge of removability. And based on the respondent's admissions, the court sustained the charge and directed Ghana as the country of removal should removal be necessary. As relief from removal, the

EOIR-000065

respondent filed an application for asylum, withholding of removal, and protection under the Convention Against Torture on July 31st, 2015. The respondent offered documentary evidence in support of his application. The documentary evidence submitted by the respondent was listed as Exhibits 2 through 8. The court has considered the entire record in making its decision regarding the respondent's application for relief whether or not explicitly mentioned in this decision. In addition, the respondent offered testimonial evidence from himself, and he also submitted a written statement. A copy of the addendum of law stating the standards of law and burdens of proof relevant to these issues will be placed in the record of proceedings. That addendum is hereby incorporated into this decision by reference. Regarding the one-year filing deadline, the court finds the respondent's application to be timely filed and this is not a matter in dispute. Having reviewed the record in its entirety, the court finds that the respondent is not credible. In making that determination, the court has considered the totality of the circumstances, including the respondent's demeanor while testifying, his responsiveness to the questions that were asked, and the inherent plausibility of his claim, the consistency of his statements, and documentary evidence. The court finds the respondent is not credible and that he has not sufficiently proven his identity to the court and has not provided the court with a sufficient reason as to why he did not provide the court with any original documents associated with his identity. Identity is essential in this case as he is relying on his identity as a member of his family as grounds for his asylum request. The respondent is in court with a fictitious name and a fictitious date of birth. Fictitious identity visas and passports were made under this name by his friend Totimeh. The respondent used those fictitious travel documents to travel out of his country. The respondent continues to use this fictitious name here in the United States. The respondent provided the court with a copy of a birth certificate

EOIR-000066

that he indicates belongs to him. The original document was never presented or provided to this court. The respondent testified that this document that he claims to be a copy of an original birth certificate were obtained from his friend Totimeh, the same friend that is responsible for creating the previous fictitious documents associated with his current fictitious name that he is using. The respondent has never legally changed his name. As to his accounts associated with what happened to him in Ghana the respondent has failed to provide sufficient corroborating evidence. The respondent has not supplied the court with his father's death certificate, his father's will, a copy of the deed to his property. The court finds the failure to supply these items do not comply with the REAL ID Act. The court finds that since 2000, the time in which he claims his father died, these documents were readily available to the respondent. Moreover, the respondent is also arguing that he has been persecuted by his brother as a result of his religion because he no longer practices the Muslim faith. He states that his brother is the secretary of a local mosque. The respondent has not provided the court with any corroborating evidence to support that his brother is a part of the local mosque. While the court is finding the respondent not credible and is denying the respondent's application as a result of him being not credible, even if the court were to find the respondent credible the court would deny the respondent's application on the merits as the respondent has not established that he has been persecuted on a protected ground. To qualify for a grant of asylum an applicant bears the burden of demonstrating that he meets the statutory definition of a refugee which requires a showing of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. The court finds the respondent has failed to establish that the harm he suffered amounts to past persecution. Persecution is the infliction of suffering or harm upon those who differ on

A208-125-369        3        December 6, 2019

the basis of a protected statutory ground and includes non-life-threatening violence and physical abuse. The respondent testified about two separate incidents that occurred where he was beaten up by his brother and friends. On at least one of those incidents, he claimed that his brother cut him with a knife on his face. The respondent was treated by a friend for one of those occasions and treated himself on another one of those occasions. He was never provided with any medical treatment from a medical facility. The court finds that the level of harm that he suffered does not amount to persecution. The court further finds that the respondent has failed to establish a well-founded fear of future persecution. The respondent testified that there was a two-year period where he had no further issues with his brother after the first incident. He lived three hours away in Adenta with his friend Ceki [phonetic]. The respondent was able to safely relocate while being supported by his friend. He chose to go back to Nima on his own free will where he was met with the circumstances surrounding the second incident. The facts support that the respondent can safely relocate to another part of the country as he has done in the past. The court finds that the respondent has not established a nexus to a protected ground as well. An applicant for asylum must also demonstrate that the persecution that he or she fears was or would be on account of his or her race, religion, nationality, membership in a particular social group, or political opinion. The respondent cannot establish that he is a member of a cognizable particular social group. A particular social group must first be comprised of members who share a common immutable characteristic, two, be defined with particularity, and three, be socially distinct within the society in question. The characteristic may be innate or based on a shared past experience. The respondent's proposed social group is descendants of Mohammad Yaru [phonetic] and members of the nuclear of the family of Mohammad Yaru. The respondent has failed to show that he is a member of the groups he claims

A208-125-369                         4                    December 6, 2019

that he is a part of. He failed to provide the court with any sufficient identifying information to show that he is a member of his family group. He is in the United States with a fictious name and came here with fictitious travel documents. The only document that he has provided to the court that he says is his original birth certificate is a copy and not an original. Moreover, it was given to him by a friend who assisted him with the other fictitious documents created to leave his country. Because he has not provided these documents, he has not shown that he shares a common immutable characteristic with the family that he claims he is a part of. The court cannot very his information. He has not shown that his family is socially distinct within the society either. In the more recent Matter of L-E-A- decision the attorney general recently determined that an alien cannot show that his family is a particular social group unless he shows that it is distinct in the society in question, i.e., that it has some greater meaning in society. Matter of L-E-A-, 25 I&N Dec. 581, 594 (A.G. 2019). It is not enough that those targeting the alien view his family as a group set apart, the society in question must do so. The respondent has not made this showing. In other words, the respondent has not shown that the Mohammad Yaru family is socially distinct within the Ghana society, or socially distinct within the area of Nima. Social distinction means that society in general not just the alleged persecutors perceive and recognizes the person sharing the proffered characteristic of a group. See W-G-R- at 26 I&N Dec. 216 (2018). Further, the respondent has not shown that he was persecuted on account of his religion either. The respondent testified that he stopped practicing Islam in 2014. The first incident occurred in 2012, two years before this incident. There is no evidence to suggest that he was harmed because of his religion as opposed to a private family matter amongst siblings. The court further finds the respondent has not established that the government is unable or unwilling to protect him. The respondent never reported the first incident,

so he never gave the police or the government the opportunity to do anything. And regarding the second incident, the respondent indicated that he went to the police before the second incident took place. The police told him to have the imam handle it, he never went to the police after the second alleged beating, he never gave them the opportunity to do anything. So, for the aforementioned reasons, the court is denying the respondent's application with respect to asylum. In as much as the respondent has failed to satisfy the lower burden of proof required for asylum, it necessarily follows that he failed to satisfy the more stringent clear probability of persecution standard required for withholding of removal. So, the court is denying that application as well. The Convention Against Torture and its implementing regulations provide that no person shall be removed to a country where it is more likely than not that such person will be subject to torture. And torture is an extreme form of cruel and inhuman treatment defined in part as the intentional infliction of severe pain or suffering by, or at the instigation of, or with the consent, or acquiescence of a public official. Because the respondent's claim is based on the same factual predicate as his unsuccessful asylum claim he is necessarily unable to meet his burden that he is more likely than not to be tortured for CAT relief. The court would add that the respondent has failed to establish government acquiescence. Acquiescence of a public official requires the official have awareness or remain willfully blind to the activity constituting torture prior to its commission and therefore breach his or her legal responsibility to intervene. In this case, the respondent testified he never gave the police sufficient time to be involved in the incident. He never reported the matter immediately after the alleged beating took place. Moreover, it should be noted that his brothers were private citizens acting in their private capacities when these incidents took place. None of the respondent's brothers were government officials, or worked for the government, or were given permission to

EOIR-000070

act on behalf of the government when these incidents took place. Again, this was a private matter amongst private individuals which involved private acts of violence. Accordingly, the court will enter the following orders. It is hereby ordered that the respondent's application for asylum under INA Section 208(b)(1) is denied. It is further ordered that the respondent's application for withholding of removal under INA Section 241(b)(3) is denied. It is further ordered that the respondent's application for protection under the Convention Against Torture is denied.

_____

SAGESSE, CATHY
Immigration Judge

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of

File: A208-125-369

DAVID YAW TOTIMEH )
)   IN REMOVAL PROCEEDINGS
)
RESPONDENT )   Transcript of Hearing

Before RILEY, KEVIN W., Immigration Judge

Date: June 18, 2015            Place: LOS ANGELES, CALIFORNIA

Transcribed by Diaz Data Services

Official Interpreter:

Language: ENGLISH

Appearances:

  For the Respondent: PRO SE

  For the DHS: NATHAN AINA

EOIR-000072

JUDGE FOR THE RECORD

This is Immigration Judge Kevin Riley, conducting removal proceedings in Los Angeles, California. Today's date is June 18th, 2015. We're here in the matter of Yaw Totimeh, David, A-number 208-125-369. The respondent is present. He's unrepresented.

JUDGE TO MR. AINA

Representing the Department today is?

MR. AINA TO JUDGE

Nathan Aina [phonetic].

JUDGE TO MR. YAW TOTIMEH

Good morning, sir.

MR. YAW TOTIMEH TO JUDGE

Good morning, sir.

JUDGE TO MR. YAW TOTIMEH

Could you please state your full name for the record?

MR. YAW TOTIMEH TO JUDGE

David Yaw Totimeh.

JUDGE TO MR. YAW TOTIMEH

And what language do you speak best?

MR. YAW TOTIMEH TO JUDGE

Hausa.

JUDGE TO MR. YAW TOTIMEH

Hausa. Do you speak any other languages, or Hausa's your best? Hausa? Okay. Okay. So I'm going to reschedule your case so we can have a Hausa interpreter present. So I'm going to reschedule your case to June 25th at 1:00.

EOIR-000073

JUDGE FOR THE RECORD

I'll provide both parties with the notice of the next hearing date.  And this hearing's adjourned.

<u>HEARING CLOSED</u>

A208-125-369                                  2                                  June 18, 2015

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of

File: A208-125-369

DAVID YAW TOTIMEH )
)
RESPONDENT )
)

IN REMOVAL PROCEEDINGS

Transcript of Hearing

Before RILEY, KEVIN W., Immigration Judge

Date: June 25, 2015

Place: LOS ANGELES, CALIFORNIA

Transcribed by Diaz Data Services

Official Interpreter: MUHAMMAD UMAR AJUD

Language: HAUSA

Appearances:

For the Respondent: PRO SE

For the DHS: PETER GLASGOW

EOIR-000075

JUDGE FOR THE RECORD

This is Immigration Judge Kevin Riley, conducting removal proceedings in Los Angeles, California. Today's date is June 25th, 2015. We're here in the matter of David Yaw Totimeh, A-number 208-129-369. The respondent is present. He does not have an attorney.

JUDGE TO MR. GLASGOW

Representing the Department today is?

MR. GLASGOW TO JUDGE

Peter Glasgow [phonetic] for the Department.

JUDGE FOR THE RECORD

The hearing is being interpreted into the Hausa language.

JUDGE TO INTERPRETER

The Hausa interpreter today is?

INTERPRETER TO JUDGE

Muhammad Umar Ajud [phonetic].

JUDGE TO MR. YAW TOTIMEH

To the respondent: good afternoon, sir.

MR. YAW TOTIMEH TO JUDGE

I am okay.

JUDGE TO MR. YAW TOTIMEH

Okay. We continued your case so we could have a Hausa interpreter. Do you understand the interpreter we have today?

MR. YAW TOTIMEH TO JUDGE

Yes, I understand.

JUDGE TO MR. YAW TOTIMEH

A208-125-369     3     June 25, 2015

And you are in removal proceedings. The Department of Homeland Security has filed a Notice to Appear in your case. That document sets forth the reasons why the Department believes you could be removed from this country. The purpose of the hearing is to determine whether or not you are subject to removal, and if you are found to be subject to removal, to determine what applications, if any, you are eligible to make. Some applications, if granted, will allow you to stay in the United States. Others would allow you to depart voluntarily rather than under an order of removal. During your hearing, you have several rights, including the right to be represented by an attorney at no expense to the government. Do you have an attorney?

MR. YAW TOTIMEH TO JUDGE

No, I don't have attorney.

JUDGE TO MR. YAW TOTIMEH

Have you received a copy of the legal aid list? The list of attorneys who have indicated they will represent people for free.

MR. YAW TOTIMEH TO JUDGE

The day that -- the day that the lawyers came, I went to the hospital.

JUDGE TO MR. YAW TOTIMEH

Do you want more time to try and speak with a lawyer before we go forward with your case?

MR. YAW TOTIMEH TO JUDGE

Yes, if I can have time.

JUDGE TO MR. YAW TOTIMEH

Okay. So I'll continue your case. We'll also give you another copy of the legal aid list. I'm going to reschedule your case to July 14th, 2015, at 9:00.

JUDGE FOR THE RECORD

A208-125-369                          4                          June 25, 2015

I'll provide written notice of that hearing date to both parties.  This hearing's adjourned.

<u>HEARING CLOSED</u>

RESTRICTED Case: 26-882, 07/01/2026, DktEntry: 13.2, Page 79 of 238

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of

File: A208-125-369

DAVID YAW TOTIMEH )

) IN REMOVAL PROCEEDINGS

)

RESPONDENT )

Transcript of Hearing

Before RILEY, KEVIN W., Immigration Judge

Date: July 14, 2015

Place: LOS ANGELES, CALIFORNIA

Transcribed by Diaz Data Services

Official Interpreter: RABU KWATO

Language: HAUSA

Appearances:

For the Respondent: PRO SE

For the DHS: DAVE BURGESS

EOIR-000079

JUDGE FOR THE RECORD

This is Immigration Judge Kevin Riley, conducting removal proceedings in Los Angeles, California. Today's date is July 14th, 2015. We're here in the matter of David Yaw Totimeh, A-number 208-125-369. The respondent is present. He is unrepresented.

JUDGE TO MR. BURGESS

Representing the Department today is?

MR. BURGESS TO JUDGE

Dave Burgess [phonetic], your honor.

JUDGE FOR THE RECORD

The hearing is being interpreted into the Hausa language.

JUDGE TO INTERPRETER

The Hausa interpreter today is?

INTERPRETER TO JUDGE

Rabu Kwato [phonetic].

JUDGE TO MR. YAW TOTIMEH

To the respondent: good morning, sir.

MR. YAW TOTIMEH TO JUDGE

Good morning, your honor.

JUDGE TO MR. YAW TOTIMEH

Okay. We scheduled your case to today's date -- we continued it to give you time to look for an attorney. Have you found an attorney to represent you?

MR. YAW TOTIMEH TO JUDGE

No, your honor. I did not have it.

JUDGE TO MR. YAW TOTIMEH

EOIR-000080

Okay. Did you want more time to look for an attorney, or do you wish to represent yourself?

MR. YAW TOTIMEH TO JUDGE

I got my sponsor who ask me to wait until the end of the Ramadan. So when she will be back, after the Ramadan, she will look for a lawyer for me.

JUDGE TO MR. YAW TOTIMEH

Okay. And when will that be?

MR. YAW TOTIMEH TO JUDGE

She travel, and she will be back after the Ramadan.

JUDGE TO MR. YAW TOTIMEH

Okay. When -- what month and date do you expect her back?

MR. YAW TOTIMEH TO JUDGE

Next week will be the end of the Ramadan. So I expect her next week.

JUDGE TO MR. YAW TOTIMEH

Okay. So do you want me to continue your case to give you some more time to see if your sponsor can assist you in finding an attorney?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

Okay. So I'm going to continue your case to July 24th, 2015, at 9:00.

INTERPRETER TO JUDGE

Excuse me, your honor. What time?

JUDGE TO INTERPRETER

9:00.

MR. YAW TOTIMEH TO JUDGE

A208-125-369                    7                    July 14, 2015

Thank you, your honor.

JUDGE FOR THE RECORD

Okay. I'll provide both parties with notice of the next hearing date. This hearing's adjourned.

<u>HEARING CLOSED</u>

EOIR-000082

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                    File:  A208-125-369

DAVID YAW TOTIMEH                    )          IN REMOVAL PROCEEDINGS
                                     )
RESPONDENT                           )          Transcript of Hearing

Before RILEY, KEVIN W., Immigration Judge

Date: July 24, 2015                         Place: LOS ANGELES, CALIFORNIA

Transcribed by Diaz Data Services

Official Interpreter: RABU KWATO

Language: HAUSA

Appearances:

  For the Respondent: PRO SE

  For the DHS: ANWER KHAN

EOIR-000083

JUDGE FOR THE RECORD

This is Immigration Judge Kevin Riley, conducting removal proceedings in Los Angeles, California. Today's date is July 24th, 2015. We're here in the matter of David Yaw Totimeh, A-number 208-125-369. The respondent is present. He is unrepresented.

JUDGE TO MR. KHAN

Representing the Department today is?

MR. KHAN TO JUDGE

Anwer Khan [phonetic].

JUDGE FOR THE RECORD

The hearing is being interpreted into the Hausa language.

JUDGE TO INTERPRETER

The Hausa interpreter today is?

INTERPRETER TO JUDGE

Rabu Kwato [phonetic].

JUDGE TO MR. YAW TOTIMEH

To the respondent: good morning, sir.

MR. YAW TOTIMEH TO JUDGE

Good morning to you, your honor.

JUDGE TO MR. YAW TOTIMEH

We continued your case to give you time to look for an attorney. Have you found an attorney to represent you?

MR. YAW TOTIMEH TO JUDGE

Still no. My sibling didn't come back from her trip.

JUDGE TO MR. YAW TOTIMEH

EOIR-000084

Okay. So we've continued your case on three occasions, two of those times were explicitly to give you more time to look for an attorney. Are you ready to represent yourself?

MR. YAW TOTIMEH TO JUDGE

I would like to wait for her. So as soon as -- as soon as when she come back, so I will look for a lawyer.

JUDGE TO MR. YAW TOTIMEH

Okay. Well, I do think you've had a reasonable period of time. Do you know when she's expected back?

MR. YAW TOTIMEH TO JUDGE

There is -- I expect her to come back after the end of Ramadan.

JUDGE TO MR. YAW TOTIMEH

Okay. Well, you've been in custody for over three months, almost four months now. You've had the Notice to Appear since it was personally served on May 14th. That did advise you of your privilege of representation. So you've had over two months to look for an attorney. I've continued your case three times to give you an opportunity to look for an attorney. So I do think that you've had sufficient time. I do believe you've had a reasonable and realistic period of time to look for an attorney, again, noting that you arrived in the United States in April. You were taken into custody at that time. You've gone through the credible fear -- well -- strike that. You've had the Notice to Appear since May 14th, so again, over two months. So I believe the requirements for Matter of C-B-, 25 I&N Dec. 888 (BIA 2012) have been met, despite you not expressly waiving your right to an attorney. So I'm going to go over your other rights. And then I'm going to have you plead to the charge and the allegations on the Notice to Appear. Now, if you're able to find an attorney at a future date, you can still have an attorney

assist you. But we're going to go forward with your case today. In addition to the privilege of representation, you do have the right to present evidence. Evidence includes your testimony. It includes the testimony of others. You may also submit documents or other objects. The Department of Homeland Security may also present evidence. Any evidence the Department presents, you have the right to examine that evidence. So if the Department calls any witnesses, you have the right to question those witnesses. If the Department submits any documents, you will receive a copy of those documents and be provided time to review them. If there is any reason you believe I should not consider the Department's evidence, you have the right to object to it and to tell me the reasons why you believe it should not be considered. And then I'll make a decision on its admissibility. After I receive all of the evidence in your case, I'll make a decision. If you disagree with the decision I make, you have the right to appeal to a court known as the Board of Immigration Appeals, and we'll provide you the appeal form. So I'm going to ask you to raise your right hand so I can place you under oath. Do you promise the testimony you give will be the truth, the whole truth, and nothing but the truth?

MR. YAW TOTIMEH TO JUDGE

I will swear I will tell the truth.

JUDGE TO MR. YAW TOTIMEH

Okay. So the Department has filed a Notice to Appear in your case. That's the document with the allegations and charge. They indicate you were served a copy of that document on May 14th of this year. Did you receive a copy of the Notice to Appear?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

A208-125-369                11                July 24, 2015

JUDGE FOR THE RECORD

Okay. So the Notice to Appear will be marked and admitted as Exhibit Number 1.

JUDGE TO MR. YAW TOTIMEH

I'm going to read over the allegations and the charge to make sure you understand why the Department is seeking to remove you. And I'm going to ask you to plead to the document. The Department alleges that you are not a citizen or national of the United States. They state you're a native of Ghana and a citizen of Ghana. They state you entered the United States at or near Otay Mesa, California, on April 7th, 2015. They further allege that you did not then possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document. They further allege you were not then admitted or paroled after inspection by an immigration officer. Because of that, they believe you are inadmissible to the United States because you are an immigrant who at the time of the application for admission is not in possession of a valid entry document. Do you understand the charge in your case?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor, I understand.

JUDGE TO MR. YAW TOTIMEH

Okay. So I'm going to go over each of the allegations and take your pleading. Are you a citizen or national of the United States?

MR. YAW TOTIMEH TO JUDGE

No, your honor.

JUDGE TO MR. YAW TOTIMEH

Are you a native of Ghana and a citizen of Ghana?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.  I'm not -- I'm a -- I'm born and raised in Ghana.

JUDGE TO MR. YAW TOTIMEH

Did you enter the United States at or near Otay Mesa, California, on April 7th, 2015?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

Did you possess or present a valid immigrant visa, reentry permit, border crossing identification card, or other valid entry document?

MR. YAW TOTIMEH TO JUDGE

No, your honor.

JUDGE TO MR. YAW TOTIMEH

And have you been in immigration's custody since that time?

MR. YAW TOTIMEH TO JUDGE

That's true, your honor.

JUDGE TO MR. YAW TOTIMEH

Are either of your parents U.S. citizens?

MR. YAW TOTIMEH TO JUDGE

No, your honor.

JUDGE TO MR. YAW TOTIMEH

And do you agree that you are subject to removal as an immigrant who is not in possession of a valid entry document?

MR. YAW TOTIMEH TO JUDGE

Like what?

JUDGE TO MR. YAW TOTIMEH

Like a visa.

MR. YAW TOTIMEH TO JUDGE

No, your honor. I don't have it.

JUDGE TO MR. YAW TOTIMEH

Okay. So do you agree that you are not admissible into the United States because you don't have a visa or any other valid entry document?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE FOR THE RECORD

Okay. So based upon the admissions and concession, I am going to sustain the charge.

JUDGE TO MR. YAW TOTIMEH

I find that you are subject to being removed from the United States. Now we're going to discuss what applications you can make. But in the event you're not eligible to remain in the U.S., and if I have to order you removed, you can choose the country of removal. Do you wish to choose the country of removal in the event you have to be removed? Okay. So I'm going to show you've declined to designate a country, since there's been no response after a long period of time.

JUDGE TO MR. KHAN

Mr. Khan, recommendation?

MR. KHAN TO JUDGE

Department recommends Ghana.

JUDGE FOR THE RECORD

Okay. Ghana will be directed.

JUDGE TO MR. YAW TOTIMEH

A208-125-369                    14                    July 24, 2015

EOIR-000089

So I'm going to ask you some questions to see what applications you're eligible to make at this time. Was April 7th of 2015 the first time you've ever come to the U.S.?

INTERPRETER TO JUDGE

Your honor, the interpreter wants --

JUDGE TO INTERPRETER

Oh.

INTERPRETER TO JUDGE

If you could repeat that.

JUDGE TO MR. YAW TOTIMEH

Was April 7th of 2015 the first time you've ever come to the U.S.?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

Are you afraid to go back to your country for any reason?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

Okay. So you may be eligible for asylum, withholding, or Convention Against Torture protection. For asylum, among other things, you would have to show that you either suffered past persecution or that you have a well-founded fear of being persecuted in the future. Persecution does not include every type of harm or mistreatment. It has to be serious harm or threats that are based upon your race, religion, nationality, membership in a particular social group, or a political opinion. Do you want to apply for asylum?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

Okay. So we'll give you the Form I-589. That's also the application form for withholding of removal and Convention Against Torture protection. Withholding is similar to asylum. To establish eligibility, you would have to show either past persecution or a clear probability of future prosecution. So again, you would have to show that it's because of your race, religion, nationality, membership in a particular social group, or political opinion. Convention Against Torture protection is available to those who show that it's more likely than not that they would be tortured. The torture can be for any reason from anybody. If it's not from the government, you would have to show that it's being done at the instigation of, or with the consent or acquiescence of a public official or other person acting in an official capacity. So I'm going to reschedule your case so you can file your application. In addition to your application, if you have any documents that support your claim or show what's happened to you in the past, you can submit those materials. Any documents that are in a foreign language would need to be translated into English and include a statement or certificate from the person who did the translation, confirming they're competent in English and the foreign language and that the translation is complete and accurate. Anything you file with the court, you also need to provide a copy to the Department of Homeland Security, and I recommend you keep a copy for yourself. So you should make two copies of everything. Do you understand? Do you understand that you need to provide copies to the Department of Homeland Security?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor. I do.

JUDGE TO MR. YAW TOTIMEH

Okay. So I'm going to reschedule your case so you can file your application.

Your next hearing's going to be July 31st, 2015 at 9:00.

INTERPRETER TO JUDGE

Your honor, I didn't get the date.

JUDGE TO INTERPRETER

July 31st.

JUDGE TO MR. YAW TOTIMEH

If you don't file the application on that date, and if there's not a good reason, then I will deem your opportunity to file it abandoned and order you removed.

MR. YAW TOTIMEH TO JUDGE

I hear you. I understand.

JUDGE TO MR. YAW TOTIMEH

Okay. Do you have any questions about your next hearing date?

MR. YAW TOTIMEH TO JUDGE

I don't have any question, your honor.

JUDGE TO MR. KHAN

Anything from the Department?

MR. KHAN TO JUDGE

Nothing, your honor.

JUDGE FOR THE RECORD

Okay. There being nothing further, this hearing's adjourned.

<u>HEARING CLOSED</u>

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                             File: A208-125-369

DAVID YAW TOTIMEH          )          IN REMOVAL PROCEEDINGS
                                                 )
RESPONDENT                       )          Transcript of Hearing

Before RILEY, KEVIN W., Immigration Judge

Date: July 31, 2015                          Place: LOS ANGELES, CALIFORNIA

Transcribed by Diaz Data Services

Official Interpreter: RABU KWATO

Language: HAUSA

Appearances:

  For the Respondent: PRO SE

  For the DHS: ANWER KHAN

EOIR-000093

JUDGE FOR THE RECORD

This is Immigration Judge Kevin Riley, conducting removal proceedings in Los Angeles, California. Today's date is July 31st, 2015. We're here in the matter of David Yaw Totimeh, A-number 208-125-369. The respondent is present. He is unrepresented.

JUDGE TO MR. KHAN

Representing the Department today is?

MR. KHAN TO JUDGE

Anwer Khan [phonetic].

JUDGE FOR THE RECORD

The hearing is being interpreted into the Hausa language.

JUDGE TO INTERPRETER

The Hausa interpreter today is?

INTERPRETER TO JUDGE

Rabu Kwato [phonetic].

JUDGE TO MR. YAW TOTIMEH

Good morning, sir.

MR. YAW TOTIMEH TO JUDGE

Good morning, sir. Good morning, your honor.

JUDGE TO MR. YAW TOTIMEH

We continued your case to give you time to file your application. Did you complete your application?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

Okay. Also, subsequent to the last hearing, the Department did file an amendment to the Notice to Appear, amending allegation number three and changing the box; that should be checked. Did you receive a copy of the I-261, the amendments to the Notice to Appear?

MR. YAW TOTIMEH TO JUDGE

Before yesterday, they give me a paper. But I don't know if it's the same.

JUDGE TO MR. YAW TOTIMEH

Did you bring that paper with you?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

Okay. Why don't you go ahead and get your application now and you can look to see if you have this paper as well?

MR. YAW TOTIMEH TO JUDGE

I have it. It is in the envelope.

JUDGE TO MR. YAW TOTIMEH

Okay. Go ahead and take it out of the envelope if you -- okay. So, sir, this is the document that you have in that envelope?

JUDGE FOR THE RECORD

Okay. So I do see that you have a -- the I-261 so I'm going to mark that as Exhibit 1A.

JUDGE TO MR. YAW TOTIMEH

Now, what the Department's doing with this, they're just amending the language in allegation number three. It previously said you entered the United States at or near Otay Mesa on April 7th of 2015. They are now changing the language to state you

A208-125-369                    19                    July 31, 2015
EOIR-000095

sought admission to the United States at or near Otay Mesa, California, on April 7th, 2015.

MR. YAW TOTIMEH TO JUDGE

[untranslated].

JUDGE TO MR. YAW TOTIMEH

Now if you want some more time to review this before I take your pleadings to the allegation as amended, I'll continue your case for that purpose.

MR. YAW TOTIMEH TO JUDGE

Yes, your honor. I will have -- I would like to have some time to understand what's going on with this paper.

JUDGE TO MR. YAW TOTIMEH

Okay. So we'll take pleadings on the I-261 at the next hearing. Now you also completed your application form. Do you have that ready to submit? Your asylum application, sir.

MR. YAW TOTIMEH TO JUDGE

What kind of paper are you asking?

JUDGE TO MR. YAW TOTIMEH

The application form that was previously provided to you when you were in court.

MR. YAW TOTIMEH TO JUDGE

Is the one they give me first before I bring it in front of the court?

JUDGE TO MR. YAW TOTIMEH

Well, why don't you take it out and we'll see.

MR. YAW TOTIMEH TO JUDGE

This one?

JUDGE TO MR. YAW TOTIMEH

A208-125-369                                    20                                    July 31, 2015

Yes. That's your asylum application. And you have a copy to give to the Department of Homeland Security as well?

MR. YAW TOTIMEH TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

Okay. So we'll go ahead and receive those. So I'm going to reschedule your case for the hearing on your application. Also, we'll take your pleading to the amended allegation at the next hearing. So at your next hearing, if you have any witnesses who are going to testify in support of your application, they need to be present. If you have any other documents you want me to consider in support of your application, you can submit those at the next hearing. If you have any of them today, you can submit them today as well, as long as you have a copy for the Department of Homeland Security.

INTERPRETER TO JUDGE

Your honor, the date? The date for the next hearing.

JUDGE TO INTERPRETER

I'm figuring that out.

INTERPRETER TO JUDGE

Okay.

JUDGE TO MR. YAW TOTIMEH

Okay. I'm going to schedule your case for a hearing on September 4th at 1:00. I want to remind you you still have the privilege of being represented by an attorney at no expense to the government. Do you have any questions about your next hearing?

MR. YAW TOTIMEH TO JUDGE

Your honor, the only question I have is I didn't understand what's the meaning of this envelope or the paper that is inside this envelope.

EOIR-000097

JUDGE TO MR. YAW TOTIMEH

Okay. So the Department, on the original Notice to Appear, stated you entered the United States on April 7th of 2015 at Otay Mesa, California. They're just changing that allegation to now state you sought admission to the United States. So they're changing it from you were in the United States already, before they found you, to you were seeking admission. You came to the port of entry to ask for admission to the United States. But it still says April 7th of 2015, still indicates the location with Otay Mesa, California. It's just stating you came to the port of entry seeking admission, as opposed to them finding you in the United States already. That terminology makes a difference and is consistent with the charge that they currently have. If you had already entered the United States, then the charge that's on the Notice to Appear would be inconsistent. Okay?

MR. YAW TOTIMEH TO JUDGE

I hear you, and I understand.

JUDGE TO MR. YAW TOTIMEH

Okay.

JUDGE TO MR. KHAN

Anything from the Department?

MR. KHAN TO JUDGE

No, your honor.

JUDGE FOR THE RECORD

Okay. Both parties will receive the notice for the next hearing date, and this hearing's adjourned.

<u>HEARING CLOSED</u>

EOIR-000098

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                      File: A208-125-369

DAVID YAW TOTIMEH                    )
                                     )          IN REMOVAL PROCEEDINGS
                                     )
    RESPONDENT                       )               Transcript of Hearing

Before BAIN, TERRY A., Immigration Judge

Date: November 15, 2016                    Place: NEW YORK, NEW YORK

Transcribed by Diaz Data Services

Official Interpreter:

Language: ENGLISH

Appearances:

  For the Respondent: MELISSA MALMGREN

  For the DHS: PAULA DONNOLO

EOIR-000099

JUDGE FOR THE RECORD

This is a removal proceeding before Immigration Judge Terry Bain. The day is November 15th, 2016. The place is New York, New York, in the matter of David Yaw Totimeh, A208-125-369.

JUDGE TO MS. MALMGREN

Counsel for the respondent?

MS. MALMGREN TO JUDGE

Melissa Malmgren [phonetic] on behalf of the Law Office of Cindy Klein [phonetic].

JUDGE TO MS. DONNOLO

Government attorney?

MS. DONNOLO TO JUDGE

Paula Donnolo [phonetic].

JUDGE FOR THE RECORD

Okay. Pleadings were already taken.

JUDGE TO MS. MALMGREN

Did you decline to designate a country of removal?

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. DONNOLO

Government?

MS. DONNOLO TO JUDGE

I'm sorry. One minute. I think there was a 261 because I think it's running. Did you have a 261, your honor, that was in the -- in the file? Because I believe on the original NTA --

JUDGE TO MS. DONNOLO

Yeah, I believe so.

MS. DONNOLO TO JUDGE

-- there was no country designated.

JUDGE TO MS. DONNOLO

Well, your NTA says citizen of, and native of, Ghana. Maybe you'd like to request Ghana.

MS. DONNOLO TO JUDGE

Let me take a look at -- oh, maybe I'm looking at the 261. Can I just look at yours for a second?

JUDGE TO MS. DONNOLO

There's a 261 that --

MS. DONNOLO TO JUDGE

Yes.

JUDGE TO MS. DONNOLO

-- doesn't seem to change that. I don't think pleadings have been taken on that. But I am asking what country you would like to designate since they're declining.

MS. DONNOLO TO JUDGE

Ghana.

JUDGE TO MS. DONNOLO

Thank you.

JUDGE FOR THE RECORD

Ghana will be designated by the court.

JUDGE TO MS. MALMGREN

What application is your client making?

MS. MALMGREN TO JUDGE

The client is seeking asylum, withholding of removal, and protection under CAT.

JUDGE FOR THE RECORD

Okay. And there is an I-261 that's been marked into evidence as Exhibit 1A. And this checks off a box on the original NTA and unchecks another box.

MS. MALMGREN TO JUDGE

He's an arriving alien. So that was incorrectly checked on.

JUDGE TO MS. MALMGREN

Right.

MS. MALMGREN TO JUDGE

And as I put in my pleadings, he was paroled into the United States, which on number five says he was not admitted or paroled.

JUDGE TO MS. MALMGREN

Allegation number three.

MS. DONNOLO TO JUDGE

Uh-huh. Yes.

JUDGE TO MS. DONNOLO

Excuse me.

JUDGE TO MS. MALMGREN

There's an allegation number three on the I-261, so I suppose this replaces -- it's unclear -- but it appears that, yes, they have withdrawn allegation number three on the NTA, and the new allegation states you sought admission to the United States at or near Otay Mesa, California, on April 7th, 2015. Do you concede this?

MS. MALMGREN TO JUDGE

Yes, your honor.

A208-125-369                    25                    November 15, 2016

JUDGE TO MS. MALMGREN

All right. Now we get to the asylum application, which has been filed. I'll mark it into evidence as Exhibit 2. There is no one year issue.

MS. MALMGREN TO JUDGE

And, your honor, if I may ask for additional time. He filed that application pro se while detained.

JUDGE TO MS. MALMGREN

Okay.

MS. MALMGREN TO JUDGE

He doesn't have his own copy of it. So I filed a request with the court to review the file. And I've also filed a FOIA request because he doesn't have a copy of his credible fear.

JUDGE TO MS. MALMGREN

All right. Would you like an adjournment for another master then?

MS. MALMGREN TO JUDGE

Yes, your honor. Just so that we can prepare. I filed the FOIA request at the beginning of August, so I'm hoping to have to that response by the end of the year because we do not have the credible fear.

JUDGE TO MS. MALMGREN

All right. How about April 4th, master calendar?

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

The court will give you a written notice of this new hearing date. I'll ask you to undertake to advise your client as to the consequences of failure to appear as well as

the requirement of notifying this court should your client change address.

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

And is Hausa his best language?

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE FOR THE RECORD

Okay.  Case is adjourned.

MS. MALMGREN TO JUDGE

Thank you.

JUDGE TO MS. MALMGREN

Mm-hmm.

<u>HEARING CLOSED</u>

EOIR-000104

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                    File:  A208-125-369

|  |  |
|---|---|
| DAVID YAW TOTIMEH ) | IN REMOVAL PROCEEDINGS |
| ) | |
| RESPONDENT ) | Transcript of Hearing |

Before BAIN, TERRY A., Immigration Judge

Date: July 18, 2017                        Place: NEW YORK, NEW YORK

Transcribed by Diaz Data Services

Official Interpreter:

Language: ENGLISH

Appearances:

  For the Respondent: MELISSA MALMGREN

  For the DHS: MS. BATAVIAN

EOIR-000105

JUDGE FOR THE RECORD

This is a removal proceeding before Immigration Judge Terry Bain. Today is July 18th, 2017. The place is New York, New York, in the matter of David Yaw Totimeh, A208-125-369.

JUDGE TO MS. MALMGREN

Counsel for the respondent?

MS. MALMGREN TO JUDGE

Melissa Malmgren [phonetic] on behalf of the law office of Cindy Klein [phonetic].

JUDGE TO MS. BATAVIAN

Government attorney?

MS. BATAVIAN TO JUDGE

[indiscernible] Batavian [phonetic].

UNIDENTIFIED MALE SPEAKER TO JUDGE

Okay. Do you know pleadings were taken, or -- okay.

JUDGE TO MS. MALMGREN

Do you have written pleadings, counsel?

MS. MALMGREN TO JUDGE

They should be attached to the change of venue that was filed.

JUDGE TO MS. MALMGREN

All right. Let me look through the file for it. I think we did this already. Pleadings already were done. So why did we adjourn it?

MS. MALMGREN TO JUDGE

Oh, let me think. It was moved here, the last hearing we -- that day your hearings were cancelled, those masters were cancelled.

JUDGE TO MS. MALMGREN

EOIR-000106

You were amending the I-589.

MS. MALMGREN TO JUDGE

Oh, yes.

JUDGE TO MS. MALMGREN

That is the reason that I adjourned it from last November.

MS. MALMGREN TO JUDGE

I have it here today for you, your honor.

JUDGE TO MS. MALMGREN

Thank you. I'll take it.

MS. MALMGREN TO JUDGE

And the respondent filed one pro se timely.

UNIDENTIFIED MALE SPEAKER TO JUDGE

Okay. So, take a look at the NTA, and we want you to be honest, let me know what I can put.

JUDGE TO MS. MALMGREN

Yes, one was filed July 31st, 2015. It was a timely filed application. Well, I think so. There was a line drawn through allegation number three. Is that --

JUDGE TO MS. BATAVIAN

Was an I-261 done, Ms. Batavian [phonetic]?

MS. BATAVIAN TO JUDGE

Yes, judge. It was served on July 24th, 2015.

JUDGE TO MS. BATAVIAN

I don't think I have it. There was an I-261 you're saying, Ms. Batavian?

MS. BATAVIAN TO JUDGE

Yes.

MS. MALMGREN TO JUDGE

I have one here.

MS. BATAVIAN TO JUDGE

Stamped received on July 24th, 2015.

JUDGE TO MS. BATAVIAN

Before the --

MS. BATAVIAN TO JUDGE

In Los Angeles.

JUDGE TO MS. BATAVIAN

Before the venue was changed?

MS. BATAVIAN TO JUDGE

Yes, your honor. And then I think they pleaded to it. And then I think they handed in another asylum application.

MS. MALMGREN TO JUDGE

That may have been done while he was detained.

MS. BATAVIAN TO JUDGE

Received in court on July 31st, 2015.

UNIDENTIFIED MALE SPEAKER TO JUDGE

Yeah, just put all the A-numbers and NTAs in the same -- usually --

JUDGE TO MS. BATAVIAN

Oh, I see it now. All right. Thank you.

JUDGE FOR THE RECORD

All right. I'll schedule this for a hearing.

JUDGE TO MS. MALMGREN

December 6th, 2019 at 9:00 a.m.?

A208-125-369                    30                    July 18, 2017

EOIR-000108

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

The clerk will give you a written notice of this new hearing date. I'll ask you to undertake to advise your client as to the consequences of failure to appear as well as your requirement of notifying this court should your client change address.

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE FOR THE RECORD

The case is adjourned.

MS. MALMGREN TO JUDGE

Thank you.

JUDGE TO MS. MALMGREN

Mm-hmm.

<u>HEARING CLOSED</u>

A208-125-369                                    31                                    July 18, 2017

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

In the Matter of                                        File: A208-125-369


DAVID YAW TOTIMEH             )
                              )        IN REMOVAL PROCEEDINGS
                              )
RESPONDENT                    )        Transcript of Hearing


Before SAGESSE, CATHY, Immigration Judge


Date: December 6, 2019                  Place: NEW YORK, NEW YORK


Transcribed by Diaz Data Services


Official Interpreter: HEIDI KIARI


Language: HAUSA


Appearances:

 For the Respondent: MELISSA MALMGREN

 For the DHS: CAROL MOORE


EOIR-000110

JUDGE FOR THE RECORD

All right. It's December 6th, 2019. This is Immigration Judge Cathy Sagesse in the matter of David Yaw Totimeh, 208-125-369.

JUDGE TO COUNSELS

Can the parties please state their appearances for the record?

MS. MALMGREN TO JUDGE

Melissa Malmgren [phonetic] on behalf of the respondent.

MS. MOORE TO JUDGE

Carol Moore [phonetic] for the Department.

JUDGE FOR THE RECORD

And we do have a previously sworn interpreter in court with us today, Ms. Heidi Kiari [phonetic].

JUDGE TO MR. YAW TOTIMEH

To the respondent, can he please state his name for the record?

MR. YAW TOTIMEH TO JUDGE

My name is David Yaw Totimeh

JUDGE TO MR. YAW TOTIMEH

Okay. I'm going to ask that you speak up so everyone can hear you, okay?

MR. YAW TOTIMEH TO JUDGE

Okay.

JUDGE TO MR. YAW TOTIMEH

Is your address still 2042 Morris Avenue, Apartment 2B?

MR. YAW TOTIMEH TO JUDGE

Say it again?

JUDGE TO MR. YAW TOTIMEH

2042 Morris Avenue, 2B?

MR. YAW TOTIMEH TO JUDGE

It's 1694 Davidson Avenue.

JUDGE TO MR. YAW TOTIMEH

Well, sir, you should have filled out a change of address form.  If you did, it did not make it to the file.

JUDGE TO MS. MALMGREN

Counsel, if you could please fill that out and provide --

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

-- both the court and DHS with a copy.

MR. YAW TOTIMEH TO JUDGE

I did inform my lawyer that I had changed my address.

JUDGE TO MR. YAW TOTIMEH

But it's your obligation to provide the court with that, okay?  But it's okay, she's going to go ahead and fill it out.

JUDGE FOR THE RECORD

I'm going to go through the evidentiary part of this hearing.  The Notice to Appear is Exhibit 1.  The I-213 that was subsequently filed would be Exhibit 1A -- I mean, I'm sorry, the I-261.  Exhibit 2 is the original I-589 with the receipt date of July 31st, 2015.  Exhibit 3 is the amended I-589 with the receive date of July 18, 2017.

MS. MOORE TO JUDGE

I'm sorry, judge, 2 is the?

JUDGE TO MS. MOORE

A208-125-369                                   33                        December 6, 2019

The original one.

MS. MOORE TO JUDGE

Oh, okay. So, the I-261 is part of Exhibit 1?

JUDGE TO MS. MOORE

The I-261 is 1A.

MS. MOORE TO JUDGE

Oh, 1A. Okay. Thank you. Sorry.

JUDGE TO MS. MOORE

No problem.

JUDGE FOR THE RECORD

And 3 is the amended I-589. Exhibit 4 is the respondent's proposed Exhibit Tab A which is country conditions from 2015.

JUDGE TO MS. MOORE

Any objection?

MS. MOORE TO JUDGE

No objection.

JUDGE FOR THE RECORD

Exhibit 5 is the respondent's proposed Exhibit Tabs B through E, and this also includes the respondent's statement.

JUDGE TO MS. MOORE

Any objection?

MS. MOORE TO JUDGE

No objection.

JUDGE FOR THE RECORD

Exhibit 6 is the respondent's proposed Exhibit Tabs F and G.

EOIR-000113

JUDGE TO MS. MOORE

Any objection?

MS. MOORE TO JUDGE

No objection.

JUDGE FOR THE RECORD

And finally Exhibit 7 is the respondent's proposed Exhibit Tab H, which I think is just a birth certificate for the respondent.

JUDGE TO MS. MOORE

Any objection?

MS. MOORE TO JUDGE

No objection.

JUDGE TO COUNSELS

Did I get everything?

MS. MALMGREN TO JUDGE

Your honor, I had filed at the window earlier this week, and it's an amended statement -- it's -- the amendments aren't substantial and amended Pages 1 through 4 of the respondent's asylum application. There were just -- and I've highlighted the amendments. It was an issue with the date and the statement in Paragraph 3. And --

JUDGE TO MS. MALMGREN

Well, hold on, let me stop you for a minute, counsel.

MS. MALMGREN TO JUDGE

Mm-hmm.

JUDGE TO MS. MALMGREN

If you filed it earlier this week that would mean the court doesn't have it in their file, nor does DHS. It's obviously late filed. If you're going to appear before me, it's 30

A208-125-369                    35                    December 6, 2019

EOIR-000114

days before the hearing, okay? So, everybody can have it in due time to read it and be prepared for today's hearing, all right?

MS. MALMGREN TO JUDGE

Yes, your honor. And I apologize, I did bring duplicates today. We've just struggled with the interpretation. I've had numerous interpreters try to help with the statement. And so just again upon final review with a different interpreter he pointed out these errors existed with the dates in the application.

JUDGE TO MS. MALMGREN

And I take it you have extra copies for us today?

MS. MALMGREN TO JUDGE

Yes, your honor. I brought it for you --

JUDGE TO MS. MALMGREN

You may approach.

MS. MALMGREN TO JUDGE

-- and the Department. I tried to also e-mail it to the Department, and e-file it, and contact Ms. Moore beforehand. But I was unable to reach her.

JUDGE TO MS. MOORE

Okay. Any objection, Ms. Moore?

MS. MOORE TO JUDGE

No, your honor.

JUDGE FOR THE RECORD

Okay. This will be Exhibit 8.

JUDGE TO MR. YAW TOTIMEH

Okay. To the respondent, before I have you sign the amended application --

JUDGE TO MS. MALMGREN

I note that you did make some changes that you provided today, but it doesn't complete I guess an original copy of the completed application. So, I'm going to have him sign the amended application, which is Exhibit 3, okay?

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MR. YAW TOTIMEH

I'm going to read to you your frivolous warnings. If you knowingly file a frivolous application for asylum, you'll be barred forever from receiving any immigration benefit. A frivolous application for asylum is one which contains statements or responses to questions that are deliberate fabricated. Not being granted asylum does not mean your application is frivolous. After hearing this, do you still wish to sign your application attesting that everything that you had provided to the court is true, correct, and accurate?

MR. YAW TOTIMEH TO JUDGE

Yes, it is true.

JUDGE TO MS. MALMGREN

Okay. Counsel --

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

-- can you please have him sign Section G, and also date as well?

MS. MALMGREN TO JUDGE

Yes, your honor.

MS. MALMGREN TO MR. YAW TOTIMEH

And the date.

EOIR-000116

MR. YAW TOTIMEH TO MS. MALMGREN

The date?

MS. MALMGREN TO MR. YAW TOTIMEH

Mm-hmm.  December 6, 12, one, two -- stroke -- back stroke, six.  Okay.  19.

Okay.

MR. YAW TOTIMEH TO MS. MALMGREN

Thank you.

JUDGE TO MR. YAW TOTIMEH

Before we begin, I'm just going to explain a few things to you.  The government -- your attorney is going to ask you some questions, so will the government attorney, and the court may have some questions for you as well.  Speak loudly and clearly as these proceedings are being recorded.  If there's a question you don't understand just let us know and we'll rephrase.  Please stand and raise your right hand.  Do you swear or affirm to tell the truth, the whole truth, and nothing but the truth?

MR. YAW TOTIMEH TO JUDGE

I swear to tell the truth and nothing but the truth.

JUDGE TO MR. YAW TOTIMEH

You may be seated.

JUDGE TO COUNSELS

My back is kind of hurting me today, if I stand up, I apologize.  I'm going to have to stand up and sit down periodically.

MS. MALMGREN TO JUDGE

Yes, your honor.

MS. MOORE TO JUDGE

No standing desk?

EOIR-000117

JUDGE TO MS. MALMGREN

Are you ready, counsel?

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

You may proceed.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, what is your full and complete name?

MR. YAW TOTIMEH TO MS. MALMGREN

David Yaw Totimeh.

MS. MALMGREN TO MR. YAW TOTIMEH

And sorry, sir, if you could just make sure you speak into the microphone? Okay. Thank you.

MR. YAW TOTIMEH TO MS. MALMGREN

David Yaw Totimeh.

MS. MALMGREN TO MR. YAW TOTIMEH

You don't have to do that. Okay. Have you ever used any other names?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. What other names have you used?

MR. YAW TOTIMEH TO MS. MALMGREN

Alhasa Mohammad Yaru [phonetic].

MS. MALMGREN TO MR. YAW TOTIMEH

And where were you born?

MR. YAW TOTIMEH TO MS. MALMGREN

I was born in Accra in Ghana.

JUDGE TO MR. YAW TOTIMEH

Why do you have another name?

MR. YAW TOTIMEH TO JUDGE

There was a problem between myself and my family.

JUDGE TO MR. YAW TOTIMEH

So, which one is your legal name?

MR. YAW TOTIMEH TO JUDGE

The one that I was given.

JUDGE TO MR. YAW TOTIMEH

Okay. So, David Yaw Totimeh is something that you just made up?

MR. YAW TOTIMEH TO JUDGE

Somebody gave it to me. That's not my name.

JUDGE TO MR. YAW TOTIMEH

Okay. So, you're using a fictitious name here in the United States?

MR. YAW TOTIMEH TO JUDGE

It's a real name, I came with it from my country.

JUDGE TO MR. YAW TOTIMEH

But it wasn't legally changed, correct?

MR. YAW TOTIMEH TO JUDGE

No.

JUDGE TO MS. MALMGREN

Okay. You may continue.

MS. MALMGREN TO MR. YAW TOTIMEH

EOIR-000119

:

And what is your mother's name, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

Adisa Suliman Mohammad [phonetic].

MS. MALMGREN TO MR. YAW TOTIMEH

And where was she born?

MR. YAW TOTIMEH TO MS. MALMGREN

She was born in Koforidua in Ghana.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And where does she live now?

MR. YAW TOTIMEH TO MS. MALMGREN

She's in Accra, Nima.

MS. MALMGREN TO MR. YAW TOTIMEH

And what is your father's name?

MR. YAW TOTIMEH TO MS. MALMGREN

Mohammad Yaru.

MS. MALMGREN TO MR. YAW TOTIMEH

And where was he born?

MR. YAW TOTIMEH TO MS. MALMGREN

My mother told me he was born in Nigeria, but I have never seen any legal documents that proves that he's from Nigeria.

MS. MALMGREN TO MR. YAW TOTIMEH

And where is he now?

MR. YAW TOTIMEH TO MS. MALMGREN

He's deceased.

MS. MALMGREN TO MR. YAW TOTIMEH

EOIR-000120

Okay. And when did he die?

MR. YAW TOTIMEH TO MS. MALMGREN

He died in 2000.

MS. MALMGREN TO MR. YAW TOTIMEH

Do you know in what month in 2000?

MR. YAW TOTIMEH TO MS. MALMGREN

I don't know, I know it's in 2000.

JUDGE TO MS. MALMGREN

Counsel, did you provide a death certificate for the father?

MS. MALMGREN TO JUDGE

I'm getting -- no, your honor, but that's my next question.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, did you have a death certificate for your father?

MR. YAW TOTIMEH TO MS. MALMGREN

No, I don't.

MS. MALMGREN TO MR. YAW TOTIMEH

And why not?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, he died a while ago, and I'm not, like, the oldest child. So, I have an older brother who handles everything.

MS. MALMGREN TO MR. YAW TOTIMEH

And did you try to ask your older brother or any of your family members for a death certificate for your father?

MR. YAW TOTIMEH TO MS. MALMGREN

No, I did not.

MS. MALMGREN TO MR. YAW TOTIMEH

And why not?

MR. YAW TOTIMEH TO MS. MALMGREN

What I know is that I don't know where he comes from. I just know my mother told me he's from Nigeria. I've never seen any of his paperwork.

MS. MALMGREN TO MR. YAW TOTIMEH

Right, but that doesn't answer my question. I asked you why didn't you ask your older brother for a death certificate from your father.

MR. YAW TOTIMEH TO MS. MALMGREN

Well, as far as I know in Ghana if a Muslim dies, I've never seen any situation where there's a death certificate produced.

MS. MALMGREN TO MR. YAW TOTIMEH

Are you married?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Do you have any children?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Do you have any siblings?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, I do.

MS. MALMGREN TO MR. YAW TOTIMEH

And what are their names?

MR. YAW TOTIMEH TO MS. MALMGREN

All of them?

MS. MALMGREN TO MR. YAW TOTIMEH

Yes, please.

JUDGE TO MR. YAW TOTIMEH

How many siblings?

MR. YAW TOTIMEH TO JUDGE

I have four younger siblings and two older siblings.

JUDGE TO MS. MALMGREN

And counsel, you provided all of these names in the I-589, correct?

MS. MALMGREN TO JUDGE

They should be listed, the ones that he told me of, yes, your honor.

JUDGE TO MS. MALMGREN

Okay. You can just move on.

MS. MALMGREN TO JUDGE

Okay. May I ask -- I'm going to ask him a follow-up question about his siblings though.

MS. MALMGREN TO MR. YAW TOTIMEH

What are the names of your older siblings?

MR. YAW TOTIMEH TO MS. MALMGREN

The older siblings or younger siblings?

MS. MALMGREN TO MR. YAW TOTIMEH

The older siblings, sir.

MR. YAW TOTIMEH TO MS. MALMGREN

Ussef Mohammad Yaru [phonetic] and Habiba Mohammad Yaru [phonetic].

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. What is your date of birth?

MR. YAW TOTIMEH TO MS. MALMGREN

For which of my names?

MS. MALMGREN TO MR. YAW TOTIMEH

What is the day that you were born, sir?

JUDGE TO MR. YAW TOTIMEH

Wait a second. So, you have a fictitious name, and you attached a fake date of birth to that name as well?

MR. YAW TOTIMEH TO JUDGE

My real name that I was given when my brother gave birth to me is Alhasa Yaw -- Mohammad Yaru.

JUDGE TO MR. YAW TOTIMEH

I understand that, but my question is about the date of birth. It sounds like you have two different dates of birth.

MR. YAW TOTIMEH TO JUDGE

No, just one.

JUDGE TO MR. YAW TOTIMEH

I'm sorry, just based on just the brief dialogue that I heard it sounds like you have two different dates of birth.

MR. YAW TOTIMEH TO JUDGE

No.

JUDGE TO MR. YAW TOTIMEH

Are you lying? Because you swore to tell the truth.

MR. YAW TOTIMEH TO JUDGE

I'm telling the truth, I'm not lying.

JUDGE TO MR. YAW TOTIMEH

So, what did you mean earlier when your attorney had asked you a question your answer implied that you had two dates of birth. So, what were you referring to?

MR. YAW TOTIMEH TO JUDGE

My dates of birth, I don't understand. My dates of birth is 1979.

JUDGE TO MR. YAW TOTIMEH

Okay. Well, your asylum application says 1982, why?

MR. YAW TOTIMEH TO JUDGE

Yeah, that's for the other name for the David Yaw Totimeh. That's the date of birth.

JUDGE TO MR. YAW TOTIMEH

Okay. That's the fictitious name that you have in court today, correct?

MR. YAW TOTIMEH TO JUDGE

Yes.

JUDGE TO MR. YAW TOTIMEH

So, in your I-589 application, you put the fictitious date of birth attached with that name, correct?

MR. YAW TOTIMEH TO JUDGE

That's what I'm using, but it's not a lie.

JUDGE TO MR. YAW TOTIMEH

Well, it's all fake, right, so it's a lie, correct?

MR. YAW TOTIMEH TO JUDGE

When I was living home, I had issues, and so I was given that on my papers when I was leaving.

JUDGE TO MS. MALMGREN

In the amended materials that you provided --

MS. MALMGREN TO JUDGE

Mm-hmm.

JUDGE TO MS. MALMGREN

-- I know that you amended it with the additional names.  Did you also amend it with the correct date of birth?

MS. MALMGREN TO JUDGE

I did not put that date of birth.  But the date of birth is listed in his statement in Paragraph 1.

JUDGE TO MS. MALMGREN

What exhibit contains the birth certificate?

MS. MALMGREN TO JUDGE

Exhibit 7, Tab H.

JUDGE TO MR. YAW TOTIMEH

This fictitious name that you're using, is it for somebody else?  Did you assume somebody else's identity?

MR. YAW TOTIMEH TO JUDGE

It's nobody's name.

JUDGE TO MR. YAW TOTIMEH

So, what's your original date of birth?  The real one.

MR. YAW TOTIMEH TO JUDGE

The 21st of August 1979.

JUDGE TO MS. MALMGREN

You may continue.

MS. MALMGREN TO JUDGE

Yes, your honor.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, how did you enter the United States?

MR. YAW TOTIMEH TO MS. MALMGREN

From Ghana I went to Brazil, from Brazil I came to America.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  And so how did you bring your body into the United States of America, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

We got to Brazil and we went to the church.

JUDGE TO MR. YAW TOTIMEH

When you say we, who were you with?

MR. YAW TOTIMEH TO JUDGE

A lot of people, a lot of them from Ghana.

JUDGE TO MR. YAW TOTIMEH

Okay.

MS. MALMGREN TO MR. YAW TOTIMEH

And did you enter the United States using a visa, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

JUDGE TO MR. YAW TOTIMEH

How long were you in Brazil?

MR. YAW TOTIMEH TO JUDGE

Six months.

A208-125-369                              48                      December 6, 2019

EOIR-000127

JUDGE TO MR. YAW TOTIMEH

Were you ever given any type of lawful status in Brazil?

MR. YAW TOTIMEH TO JUDGE

The church people gave us some sort of document that we walked around with.

JUDGE TO MR. YAW TOTIMEH

Okay. What document was it?

MR. YAW TOTIMEH TO JUDGE

It's what -- they told us we can work with it.

JUDGE TO MR. YAW TOTIMEH

Okay. Were you able to work in Brazil?

MR. YAW TOTIMEH TO JUDGE

No, we did not.

JUDGE TO MR. YAW TOTIMEH

Why not? Not we, I'm talking specifically about you.

MR. YAW TOTIMEH TO JUDGE

No, I did not work with it.

JUDGE TO MR. YAW TOTIMEH

Why?

MR. YAW TOTIMEH TO JUDGE

There's no work in the country. It's not a country where you can find work. As a matter of fact, people from that country are trying to escape as well. And so eventually the church people helped me get out of the country.

JUDGE TO MR. YAW TOTIMEH

Okay. But the permit -- the papers that you had allowed you to work legally in Brazil?

EOIR-000128

MR. YAW TOTIMEH TO JUDGE

I really couldn't tell because I never used it for work.

JUDGE TO MR. YAW TOTIMEH

How did you support yourself in Brazil?

MR. YAW TOTIMEH TO JUDGE

The church people took care of us.

JUDGE TO MS. MALMGREN

You may continue.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, do you know how to read?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Do you know how to write?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.

JUDGE TO MR. YAW TOTIMEH

Well, you went to high school, didn't you?

MR. YAW TOTIMEH TO JUDGE

Yes, I started but I never completed it.

JUDGE TO MR. YAW TOTIMEH

Okay. So, what age did you stop going to school?

MR. YAW TOTIMEH TO JUDGE

Since when I was a kid.

JUDGE TO MR. YAW TOTIMEH

What age?

MR. YAW TOTIMEH TO JUDGE

I couldn't -- I can't remember.

JUDGE TO MS. MALMGREN

You may continue.

MS. MALMGREN TO MR. YAW TOTIMEH

If you didn't present a visa at the U.S. -- when you came to the United States, how were you allowed to enter the country?

MR. YAW TOTIMEH TO MS. MALMGREN

I had a paper from Ghana.

MS. MALMGREN TO MR. YAW TOTIMEH

And what did you show the immigration officer then at the United States border?

MR. YAW TOTIMEH TO MS. MALMGREN

National I.D.

MS. MALMGREN TO MR. YAW TOTIMEH

And what name was that I.D. in?

MR. YAW TOTIMEH TO MS. MALMGREN

David Yaw Totimeh.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Did you tell the immigration officer that that wasn't the name you were born with?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, I told him.

EOIR-000130

MS. MALMGREN TO MR. YAW TOTIMEH

Did you tell the immigration officer that you had a different date of birth?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, I told them.

MS. MALMGREN TO MR. YAW TOTIMEH

So then why are all of your documents and your date of birth in your immigration applications with the name of David Yaw Totimeh and a different date of birth than the one you were born on?

MR. YAW TOTIMEH TO MS. MALMGREN

So, that name, someone from Ghana gave that to me before I left. I have no idea where he came up with it but that was his name. He gave it to me including the passports.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. What is the name of the person who gave you those documents?

MR. YAW TOTIMEH TO MS. MALMGREN

His name is Yaw Totimeh.

MS. MALMGREN TO MR. YAW TOTIMEH

And how did he obtain those documents?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, I had problems back home with my family and the community. So, I had to go to him and so he helped me. He got all of the papers and everything else. He helped me with everything.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Do you know how he gave you -- how he obtained a National I.D. card and a passport for you in the name that you're using now?

MR. YAW TOTIMEH TO MS. MALMGREN

I have no idea.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Did you --

JUDGE TO MR. YAW TOTIMEH

You said his name was David Totimeh?

MR. YAW TOTIMEH TO JUDGE

Yaw Totimeh.

MS. MALMGREN TO JUDGE

Your honor, if I may, in the record Exhibit D, Page 30, there's a letter from Mr. Yaw Totimeh.

JUDGE TO MS. MALMGREN

Exhibit what?

MS. MALMGREN TO JUDGE

D -- or let me give you -- sorry, I know you numbered them.

JUDGE TO MS. MALMGREN

Is it 5?

MS. MALMGREN TO JUDGE

Exhibit 5, yes, your honor, Page 30.

JUDGE TO MS. MALMGREN

Okay. Continue.

MS. MALMGREN TO JUDGE

Yes, your honor.

MS. MALMGREN TO MR. YAW TOTIMEH

And so, earlier, sir, you said that you left Ghana because of a problem, what was

RESTRICTED Case: 26-882, 07/01/2026, DktEntry: 13.2, Page 133 of 238

the problem that you had in Ghana?

MR. YAW TOTIMEH TO MS. MALMGREN

So, the problem started with the will that was left for us which was a piece of land. And so, my siblings -- the older siblings wanted to sell the land to the mosque, and I refused.

JUDGE TO MS. MALMGREN

Counsel, was a copy of the will provided to the court?

MS. MALMGREN TO JUDGE

No, your honor.

JUDGE TO MS. MALMGREN

Okay.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, do you have this will that you're talking about?

MR. YAW TOTIMEH TO MS. MALMGREN

Everything is with my older sibling.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you ask your older sibling for it?

MR. YAW TOTIMEH TO MS. MALMGREN

I did not.

MS. MALMGREN TO MR. YAW TOTIMEH

Why not?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, because the main problem is the fact that he wants to take over the will and keep it for himself. And so obviously I refused, so there's no way I can ask him for it because that's his intention.

A208-125-369                         54                    December 6, 2019

EOIR-000133

MS. MALMGREN TO MR. YAW TOTIMEH

Did he ever harm you?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

JUDGE TO MR. YAW TOTIMEH

And I'm sorry, which sibling are you referring to?

MR. YAW TOTIMEH TO JUDGE

The oldest.

JUDGE TO MR. YAW TOTIMEH

What's his name?  We don't know him.

MR. YAW TOTIMEH TO JUDGE

Ussef Mohammad Yaru.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, where was this land located?

MR. YAW TOTIMEH TO MS. MALMGREN

It's in Nima.

MS. MALMGREN TO MR. YAW TOTIMEH

And where is Nima, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

The name of my neighborhood is Nima, it's in Accra in Ghana.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  And do you know how large this piece of land was?

MR. YAW TOTIMEH TO MS. MALMGREN

It's very big, but I couldn't really tell you how large it is because I don't know how it's measured here in the United States.

JUDGE TO MR. YAW TOTIMEH

Were you living on this land?

MR. YAW TOTIMEH TO JUDGE

I live at my father's house.

JUDGE TO MR. YAW TOTIMEH

Was your father's house located on the land?

MR. YAW TOTIMEH TO JUDGE

It's close to it.

JUDGE TO MR. YAW TOTIMEH

Okay. What was the land being used for?

MR. YAW TOTIMEH TO JUDGE

Well, my brother said a mosque should be built on it, and I said no.

JUDGE TO MR. YAW TOTIMEH

What was the land being used for before you had this discussion about the mosque?

MR. YAW TOTIMEH TO JUDGE

It was just sitting there, there was nothing on it.

JUDGE TO MS. MALMGREN

You may continue.

MS. MALMGREN TO JUDGE

Yes, your honor.

MS. MALMGREN TO MR. YAW TOTIMEH

And when did your problems with your brother begin, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

In 2010.

MS. MALMGREN TO MR. YAW TOTIMEH

And what happened in 2010?

MR. YAW TOTIMEH TO MS. MALMGREN

The problems started in 2010 where we had an argument where my brother said that my father's will was the land needed to be given to the mosque, and I said no, that's not true.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And this was 10 years after your father died?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, that's correct. My father passed away in 2000.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And earlier you said that you experienced physical harm by your brother, when was that?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, it happened twice. The first one is in 2012, the second time was in 2014.

MS. MALMGREN TO MR. YAW TOTIMEH

And what happened -- and do you know what month in 2012, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

No, I can't remember the month.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Well, where were you?

MR. YAW TOTIMEH TO MS. MALMGREN

I was in the mosque.

MS. MALMGREN TO MR. YAW TOTIMEH

What is the name of the mosque?

MR. YAW TOTIMEH TO MS. MALMGREN

Research Islamic School.

MS. MALMGREN TO MR. YAW TOTIMEH

And where is this mosque located?

MR. YAW TOTIMEH TO MS. MALMGREN

It's in Accra, Nima, Ghana.

MS. MALMGREN TO MR. YAW TOTIMEH

And what is the name -- or is there an imam there -- is there an imam at that mosque?

INTERPRETER TO JUDGE

I'm sorry, your honor, the interpreter would request you ask the question.

MS. MALMGREN TO MR. YAW TOTIMEH

Is there an imam at that mosque?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, there is an imam.

MS. MALMGREN TO MR. YAW TOTIMEH

And what is his name?

MR. YAW TOTIMEH TO MS. MALMGREN

Alhaji Sweipe [phonetic].

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And what were you doing at the mosque that day, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

Myself and my brother had gone there to talk about the land.

MS. MALMGREN TO MR. YAW TOTIMEH

And what happened?

EOIR-000137

MR. YAW TOTIMEH TO MS. MALMGREN

When we were done talking my brother and the people in the mosque started beating me up.

MS. MALMGREN TO MR. YAW TOTIMEH

How many people were in the mosque?

MR. YAW TOTIMEH TO MS. MALMGREN

There were about 20.

MS. MALMGREN TO MR. YAW TOTIMEH

Who were these people?

MR. YAW TOTIMEH TO MS. MALMGREN

The people in my mosque.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you know any of them?

MR. YAW TOTIMEH TO MS. MALMGREN

I know the imam and I also know my older brother who is the secretary to the imam.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Did you know any of the people that were with your brother?

MR. YAW TOTIMEH TO MS. MALMGREN

No, it's just my brother and the imam.

MS. MALMGREN TO MR. YAW TOTIMEH

Did they say anything to you when they began beating you?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, we were having a misunderstanding with my brother, and I told him that my -- the will does not seek to give the land to the mosque, so he started beating me up,

and then the others joined in.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Sir, you didn't answer my question. I asked you if, while these people were beating you, did they say anything to you?

MR. YAW TOTIMEH TO MS. MALMGREN

My brother was saying that I'm going to kill you, you're no longer a Muslim, I'm going to kill you.

MS. MALMGREN TO MR. YAW TOTIMEH

How long did this attack last?

MR. YAW TOTIMEH TO MS. MALMGREN

About 10 minutes.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And did your brother have a weapon?

MR. YAW TOTIMEH TO MS. MALMGREN

He had a knife.

MS. MALMGREN TO MR. YAW TOTIMEH

Did he use it?

MR. YAW TOTIMEH TO MS. MALMGREN

In 2012 they beat me up, but they didn't use any knife.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you have any injuries?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, my mouth and my cheeks.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And what was wrong with your mouth and your cheeks?

EOIR-000139

MR. YAW TOTIMEH TO MS. MALMGREN

My brother kept punching me and he busted my mouth. And then the others came in and started beating me. But then I tried to escape.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you need -- how did you -- how did this attack end? Excuse me.

MR. YAW TOTIMEH TO MS. MALMGREN

While they were still beating me up, I tried, and I was able to escape.

MS. MALMGREN TO MR. YAW TOTIMEH

And how were you able to escape, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, while they were still beating me, I just found a way somehow, and I was able to escape through the door.

MS. MALMGREN TO MR. YAW TOTIMEH

And then where did you go?

MR. YAW TOTIMEH TO MS. MALMGREN

I went to Hijia Samira [phonetic].

MS. MALMGREN TO MR. YAW TOTIMEH

Who's that?

MR. YAW TOTIMEH TO MS. MALMGREN

She's just Hijia. She lives in my neighborhood.

MS. MALMGREN TO MR. YAW TOTIMEH

And why did you go to her?

MR. YAW TOTIMEH TO MS. MALMGREN

I went to her so she could help me since I had injuries all over and I didn't have any money to go to see a doctor.

EOIR-000140

MS. MALMGREN TO MR. YAW TOTIMEH

Earlier you said you had something wrong with your mouth and cheeks. Now you're saying you had injuries all over. Which is it, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

What do you mean?

MS. MALMGREN TO MR. YAW TOTIMEH

Earlier I asked you what injuries did you have, you said my mouth and cheeks.

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, that was in 2012.

MS. MALMGREN TO MR. YAW TOTIMEH

Mm-hmm. And then I asked you why did you go to Hijia Samira, and you said because you had injuries all over.

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, because I went to the doctors, and they said that I don't have any money so they can't help me.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Still, sir, do you understand that there's a difference between saying that you have injuries all over and you have injuries on only your mouth and cheeks?

MR. YAW TOTIMEH TO MS. MALMGREN

I don't understand.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And so, what kind of treatment did Hijia Samira give you then, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

She gave me some medicine which I swallowed and then she massaged my face.

MS. MALMGREN TO MR. YAW TOTIMEH

What was the medicine for?

MR. YAW TOTIMEH TO MS. MALMGREN

It's a medicine for headache.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  Did you report this attack to the police?

MR. YAW TOTIMEH TO MS. MALMGREN

For what year?

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, we're talking about 2012 right now.  Please, sir, if you would let the interpreter translate before you answer a question.

MR. YAW TOTIMEH TO MS. MALMGREN

Okay.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  So, I'm asking you in 2012 if you reported this attack to the police, sir.

MR. YAW TOTIMEH TO MS. MALMGREN

No, I did not go to the police.

MS. MALMGREN TO MR. YAW TOTIMEH

And why not?

MR. YAW TOTIMEH TO MS. MALMGREN

Because I know even if I were to go to them, they will send me back to the imam.

MS. MALMGREN TO MR. YAW TOTIMEH

And what makes you think that?

MR. YAW TOTIMEH TO MS. MALMGREN

That's what I've seen happen.  It's happened to so many people.  It happened to

me.

JUDGE TO MR. YAW TOTIMEH

So, you never went to the police at all?

MR. YAW TOTIMEH TO JUDGE

Well, for the 2012 incident I did not go to the police.

JUDGE TO MR. YAW TOTIMEH

And the 2012 incident that you're referring to is when your brother and the other people at the mosque beat you up, correct?

MR. YAW TOTIMEH TO JUDGE

Yes, that is correct.

JUDGE TO MR. YAW TOTIMEH

Why does your written statement indicate that that incident occurred in 2014?

MR. YAW TOTIMEH TO JUDGE

There's another incident that happened in 2014.

JUDGE TO MR. YAW TOTIMEH

I understand. There's no mention of 2012. It says, "In 2014 I tried to speak with my brother about the sale, he attacked me. He along with members of the local mosque brutally beat me."

MR. YAW TOTIMEH TO JUDGE

Yes, both happened, one for 2012, and also one for 2014. The one --

JUDGE TO MR. YAW TOTIMEH

What I'm saying is your statement doesn't mention anything about 2012. It says, "Into 2014 this is what happened," and then it goes on to explain the other incident that happened after that where he cut you in the face.

MS. MALMGREN TO JUDGE

Your honor, if I may, that's the reason why I was submitted that amended statement. And that amended statement that was the exact issue that I had highlighted is that what they -- that first year of 2014 should be read as 2012, your honor.

JUDGE TO MS. MALMGREN

Was this statement translated from a statement that he wrote in his native language?

MS. MALMGREN TO JUDGE

No, your honor. This statement was read back to him in his native language.

JUDGE TO MS. MALMGREN

The original statement --

MS. MALMGREN TO JUDGE

Right.

JUDGE TO MS. MALMGREN

-- was that written --

MS. MALMGREN TO JUDGE

Yes.

JUDGE TO MS. MALMGREN

-- in his native language?

MS. MALMGREN TO JUDGE

No, your honor. He doesn't know how to write, so he told me what happened through a translator.

JUDGE TO MS. MALMGREN

Okay. So, he made the change I guess this week right before --

MS. MALMGREN TO JUDGE

That is correct, your honor.

JUDGE TO MS. MALMGREN

All right. Okay. You may continue.

MS. MALMGREN TO JUDGE

Mm-hmm.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, earlier you said that your brother accused you of having left Islam, is that true?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO MR. YAW TOTIMEH

Do you practice any religion now?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And when did you stop -- did you ever practice any religion?

MR. YAW TOTIMEH TO MS. MALMGREN

I was born into Islam.

MS. MALMGREN TO MR. YAW TOTIMEH

And when did you stop practicing Islam?

MR. YAW TOTIMEH TO MS. MALMGREN

I was born with it ever since I was a child.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, I need you to listen to the questions that I'm asking you, okay? And if you don't understand any of our questions you have to let us know.

MR. YAW TOTIMEH TO MS. MALMGREN

EOIR-000145

Okay.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. I asked you when did you stop practicing Islam.

MR. YAW TOTIMEH TO MS. MALMGREN

When I stopped completely?

MS. MALMGREN TO MR. YAW TOTIMEH

Yes.

MR. YAW TOTIMEH TO MS. MALMGREN

That was in 2014.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. So why in 2012 would your brother be accusing you of stopping -- of no longer practicing Islam?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, right from the get-go my brother wanted this piece of land, so he didn't know how else to get it.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And what does that have to do with him accusing you of stopping practicing Islam?

INTERPRETER TO JUDGE

I'm sorry, your honor --

JUDGE TO INTERPRETER

You can go ahead.

INTERPRETER TO JUDGE

-- the interpreter will ask him to repeat.

JUDGE TO INTERPRETER

No problem.

MR. YAW TOTIMEH TO MS. MALMGREN

Could you repeat the question again, please?

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, I asked you -- sir, you stated that you stopped practicing Islam in 2014.

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO MR. YAW TOTIMEH

You also stated that in 2012 your brother accused you of no longer practicing Islam. That wasn't a question. Okay. So, I'm asking you why in 2012 would your brother have accused you of stopping the practice of Islam if you didn't until 2014?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, I told him at the time when he said that he was going to take away the land. And I said to him, "If you take away this land then I will stop being a Muslim."

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Sir, you claim that the next time you were attacked was in 2014?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, 2014.

MS. MALMGREN TO MR. YAW TOTIMEH

Do you know what month in 2014?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Why not?

MR. YAW TOTIMEH TO MS. MALMGREN

I don't remember the exact month. I just know that it was in 2014.

MS. MALMGREN TO MR. YAW TOTIMEH

What was yesterday's date, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

I wouldn't know unless you told me.

JUDGE TO MS. MALMGREN

What's the relevance?

MS. MALMGREN TO JUDGE

I'm just pointing out that the respondent can't even remember what yesterday's date was, let alone -- and that this could indicate why he can't remember dates from five years ago, your honor.

JUDGE TO MS. MALMGREN

Move on, counsel.

MS. MALMGREN TO MR. YAW TOTIMEH

So, sir, what -- you didn't have any problems with your brother or the other members of your community from 2012 to 2014?

MR. YAW TOTIMEH TO MS. MALMGREN

When the 2012 incident happened, I left home, and I went to stay with my friend somewhere else.

MS. MALMGREN TO MR. YAW TOTIMEH

What's the name of the friend?

MR. YAW TOTIMEH TO MS. MALMGREN

Ceki [phonetic].

MS. MALMGREN TO MR. YAW TOTIMEH

Is that his full name?

MR. YAW TOTIMEH TO MS. MALMGREN

We all call him Ceki, but his name is Ibram Ceki [phonetic].

MS. MALMGREN TO MR. YAW TOTIMEH

And where does he live?

MR. YAW TOTIMEH TO MS. MALMGREN

He lives in Adenta, Ghana.

JUDGE TO MR. YAW TOTIMEH

And how far away is that from where you lived in Nima?

MR. YAW TOTIMEH TO JUDGE

It's very far, I'm not really sure.  But I know it's very far, probably about three hours.

JUDGE TO MR. YAW TOTIMEH

Driving or walking?

MR. YAW TOTIMEH TO JUDGE

With a car.

JUDGE TO MS. MALMGREN

Okay.  You may continue.

MS. MALMGREN TO MR. YAW TOTIMEH

And sir, how did you get there?

MR. YAW TOTIMEH TO MS. MALMGREN

I went to him because I had money to get in a car and get to him.

JUDGE TO MR. YAW TOTIMEH

And how long did you stay with him?

MR. YAW TOTIMEH TO JUDGE

I stayed with him for about two years.

EOIR-000149

JUDGE TO MR. YAW TOTIMEH

And after those two years did you return to Nima?

MR. YAW TOTIMEH TO JUDGE

I was able to go to Nima at least four times while I was there but nobody saw me.

JUDGE TO MR. YAW TOTIMEH

Okay. And while you were living with your friend three hours away you had no further encounters with your brother, correct?

MR. YAW TOTIMEH TO JUDGE

Yeah, we never saw each other.

JUDGE TO MS. MALMGREN

Okay. Continue.

MS. MALMGREN TO MR. YAW TOTIMEH

So, what led you to return to Nima then in 2014?

MR. YAW TOTIMEH TO MS. MALMGREN

So, what happened was my younger brother called me and said that my brother is about to build a mosque on the land and so that's when I returned. And then we had this misunderstanding. And then I went to the police station.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And when you were in Adenta with Ceki did you work?

MR. YAW TOTIMEH TO MS. MALMGREN

No, I did not.

MS. MALMGREN TO MR. YAW TOTIMEH

Why not?

MR. YAW TOTIMEH TO MS. MALMGREN

Because my work was in Nima, and over there I didn't have any of my tools to

EOIR-000150

work.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you not buy tools to work in Adenta?

MR. YAW TOTIMEH TO MS. MALMGREN

I didn't have money.

MS. MALMGREN TO MR. YAW TOTIMEH

So how did you support yourself while you were there?

MR. YAW TOTIMEH TO MS. MALMGREN

Ceki was taking care of me.

MS. MALMGREN TO MR. YAW TOTIMEH

Where is he now?

MR. YAW TOTIMEH TO MS. MALMGREN

He's back in Ghana.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you submit a letter from Ceki?

MR. YAW TOTIMEH TO MS. MALMGREN

What do you mean?

MS. MALMGREN TO MR. YAW TOTIMEH

Did you submit any statement from him to tell the court that these events happened?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Why not?

MR. YAW TOTIMEH TO MS. MALMGREN

EOIR-000151

So Ceki has no idea what happened between myself and my family. As a matter of fact, I never told him that I stopped practicing Islam because if I told him that he would not have helped me.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, I'm not asking about that. I'm asking why wouldn't he submit at least a letter to say that you went and stayed with him for two years and he supported you that entire time?

MR. YAW TOTIMEH TO MS. MALMGREN

I didn't.

MS. MALMGREN TO MR. YAW TOTIMEH

Why?

MR. YAW TOTIMEH TO MS. MALMGREN

Because I didn't know that I would be asked did I go to someone else's house or if I didn't.

MS. MALMGREN TO MR. YAW TOTIMEH

So, when you returned to Nima in 2014 what happened?

MR. YAW TOTIMEH TO MS. MALMGREN

So, I went back home to Nima, it was at night, and I was trying to make something for myself to eat. So, I cooked, and then I gave some to my dog, and I noticed that the dog died right away.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Was this before or after you had an alleged encounter with your brother when you went back to Nima?

MR. YAW TOTIMEH TO MS. MALMGREN

This was after the whole back and forth argument.

EOIR-000152

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. So, when you first returned to Nima then what happened?

MR. YAW TOTIMEH TO MS. MALMGREN

So, when I first got to Nima I went straight to the police station where I reported that my brother is trying to take away my property. And the policemen said, "You have to go and report this to the imam."

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Earlier you said you didn't go to the police because they wouldn't help people in this situation. What changed then in 2014 that led you to go to the police?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, I had no other options at that point. I felt like it's either I report to them or I lose everything.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And did you tell the police that your brother and his friends had attacked you?

MR. YAW TOTIMEH TO MS. MALMGREN

I asked them to write a statement, they wouldn't let me. They just said go to the imam.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. So that doesn't answer my question. I asked you if you told the police that your brother and his friends attacked you.

MR. YAW TOTIMEH TO MS. MALMGREN

That's what I'm trying to say, when I got there, I was unable to tell them.

MS. MALMGREN TO MR. YAW TOTIMEH

Why?

MR. YAW TOTIMEH TO MS. MALMGREN

So, once I got there, he gave me a paper to write my statement, and I said I couldn't write it. And he said why, and I said, "Well, we had a dispute between my brother and I about the land." And then he said, "Well, if that's the situation you have to go to the imam."

MS. MALMGREN TO MR. YAW TOTIMEH

All right. And why didn't you tell him that your brother had also attacked you two years earlier?

JUDGE TO MS. MALMGREN

I believe he already answered that question.

MS. MALMGREN TO JUDGE

Okay.

JUDGE TO MS. MALMGREN

Move on.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you do to the imam?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, my brother and I went to the imam.

MS. MALMGREN TO MR. YAW TOTIMEH

And where did you meet with him?

MR. YAW TOTIMEH TO MS. MALMGREN

In the mosque.

MS. MALMGREN TO MR. YAW TOTIMEH

What mosque?

MR. YAW TOTIMEH TO MS. MALMGREN

EOIR-000154

Research Islamic School.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And what happened in that meeting?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, when we got there the Imam took sides with them because he realized it's something that would benefit the mosque, and I said, "No, that's not true."

MS. MALMGREN TO MR. YAW TOTIMEH

And then what happened?

MR. YAW TOTIMEH TO MS. MALMGREN

So, once we stepped outside my brother attacked me with a knife, and he cut me right here. And then everyone else in the mosque attacked me as well.

MS. MALMGREN TO MR. YAW TOTIMEH

How many people attacked you, sir?

MR. YAW TOTIMEH TO MS. MALMGREN

On that day there was a lot of them. I couldn't tell you how many there were.

MS. MALMGREN TO MR. YAW TOTIMEH

How was this meeting with your brother and the imam organized?

MR. YAW TOTIMEH TO MS. MALMGREN

The imam said during the meeting that the land was meant to be used for to build a mosque, and I said that's not true.

MS. MALMGREN TO MR. YAW TOTIMEH

Did your brother say anything to you when he attacked you?

MR. YAW TOTIMEH TO MS. MALMGREN

He said, "We're going to kill you because you've become an unbeliever."

MS. MALMGREN TO MR. YAW TOTIMEH

And how long did this attack last?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, they were still beating me when people who were selling books came to help me out.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Did you have any injuries?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO MR. YAW TOTIMEH

What were they?

MR. YAW TOTIMEH TO MS. MALMGREN

Right here on my face.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you have any other injuries?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, the two, one here, and one here.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you seek medical attention for these injuries?

MR. YAW TOTIMEH TO MS. MALMGREN

I went to the hospital, and they said I didn't have any money, so they weren't going to help me.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you go to the police to report this attack?

MR. YAW TOTIMEH TO MS. MALMGREN

I did not.

EOIR-000156

MS. MALMGREN TO MR. YAW TOTIMEH

Why not?

MR. YAW TOTIMEH TO MS. MALMGREN

I know even if I were to return, they wouldn't help me.

MS. MALMGREN TO MR. YAW TOTIMEH

So, what did you do then?

MR. YAW TOTIMEH TO MS. MALMGREN

After that I went into town.

MS. MALMGREN TO MR. YAW TOTIMEH

What town?

MR. YAW TOTIMEH TO MS. MALMGREN

Inside Accra.

MS. MALMGREN TO MR. YAW TOTIMEH

And what did you do there?

MR. YAW TOTIMEH TO MS. MALMGREN

I just went -- was walking around.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  And how long did you remain in Accra?

MR. YAW TOTIMEH TO MS. MALMGREN

I did not sleep there.  I went to Yaw Totimeh.

MS. MALMGREN TO MR. YAW TOTIMEH

And where does Yaw Totimeh live?

MR. YAW TOTIMEH TO MS. MALMGREN

He lives in Nima, Kotobabi, Accra, Ghana.

MS. MALMGREN TO MR. YAW TOTIMEH

So, what is the difference between Nima and Kotobabi?

INTERPRETER TO JUDGE

I'm sorry, your honor. The interpreter would ask him to repeat, I don't understand.

JUDGE TO INTERPRETER

No problem.

MR. YAW TOTIMEH TO MS. MALMGREN

They're very close to each other, Nima and Kotobabi. It's almost like they share a border.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And why did you to go Yaw Totimeh's house?

MR. YAW TOTIMEH TO MS. MALMGREN

He's my father's friend.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And what did you do there?

MR. YAW TOTIMEH TO MS. MALMGREN

I told him everything that happened between myself and my brother. And so, he went and got me the passport and I.D. I have no idea where he got it from.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And why didn't you return to Adenta where you had been residing before?

MR. YAW TOTIMEH TO MS. MALMGREN

I didn't return there.

MS. MALMGREN TO MR. YAW TOTIMEH

Why not?

MR. YAW TOTIMEH TO MS. MALMGREN

Because at that point in time I was trying to leave town because I was already afraid. I know that if my brother and the other people were to see me, they would kill me.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, you had testified that you lived without problem in Adenta for two years. Why couldn't you return to that same situation?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, he didn't have enough money to continuously take care of me. At some point he ran out of money. It was for two years.

MS. MALMGREN TO MR. YAW TOTIMEH

And why didn't you --

JUDGE TO MR. YAW TOTIMEH

Well, how much money did it take you to come to the United States?

INTERPRETER TO JUDGE

I'm sorry, your honor?

JUDGE TO MR. YAW TOTIMEH

How much money did you have to come to the United States, how much did it cost, the entire trip?

MR. YAW TOTIMEH TO JUDGE

The church people took care of us, they paid for us to get here. I had a little money from my previous work, and then the church people took care of the rest and helped us to leave.

JUDGE TO MR. YAW TOTIMEH

Okay. How much money did you have from your previous work? Because if I recall correctly, you said you didn't work for two years while you were living with your

A208-125-369                                        80                           December 6, 2019

friend, correct?

MR. YAW TOTIMEH TO JUDGE

That's correct, but they were giving me money to eat, so when I was leaving, I had $200.

JUDGE TO MR. YAW TOTIMEH

That was when you were living in Brazil, right?

MR. YAW TOTIMEH TO JUDGE

Yes, that's in Brazil.

JUDGE TO MR. YAW TOTIMEH

I'm talking about leaving Ghana to get to Brazil, how much money did that take?

MR. YAW TOTIMEH TO JUDGE

I have no idea. Yaw Totimeh took care of everything.

JUDGE TO MR. YAW TOTIMEH

Okay. So Totimeh providing you with the money to travel to Brazil from Ghana, correct?

MR. YAW TOTIMEH TO JUDGE

Yes, he gave me everything.

JUDGE TO MR. YAW TOTIMEH

Okay. So why didn't you just take that money and go back to live somewhere else in Ghana?

MR. YAW TOTIMEH TO JUDGE

I wouldn't be safe anywhere. I mean, the police couldn't help me, I couldn't be safe.

JUDGE TO MR. YAW TOTIMEH

So, when you were there with Totimeh did you go to the doctor then?

MR. YAW TOTIMEH TO JUDGE

No, I went to the doctors before I went to him.

JUDGE TO MR. YAW TOTIMEH

I understand they didn't treat you because you had no money.  But when you went to Totimeh he had money, so did you go to the doctor then?

MR. YAW TOTIMEH TO JUDGE

I never went to the doctors.

JUDGE TO MR. YAW TOTIMEH

Why?

MR. YAW TOTIMEH TO JUDGE

I just wanted to leave town because I was afraid.

JUDGE TO MR. YAW TOTIMEH

The church that was helping you in Brazil, what was the name of the church?

MR. YAW TOTIMEH TO JUDGE

I don't know the name.  I can't read, I can't write.

JUDGE TO MR. YAW TOTIMEH

Okay.  But you can speak, and you can hear.  So, at no point during the six months that they were helping you, and you were around them, and living with them, you didn't catch the name of the church?

MR. YAW TOTIMEH TO JUDGE

I don't know the name of the church.

JUDGE TO MS. MALMGREN

You may continue.

MS. MALMGREN TO MR. YAW TOTIMEH

Have you ever had a passport issued to you in the name that you were born

with?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  And sir, the birth certificate that you provided the court for your birthday, how did you obtain that?

MR. YAW TOTIMEH TO MS. MALMGREN

I asked my younger brother to find it -- I asked my younger brother to get it from Yaw Totimeh.

MS. MALMGREN TO MR. YAW TOTIMEH

And what's your younger brother's name?

MR. YAW TOTIMEH TO MS. MALMGREN

Suliman Mohammad Yaru.

MS. MALMGREN TO MR. YAW TOTIMEH

And why didn't you present this birth certificate to the U.S. immigration authorities at the border?

MR. YAW TOTIMEH TO MS. MALMGREN

That document was sent recently.  It was after I got released that I received it.

JUDGE TO MS. MALMGREN

Let me -- counsel, are you referring to his original birth certificate?  Is this the birth certificate that includes his original name and his original date of birth?

MS. MALMGREN TO JUDGE

Yes, your honor.  I'm referring to that birth certificate.

JUDGE TO MR. YAW TOTIMEH

Okay.  Sir, why would Totimeh have your original birth certificate?

MR. YAW TOTIMEH TO JUDGE

What do you mean?

JUDGE TO MR. YAW TOTIMEH

Why would Totimeh have your original birth certificate? Wouldn't that be with your mother?

MR. YAW TOTIMEH TO JUDGE

That's correct. But my younger brother brought it and said he got it from him.

JUDGE TO MR. YAW TOTIMEH

Why would Totimeh have the original birth certificate?

MR. YAW TOTIMEH TO JUDGE

I don't know.

JUDGE TO MR. YAW TOTIMEH

Well, who gave Totimeh the original birth certificate?

MR. YAW TOTIMEH TO JUDGE

I have no idea. He's my father's very close friend, that's all I know.

JUDGE TO MR. YAW TOTIMEH

So, your mother wouldn't have the birth certificate, you wouldn't have had the birth certificate all along?

MR. YAW TOTIMEH TO JUDGE

In my country when you've been -- when you're born you don't have to be given the birth certificate immediately, it can be given to you years later.

JUDGE TO MR. YAW TOTIMEH

Okay. So, who -- so you're saying that Totimeh was the one that was given the birth certificate?

MR. YAW TOTIMEH TO JUDGE

A208-125-369                           84                         December 6, 2019

That's what my younger brother told me.

JUDGE TO MS. MALMGREN

Counsel, do you have the original birth certificate?

MS. MALMGREN TO JUDGE

I only have a copy of it, your honor.

JUDGE TO MS. MALMGREN

So, you don't have any originals?

MS. MALMGREN TO JUDGE

Not of the birth certificate, your honor, no.

JUDGE TO MS. MALMGREN

Okay. So how am I supposed to believe that this is -- so this is what you have, just this copy, black and white copy --

MS. MALMGREN TO JUDGE

I just have a copy. Yes, your honor.

JUDGE TO MS. MALMGREN

-- of a birth certificate? So, we don't even know if this is valid or not?

MS. MALMGREN TO JUDGE

That's the only copy I have, your honor.

JUDGE TO MS. MALMGREN

Okay. You may continue.

MS. MALMGREN TO JUDGE

Mm-hmm.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, did you ever obtain a birth certificate while you were in Ghana?

MR. YAW TOTIMEH TO MS. MALMGREN

EOIR-000164

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  What was the purpose of Yaw Totimeh changing your name?

MR. YAW TOTIMEH TO MS. MALMGREN

I don't know.

JUDGE TO MR. YAW TOTIMEH

Did Totimeh provide you with any other documents that was provided to the court today with the exception of the birth certificate and passports that he created?

MR. YAW TOTIMEH TO JUDGE

He had written down an affidavit letter.

JUDGE TO MR. YAW TOTIMEH

Okay.  And I read that.  Did he provide the affidavit -- did he assist with any of the affidavit -- other affidavits that were provided to the court?

MR. YAW TOTIMEH TO JUDGE

Yes, he gave it to my younger brother.

JUDGE TO MR. YAW TOTIMEH

You're talking about his affidavit, correct?

MR. YAW TOTIMEH TO JUDGE

Yes, he is.

JUDGE TO MR. YAW TOTIMEH

I'm talking about the other affidavits provided by the other people.  Did he assist with those affidavits at all?

MR. YAW TOTIMEH TO JUDGE

I don't really know.  I know that my younger brother brought it, but it's possible that he helped to get those too.

JUDGE TO MR. YAW TOTIMEH

Why do you believe that it's possible that he helped to get those as well?

MR. YAW TOTIMEH TO JUDGE

Because he had told me he's going to help me no matter what. Ever since my father passed away, he said he was going to help me any way he can.

JUDGE TO MS. MALMGREN

Okay. You may continue.

MS. MALMGREN TO MR. YAW TOTIMEH

The letter that you provided from Yaw Totimeh, it doesn't mention anything about your religious conversion, why not?

MR. YAW TOTIMEH TO MS. MALMGREN

What do you mean?

MS. MALMGREN TO MR. YAW TOTIMEH

I mean that you provided a letter from Yaw Totimeh.

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO MR. YAW TOTIMEH

And in that letter Yaw Totimeh talks about why you left Ghana, and how he changed your name, but it doesn't mention your religious conversation. Religious conversion means changing from Islam to no religion. Why doesn't his letter mention anything about that?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, I told my brother to go to him and tell him that a letter is required from him. And he went to him and that's all he wrote.

MS. MALMGREN TO MR. YAW TOTIMEH

EOIR-000166

Okay. And how did you receive these letters, did you receive them by mail, did you receive them through a computer, how did you get them?

MR. YAW TOTIMEH TO MS. MALMGREN

Someone was coming and they gave it to him.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And who is that someone?

MR. YAW TOTIMEH TO MS. MALMGREN

Ceki.

MS. MALMGREN TO MR. YAW TOTIMEH

So Ceki came to the United States?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, he did.

JUDGE TO MS. MALMGREN

Counsel, remind me, who is Ceki again?

MS. MALMGREN TO JUDGE

Ceki is the person that he stayed with in Adenta.

JUDGE TO MR. YAW TOTIMEH

Is Ceki in the United States right now?

MR. YAW TOTIMEH TO JUDGE

No, he's gone back to Ghana.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, please allow the interpreter to interpret before you respond.

MR. YAW TOTIMEH TO JUDGE

He's gone back to Ghana.

JUDGE TO MR. YAW TOTIMEH

EOIR-000167

When did he go back?

MR. YAW TOTIMEH TO JUDGE

Probably about two months ago.

JUDGE TO MS. MALMGREN

You may continue, counsel.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, when did you leave Ghana?

MR. YAW TOTIMEH TO MS. MALMGREN

I left Ghana in 2014, 14th of June.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  And how did you leave Ghana?

MR. YAW TOTIMEH TO MS. MALMGREN

I left Ghana, Totimeh helped me, he gave me $200, a passport, and also a visa -- and the visa and the National I.D.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay.  And did you board a plane, or a boat, what did you use to leave the country?

MR. YAW TOTIMEH TO MS. MALMGREN

I went on an airplane to Brazil.

MS. MALMGREN TO MR. YAW TOTIMEH

And had you ever left Ghana before then?

MR. YAW TOTIMEH TO MS. MALMGREN

You mean travel to a different country?

MS. MALMGREN TO MR. YAW TOTIMEH

Yes, sir.

MR. YAW TOTIMEH TO MS. MALMGREN

I've been to Libya before.

MS. MALMGREN TO MR. YAW TOTIMEH

And when was that?

MR. YAW TOTIMEH TO MS. MALMGREN

That was 2002.

MS. MALMGREN TO MR. YAW TOTIMEH

And did you use a passport to travel to Libya?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

How did you get there?

MR. YAW TOTIMEH TO MS. MALMGREN

For Libya you just go through the desert even without a passport and get in.

MS. MALMGREN TO MR. YAW TOTIMEH

And what were you doing there?

MR. YAW TOTIMEH TO MS. MALMGREN

I went to make money, but I didn't.

MS. MALMGREN TO MR. YAW TOTIMEH

Did you have any immigration status in Libya?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Why did you leave?

MR. YAW TOTIMEH TO MS. MALMGREN

EOIR-000169

You mean Libya?

MS. MALMGREN TO MR. YAW TOTIMEH

Yes, sir.

MR. YAW TOTIMEH TO MS. MALMGREN

They were going after people, they caught me, and they deported me.

MS. MALMGREN TO MR. YAW TOTIMEH

And when were you deported from Libya?

MR. YAW TOTIMEH TO MS. MALMGREN

Maybe in 2005 or '06.

MS. MALMGREN TO MR. YAW TOTIMEH

And after you were deported from Libya where did you live?

MR. YAW TOTIMEH TO MS. MALMGREN

In my neighborhood.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Is it the same address that's listed in your asylum application in Nima?

MR. YAW TOTIMEH TO MS. MALMGREN

I don't understand.

MS. MALMGREN TO MR. YAW TOTIMEH

When you returned to Ghana did you move back to Nima?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, I lived in Nima.

MS. MALMGREN TO MR. YAW TOTIMEH

And earlier you said you did work with tools in Nima, what was that work?

MR. YAW TOTIMEH TO MS. MALMGREN

I was selling stuff, you know, different stuff like a trader, like a businessman.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. What kind of stuff were you selling?

MR. YAW TOTIMEH TO MS. MALMGREN

Shoes, clothes, there was a lot of stuff.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And you provided the court with a birth certificate for what you allege is your real name of Alhasa Mohammad Yaru. Do you have any other documents in that name?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, I do have, like, some I.D.'s, but when I left home, I didn't come with it.

MS. MALMGREN TO MR. YAW TOTIMEH

What I.D.'s?

MR. YAW TOTIMEH TO MS. MALMGREN

Voting I.D.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And where is that voter's I.D.?

MR. YAW TOTIMEH TO MS. MALMGREN

I don't know where it is.

MS. MALMGREN TO MR. YAW TOTIMEH

Outside of a voter's I.D. did you have any other documents?

MR. YAW TOTIMEH TO MS. MALMGREN

No, I don't.

MS. MALMGREN TO MR. YAW TOTIMEH

You said you were a merchant; did you have any documents related to a business?

MR. YAW TOTIMEH TO MS. MALMGREN

My country doesn't require any kind of paper to work whatever business.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And so, you left your country about five years ago, why are you still afraid to go back?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, my brother, he's a very evil person, he's trying to kill me. If I were to return, he will kill me as well as the other guys from my community, the mosque, they will all kill me. I can't return back home.

JUDGE TO MR. YAW TOTIMEH

What happened to the land?

INTERPRETER TO JUDGE

I'm sorry, your honor?

JUDGE TO MR. YAW TOTIMEH

What happened to the land?

MR. YAW TOTIMEH TO JUDGE

It's still -- sitting there.

JUDGE TO MR. YAW TOTIMEH

Okay. So, it was never turned into a mosque?

MR. YAW TOTIMEH TO JUDGE

My brother said they're about to start.

JUDGE TO MR. YAW TOTIMEH

Okay. So, in the five years that you've been here it's still open land and it hasn't been turned into a mosque?

MR. YAW TOTIMEH TO JUDGE

Possibly now they have started.

JUDGE TO MR. YAW TOTIMEH

And to your knowledge it hasn't been turned into a mosque?

MR. YAW TOTIMEH TO JUDGE

Well, at the time I was there they had not started, but my younger brother said they've started now.

JUDGE TO MR. YAW TOTIMEH

Okay. And you have no proof of this, correct?

INTERPRETER TO JUDGE

I'm sorry, your honor?

JUDGE TO MR. YAW TOTIMEH

You have no proof of this, correct?

MR. YAW TOTIMEH TO JUDGE

I don't.

JUDGE TO MS. MALMGREN

Anything further, counsel?

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

How much longer? Because we've been at it for an hour.

MS. MALMGREN TO JUDGE

I know, your honor.

JUDGE TO MS. MALMGREN

I have another case and we haven't gone through cross-examination.

MS. MALMGREN TO JUDGE

A208-125-369                    94                    December 6, 2019

EOIR-000173

I know, your honor, but there are a lot of issues in this case, and I --

JUDGE TO MS. MALMGREN

What is left to talk about if you've already spoken about the brothers? What else do you have to talk about?

MS. MALMGREN TO JUDGE

About safe relocation in Ghana, about -- I'd like to go through some more questions about proving his identity because I think there's still issues related to that.

JUDGE TO MS. MALMGREN

Well, have you provided any documents to substantiate his identity? You've provided no originals.

MS. MALMGREN TO JUDGE

That's correct, your honor. But if the --

JUDGE TO MS. MALMGREN

So, everything is coming through testimony. And you're supposed to provide us with actual proof of stuff. So, we have no originals of anything, I have a document coming from someone who already fabricated other documents with the fictitious name that he has in court today. So, what can you give me paper-wise that I can look at that's actually valid?

MS. MALMGREN TO JUDGE

Right, your honor. He does not have any other documents, but if he's able to provide a reasonable and credible response as to why he is without those documents that persuades the court then his testimony alone could be enough to establish his identity as far as his claim.

JUDGE TO MS. MALMGREN

Well, here's the slight issue that I have is that the case has been pending for a

very long time. He's been able to get all these other things from his brother, from whomever. But he couldn't have them provide the documents that he's talking about that can validate who he is?

MS. MALMGREN TO JUDGE

Right. I believe obtaining letters, and if I were to ask him about the situation of his siblings right now, he could maybe enlighten the court as to why those other documents don't exist, your honor.

JUDGE TO MS. MALMGREN

Okay. Counsel, the case was set for an hour and a half. You have about five minutes to get all of that linked up, okay? I think you can narrow down your questions because I've given you pretty much free leeway to direct. And we've been at it, the interpreter has not had a break, she's been talking the whole hour. So, I'm going to give you about five minutes, narrow down your questions to solidify that, and we can move on, okay?

MS. MALMGREN TO JUDGE

Okay, your honor.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, where are your younger siblings living today?

MR. YAW TOTIMEH TO MS. MALMGREN

Koforidua.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And why haven't any of them provided any other identity documents for you to provide to the court?

MR. YAW TOTIMEH TO MS. MALMGREN

They have submitted some of their paperwork in an affidavit right now.

EOIR-000175

MS. MALMGREN TO MR. YAW TOTIMEH

They've submitted affidavits, letters, yes, sir. But why have they not provided any copies of a National Identity Card, a driver's license, a health insurance card, or an electoral card?

MR. YAW TOTIMEH TO MS. MALMGREN

My brother doesn't know where it is, we were not living in the same room.

JUDGE TO MS. MALMGREN

Counsel, just for my clarification, are you talking about them providing I.D.'s for their affidavits, or them providing --

MS. MALMGREN TO JUDGE

No, for him.

JUDGE TO MS. MALMGREN

Okay.

MS. MALMGREN TO JUDGE

Yes, your honor, because we were talking about, you know, why didn't they get any of those.

JUDGE TO MS. MALMGREN

Okay.

MS. MALMGREN TO JUDGE

I know they provided their own I.D.'s. Given that the court has limited the time then I will stop asking questions, your honor.

JUDGE TO MS. MALMGREN

Are you finished with that?

MS. MALMGREN TO JUDGE

I mean, I have questions to ask.

JUDGE TO MS. MALMGREN

You have three minutes.

MS. MALMGREN TO JUDGE

But three minutes is not --

JUDGE TO MS. MALMGREN

Is it still specifically with the I.D. situation?  Go ahead and ask the questions.

MS. MALMGREN TO JUDGE

Okay.

JUDGE TO MS. MALMGREN

But if it's -- you know --

MS. MALMGREN TO JUDGE

Right.  No, I --

JUDGE TO MS. MALMGREN

I don't see what else with respect to this claim that you can ask.  Really if that's the only issue ask the one or two questions so he can answer it and move on.

MS. MALMGREN TO JUDGE

Right.  No, then I'll rest, your honor.

JUDGE TO INTERPRETER

Okay.  Madam interpreter, I'm going to give you a five-minute break, and we can do cross-examination after that.  I'm going to have the other people come in and we can figure out what we're going to do with the next case, okay?

INTERPRETER TO JUDGE

Okay.

JUDGE TO INTERPRETER

All right.  You go ahead and take a break.

JUDGE TO MR. YAW TOTIMEH

You can take a break, sir, because you guys have been talking for an hour.

INTERPRETER TO JUDGE

Okay.

MS. MOORE TO JUDGE

Do you want me to have them come in?

JUDGE TO MS. MOORE

Yes, please. And then I'll give you guys a break.

JUDGE TO MS. MALMGREN

Oh, you can take a break too, counsel.

MS. MALMGREN TO JUDGE

I'm okay.

OFF THE RECORD

ON THE RECORD

JUDGE FOR THE RECORD

We're back on the record in the matter of 208-125-369.

JUDGE TO MS. MALMGREN

Any remaining questions to the respondent's counsel?

MS. MALMGREN TO JUDGE

Yes, your honor. Just a few more questions.

JUDGE TO MS. MALMGREN

Okay.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, earlier you said that your brother was the secretary at the mosque. Did other members of the mosque know you as a secretary there?

MR. YAW TOTIMEH TO MS. MALMGREN

Not just them, as a matter of fact the whole neighborhood knows that he is a secretary.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And if you know, sir, how many people live in that neighborhood?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. All right. And did the people in your neighborhood also know that you and your brother were related?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO JUDGE

Okay. Thank you, your honor.

JUDGE TO MS. MALMGREN

Okay. Anything further?

MS. MALMGREN TO JUDGE

No, your honor. Thank you.

JUDGE TO MS. MOORE

All right. Cross-examination?

MS. MOORE TO MR. YAW TOTIMEH

Okay. Sir, you testified that after you were attacked by your brother in 2012 that you received treatment, is that correct?

MR. YAW TOTIMEH TO MS. MOORE

I didn't get any treatment.

MS. MOORE TO MR. YAW TOTIMEH

I thought you said you went to see someone who gave you tablets for your head and gave you a face massage?

MR. YAW TOTIMEH TO MS. MOORE

Yes, Hijia Samira.

MS. MOORE TO MR. YAW TOTIMEH

Okay. So, sir, your statement -- the last statement you submitted doesn't mention anything about getting treatment after you were attacked in 2012.

MR. YAW TOTIMEH TO MS. MOORE

I did mention it, I said 2012.

MS. MOORE TO MR. YAW TOTIMEH

But I'm looking at your statement, it doesn't mention anything about you receiving any treatment in 2012. It says that you ran away after you were brutally beaten, but there's no mention of treatment. Can you explain why that is not in your statement?

MR. YAW TOTIMEH TO MS. MOORE

I did say it. I said I went to Hijia Samira and she helped me. She took care of me and gave me medicine.

MS. MOORE TO MR. YAW TOTIMEH

Okay. Sir, you -- after the alleged attack in 2014 by your brother did you seek medical treatment after that attack?

MR. YAW TOTIMEH TO MS. MOORE

That incident I went to the hospital, and I didn't have money, so they did not take care of me.

MS. MOORE TO MR. YAW TOTIMEH

Sir, you submitted two other asylum applications, how is it that you never

mentioned this issue in those other two asylum applications that you submitted?

MR. YAW TOTIMEH TO MS. MOORE

I don't understand.

MS. MOORE TO MR. YAW TOTIMEH

Sir, you didn't mention this 2014 incident in your other two applications, why is that?

MR. YAW TOTIMEH TO MS. MOORE

I don't understand.

MS. MOORE TO MR. YAW TOTIMEH

Sir, in your -- the first asylum application that you submitted, are you familiar with that asylum application?

JUDGE TO MS. MOORE

Are you referring to Exhibit 2?

MS. MOORE TO JUDGE

Yes, Exhibit 2.

MS. MOORE TO MR. YAW TOTIMEH

In Exhibit 2 -- sir, are you familiar with Exhibit 2 -- what's been marked Exhibit 2?

MR. YAW TOTIMEH TO MS. MOORE

Which one, the one that I gave the lawyer, or the one that was given while I was in detention?

MS. MOORE TO MR. YAW TOTIMEH

Well, it was filed July 31st, 2015.

JUDGE TO MR. YAW TOTIMEH

It's the very first one.

MR. YAW TOTIMEH TO MS. MOORE

That very first one there is an individual while I was in detention, he was -- they call him Ghana's lawyer, he helps everyone, and so he helped me.

MS. MOORE TO MR. YAW TOTIMEH

Okay. Well, in that application he said that you were harmed in 2013 and 2014. So, can you tell us what harm you suffered in 2013?

MR. YAW TOTIMEH TO MS. MOORE

It's not 2013. It's 2012 and 2014.

MS. MOORE TO MR. YAW TOTIMEH

So, do you have any idea why that -- the first application that's been marked as Exhibit 2 said that you were harmed in 2013 and 2014?

MR. YAW TOTIMEH TO MS. MOORE

I don't know why.

MS. MOORE TO MR. YAW TOTIMEH

In the second asylum application you submitted that has been marked as Exhibit 3 you stated that you -- for years you lived in peace with your brother until 2013.

MR. YAW TOTIMEH TO MS. MOORE

I said that we lived in peace all the way until 2010 until we had our problems.

MS. MOORE TO MR. YAW TOTIMEH

Okay. But I'm asking about what's been stated in the second asylum application, Exhibit 3. It states that on Page 5, "For years we lived in peace, but in 2013 my brother Ussef started to become more and more obsessed with Islam and decided to build a mosque on our property." Are you familiar with that portion of your asylum application?

MR. YAW TOTIMEH TO MS. MOORE

That's not what's written.

MS. MOORE TO MR. YAW TOTIMEH

That's not what's written?

MR. YAW TOTIMEH TO MS. MOORE

What do you mean?

MS. MOORE TO MR. YAW TOTIMEH

Well, I'm asking you what you mean by that statement. I'm reading to you what's in your -- what's been marked as Exhibit 3. Are you saying that this application is incorrect?

MR. YAW TOTIMEH TO MS. MOORE

It's possible it's the person who wrote it down but that's not what I told him.

MS. MOORE TO MR. YAW TOTIMEH

It also says that twice in 2013 and 2014 that your brother and his supporters attacked you. Is that incorrect also?

MR. YAW TOTIMEH TO MS. MOORE

I told him 2012 and 2014, I don't know what he wrote in there.

MS. MOORE TO MR. YAW TOTIMEH

Okay. And this asylum application was signed by you and filled out by your current attorney's office, is that correct?

MR. YAW TOTIMEH TO MS. MOORE

What lawyer, the one in detention, or the one from outside? I didn't have a lawyer while in detention.

MS. MOORE TO MR. YAW TOTIMEH

No, sir. I'm talking about Exhibit Number 3. That asylum application was signed by you on March 27, 2017, and it was signed by Cindy Klein [phonetic], Esq., located at 299 -- with her office at 299 Broadway. Are you saying that this asylum application is incorrect that was prepared by your current attorney's office?

MR. YAW TOTIMEH TO MS. MOORE

Yeah, that is correct. I signed it. Broadway Street, that's correct. I signed it.

MS. MOORE TO MR. YAW TOTIMEH

Okay, sir. So, were you not aware that this asylum application said that you were attacked in 2013 and 2014?

MR. YAW TOTIMEH TO MS. MOORE

Whoever wrote it down I told them 2012 and 2014. I never said 2013.

MS. MOORE TO MR. YAW TOTIMEH

It also states that you were living in peace with your brother up until 2013 in contradiction to your testimony today.

MR. YAW TOTIMEH TO MS. MOORE

Myself and my brother lived in peace up until 2010, that's when we had our problem.

MS. MOORE TO MR. YAW TOTIMEH

Okay. So why doesn't your other two applications mention that you were living in peace up until 2010?

MR. YAW TOTIMEH TO MS. MOORE

What do you mean?

MS. MOORE TO MR. YAW TOTIMEH

Okay. Why doesn't your application mention that -- your other two applications mention that you had issues with your brother in 2012?

MR. YAW TOTIMEH TO MS. MOORE

I don't know who -- why they wrote that, that's not what I told them. I told them that the problem started in 2010, and then there was an issue in 2012, and then an issue in 2014.

MS. MOORE TO MR. YAW TOTIMEH

Okay. Sir, what injuries did you have after this alleged attack in 2014?

MR. YAW TOTIMEH TO MS. MOORE

It's right here by my eyes.

MS. MOORE TO MR. YAW TOTIMEH

So how did you treat whatever injury you had by your eyes?

MR. YAW TOTIMEH TO MS. MOORE

I just took care of myself.

MS. MOORE TO MR. YAW TOTIMEH

How did you treat yourself?

MR. YAW TOTIMEH TO MS. MOORE

I was able to massage my face with hot water, and then also I took some medicine for headaches.

MS. MOORE TO MR. YAW TOTIMEH

So, what injuries did you have?

MR. YAW TOTIMEH TO MS. MOORE

Right here, I was stabbed with a knife right here in my face.

MS. MOORE TO MR. YAW TOTIMEH

And you were able to treat it with a massage and hot water?

MR. YAW TOTIMEH TO MS. MOORE

Yes, and it healed.

MS. MOORE TO MR. YAW TOTIMEH

Yeah, and what injuries did you have after the alleged 2012 attack?

MR. YAW TOTIMEH TO MS. MOORE

2012 is my mouth and my face as well.

MS. MOORE TO MR. YAW TOTIMEH

And did you submit a letter from the person who treated you in 2012?

MR. YAW TOTIMEH TO MS. MOORE

No.

MS. MOORE TO MR. YAW TOTIMEH

And the birth certificate that you submitted, prior to submitting it have you -- did you ever see this in Ghana -- while you lived in Ghana?

MR. YAW TOTIMEH TO MS. MOORE

No.

MS. MOORE TO MR. YAW TOTIMEH

And do you know how they were able to get this birth certificate?

MR. YAW TOTIMEH TO MS. MOORE

I have no idea.

MS. MOORE TO JUDGE

I have nothing further, your honor.

JUDGE TO MS. MALMGREN

Redirect?

MS. MALMGREN TO JUDGE

Yes, your honor.

MS. MALMGREN TO MR. YAW TOTIMEH

Sir, do you speak any English?

MR. YAW TOTIMEH TO MS. MALMGREN

No.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. Sir, how did you tell your attorney what happened -- your current law

office what happened to you in Ghana?

MR. YAW TOTIMEH TO MS. MALMGREN

Which of my attorneys?

MS. MALMGREN TO MR. YAW TOTIMEH

I'm talking about like for instance myself, how did you -- let me finish. How did you explain to me what happened to you in Ghana if you do not speak English?

MR. YAW TOTIMEH TO MS. MALMGREN

I brought someone, one of my relatives who helped me.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And are you sure that these relatives who helped you were competent in English and your language?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO MR. YAW TOTIMEH

Do you think it's possible that they could have made a mistake when they translated what you were saying?

MR. YAW TOTIMEH TO MS. MALMGREN

That I do not know.

MS. MALMGREN TO MR. YAW TOTIMEH

You don't know if it's possible, or you don't know if they made a mistake?

MR. YAW TOTIMEH TO MS. MALMGREN

I don't know what was written or what they were saying. It's just what they told me.

MS. MALMGREN TO MR. YAW TOTIMEH

Right. And when you say relatives do you mean that these people are related to

EOIR-000187

you by blood?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO MR. YAW TOTIMEH

How are they related to you by blood?

MR. YAW TOTIMEH TO MS. MALMGREN

What do you mean?

MS. MALMGREN TO MR. YAW TOTIMEH

Well, I asked you when you say relatives do you mean people that are related to you by blood, and you said yes.

MR. YAW TOTIMEH TO MS. MALMGREN

No, this person who came is not blood related to me. He's just my friend.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And you have submitted two different statements to the court, is that correct?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And these statements have different interpreters, is that correct?

MR. YAW TOTIMEH TO MS. MALMGREN

Correct.

MS. MALMGREN TO MR. YAW TOTIMEH

And why are there different interpreters for these statements?

MR. YAW TOTIMEH TO MS. MALMGREN

Well, if I were to call one today, he could tell me, well, he's busy, he has to work,

EOIR-000188

and then I'd have to find somebody else.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And so, you don't speak any English, so you can't be certain whether these interpreters were correctly interpreting or not, can you?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes, I don't know.

MS. MALMGREN TO MR. YAW TOTIMEH

Okay. And how old are you today?

MR. YAW TOTIMEH TO MS. MALMGREN

I was born 1979, I think I'm about 40.

MS. MALMGREN TO MR. YAW TOTIMEH

Are you certain about that?

MR. YAW TOTIMEH TO MS. MALMGREN

Yes.

MS. MALMGREN TO JUDGE

Okay. That's all I have, your honor.

JUDGE TO MR. YAW TOTIMEH

Okay. Your older brothers, what do they do for a living?

MR. YAW TOTIMEH TO JUDGE

My brother has two jobs, one he sells different stuff as a trader, and the other one that he's well-known for is a secretary in the mosque.

JUDGE TO MR. YAW TOTIMEH

Do either of your brothers work for the government?

MR. YAW TOTIMEH TO JUDGE

My brother works with the mosque, none of them works for the government.

EOIR-000189

JUDGE TO COUNSELS

Okay. Any questions based on the questions that I asked from either party?

MS. MOORE TO JUDGE

No.

MS. MALMGREN TO JUDGE

No, your honor.

JUDGE TO MS. MALMGREN

Okay. Do you have any other witnesses?

MS. MALMGREN TO JUDGE

No, your honor.

JUDGE TO COUNSELS

Closing arguments?

MS. MALMGREN TO JUDGE

Yes, your honor. Just a moment, please. Your honor, here the respondent is requesting asylum based on two grounds. One is on his religion -- is based on his religion, specifically the fact that he left the Islam faith that is practiced by his family members, and no longer practices a religion. And the second is as a member of a particular social group.

JUDGE TO MS. MALMGREN

Excuse me, counsel. You didn't provide a pre-hearing statement, did you?

MS. MALMGREN TO JUDGE

No, your honor.

JUDGE TO MS. MALMGREN

Okay. Can you define for us what the particular social group is?

MS. MALMGREN TO JUDGE

Mm-hmm. That's where I was going. So, the particular social group would be descendants or heirs of Mohammad Yaru.

JUDGE TO MS. MALMGREN

And if you could please at some point provide it to us in writing because I think that's what you're supposed to do so I can go ahead and put it in there. Just write it down on a piece of paper for me.

MS. MALMGREN TO JUDGE

Okay. I don't think -- okay. I will for the court, your honor, but I believe as long as I state them on the record they should be reserved. But I will write them down. And then --

JUDGE TO MS. MALMGREN

Next time provide a pre-hearing statement, okay?

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

Thanks.

MS. MALMGREN TO JUDGE

I mean if your honor desires I can submit one --

JUDGE TO MS. MALMGREN

No.

MS. MALMGREN TO JUDGE

-- after today. And it's --

JUDGE TO MS. MALMGREN

But what is it?

MS. MALMGREN TO JUDGE

EOIR-000191

The second particular social group would be member --

JUDGE TO MS. MALMGREN

What's the first one?

MS. MALMGREN TO JUDGE

Descendants or heirs of Mohammad Yaru.

JUDGE TO MS. MALMGREN

Okay.

MS. MALMGREN TO JUDGE

And the second one would be members of the nuclear family of Mohammad Yaru. And so, in this case first the applicant has to establish that he suffered past persecution based on one of these grounds. There's no universal definition of what constitutes persecution. Here the applicant testified that he was attacked twice in Ghana by his brother and members of the mosque. He has indicated that during these attacks that his brother and members of the local community beat him and threatened him. He stated that he suffered injuries from both of these attacks. In fact, at the end of the second attack the respondent indicates that he was cut with a knife, and then he still bears a scar from his wound on his face. While the respondent did not seek medical attention for these injuries, he indicated this was because he didn't have any money, and the hospitals would not treat him, that he had to treat himself. The respondent claims that these incidents of persecution and the threats made to him on his life amount to what is required -- amount to persecution under the Act. The respondent claims that this persecution was based on his religion specifically stating that his brother and other members of his community called him a caffer, or what is an infidel, and told him that he left the Islam religion, and that because of this he would die. That these statements combined with the acts of his brother support a finding that he was targeted

EOIR-000192

based on the fact that he left the religious faith of Islam and no longer practices the faith. With regards to particular social group, the respondent does understand that recently the Attorney General issued a decision in Matter of L-E-A- in an attempt to disqualify many people from obtaining asylum based on the particular social group as membership in a family. But the respondent requests that this court still considers his claim as each asylum claim should be considered under the circumstances presented. And the 2nd Circuit has stated in Vanegas- Ramirez v. Holder as well as Li v. Gonzales that membership in a family may constitute a social group basis of persecution. First, here with regard to the social group members of the nuclear family of Mohammad Yaru, Mohammad Yaru is the father of the respondent. His father's name is indicated in the birth certificate that he provided as well as in the numerous affidavits provided by his mother, his siblings, Yaw Totimeh, and a friend that he worked with in Ghana. Membership in this family is immutable and it is something that the respondent cannot change and should not be required to change. A nuclear family is defined and has -- it's bounded, it is not an amorphous or vague group. It is defined under -- in the dictionary as a family group that consists only of parents and children. In Ghana it has been recognized that the nuclear family is of growing importance in the Ghanaian family system, and in regards to inheritance. This is documented in Exhibit G at Page 247 in the Chronic Poverty Research Center's documentation about inheritance in Ghana. Though this group is socially distinct, the respondent has testified that his brother is a secretary at the local mosque, that everyone in his community knows that his brother holds this position and knows that they are related. Thus, it meets the requirements of particularity, as well as immutably, as well as under social distinction which was set forth in Matter of L-E-A-. The same argument can be applied to descendants or heirs of Mohammad Yaru that social group proposed given that the respondent cannot change

A208-125-369 114 December 6, 2019

EOIR-000193

the fact that he's been indicated as an heir in his father's will. And again, it is a limited group, it is not amorphous, and that the heirs are specific members of his family. Inheritance laws in Ghana are often based on lineage and through the wife and children. This is again documented at Exhibit G, Page 247, and throughout that report. Third, this is socially distinct. The respondent has testified today and has provided affidavits from individuals in Ghana that his brother was attempted to build a mosque on the land in Ghana, and that there was a protracted land issue in this case. And the respondent testified that this was all due to an inheritance issue related -- stemming from his father's death in the year 2000. The respondent has testified that the government is both unwilling and unable to protect him from his brother or members of the community. The case law is clear that police inaction and failure to respond to an asylum applicant may be sufficient to demonstrate the government's unable or unwillingness. Here the respondent testified that in 2014 he attempted to seek the help of the local police; the police directed him to the imam. The respondent testified that after an attack in 2012 he did not seek the help of the police because the police would not do anything to assist him. I think that the police's refusal to help the respondent in 2014, those statements made by respondent are corroborate by the background country condition reports, specifically the U.S. Department of State report for last year indicates that the police often fail to respond to reports of abuses, and in many instances do not act unless complainants paid for police transportation and other operating expenses. There were also reports that police failed to prevent and respond to societal violence, in particular mob justice similar to the violence suffered by the respondent in his native of Ghana. Transparency International Report also states and corroborates the respondent's claim of the authorities unwillingness and inability to protect him from his persecutors stating that police brutality, corruption, negligence, and impunity continue to

EOIR-000194

be issues, and credible reports of police beating, raping, and abusing suspects and other citizens are common. These support a finding that the government in Ghana is both unwilling and unable to help the respondent. I believe a decision in <u>Afriyie v. Holder</u>, 613 F.3d 924 (9th Cir. 2010) can be guiding in this case. That case also involves an individual from Ghana. Although it was a Christian missionary who claimed that he was persecuted by Muslim members of his community, both the immigration judge and the BIA found that the government of Ghana was able and willing to protect the missionary. However, the 9th Circuit disagreed stating that these country reports that were provided from 2010 similar to those provided by the respondent today state that the police in Ghana do not investigate crimes, and often demand bribes from individuals seeking help. This was in part aiding the circuit court's decision in remanding the case back to the Board of Immigration Appeals for further decision making. Lastly, the respondent asked this court to grant his asylum application. He recognizes that he has not provided many documents related to his birth and his identity. But he has credibly testified today that these documents he's been unable to obtain. The respondent who is both illiterate and -- who is illiterate and barely even knows his age today, does not know the date of yesterday, has done his best to testify to what happened to him in Ghana, and has also provided reasonable explanation as to why certain identity documents are missing today. He did testify that he also provided the immigration authorities at the border with his true name and his true date of birth. It's unclear as to why that name was not used for these proceedings today. For these reasons, the respondent asks that the court find that he meets what is required for asylum under the Act. Alternatively, the respondent asks that the court find that he meets what is required under the Convention Against Torture. For the Convention Against Torture the respondent has to establish that the government authorities would

EOIR-000195

acquiesce or are aware of torture that the respondent would suffer and would not provide a respondent with aid. While it's not -- while the respondent has testified that the police authorities in Ghana would refuse to help him and that his brother has threatened him with death, a threat of death is -- or does -- is considered torture under the Act, and country condition reports do indicate that the police are -- both refuse to help respondents who are not able to pay them, and also unable to help respondents due to a lack of resources. With these things combined it should help this court determine that if the respondent is not eligible for asylum that he meets the burden for protection under the Convention Against Torture. Thank you.

JUDGE TO MS. MALMGREN

Thank you. Just one question, counsel. Did you provide any documents showing that his brother was the secretary of the mosque?

MS. MALMGREN TO JUDGE

No, your honor.

JUDGE TO MS. MOORE

Okay. Ms. Moore?

MS. MOORE TO JUDGE

Judge, just briefly I would say that respondent has not established that he suffered past persecution, or he has a well-founded fear of persecution. Under the REAL ID Act the respondent has the burden to establish his identity, he has failed to do so. He has not testified credibly, so -- and he has not corroborated his claim. And given the fact that he has not been a credible witness you would need corroboration -- further corroboration which he has not been able to provide, and that he was not a credible witness, and that he has not met his burden of proof.

JUDGE FOR THE RECORD

We're going to take a break and come back at 11:45.

MS. MALMGREN TO JUDGE

Yes, your honor.

OFF THE RECORD

ON THE RECORD

JUDGE TO MS. MOORE

I'm just going to -- I had noticed that the asylum application, the original one, was filed a few months after the one year. Are you arguing a one-year issue, Ms. Moore?

MS. MOORE TO JUDGE

From what I can see he was not given a credible fear interview, but he did I guess express one. I think it was a problem with the language that, I mean, he may fall under --

MS. MALMGREN TO JUDGE

Mendez.

MS. MOORE TO JUDGE

-- Mendez-Rojas.

JUDGE TO MS. MOORE

Rojas. Okay. So, we'll just --

MS. MOORE TO JUDGE

Yeah.

JUDGE TO MS. MOORE

-- say that it was an exception --

MS. MALMGREN TO JUDGE

Right.

JUDGE TO MS. MOORE

A208-125-369                         118                    December 6, 2019

-- to the one-year rule, and I'll find that it's timely, okay?

MS. MALMGREN TO JUDGE

Thank you, your honor.

OFF THE RECORD

ON THE RECORD

JUDGE FOR THE RECORD

We are back on the record in the matter of 208-125-369. All parties are before the court. The interpreter is sitting in the back and she will simultaneously interpret the court's ruling.

JUDGE RENDERS ORAL DECISION

JUDGE TO MR. YAW TOTIMEH

Okay. If the respondent can please come up to the front.

MS. MALMGREN TO JUDGE

We'll reserve.

JUDGE TO MS. MALMGREN

I'm going to ask.

MS. MALMGREN TO JUDGE

Okay.

JUDGE TO MS. MALMGREN

You're reserving appeal, respondent's counsel?

MS. MALMGREN TO JUDGE

My name is Melissa Malmgren.

JUDGE TO MS. MALMGREN

I'm sorry.

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

I'm sorry, I just --

MS. MALMGREN TO JUDGE

No, I just -- no, just so you know.  Just if I see you again, yeah.

JUDGE TO MS. MALMGREN

Yes.

MS. MALMGREN TO JUDGE

It's Ms. Malmgren.  Yes, your honor, we are.

JUDGE TO MS. MOORE

Okay.  Ms. Moore?

MS. MOORE TO JUDGE

I'll waive.

JUDGE TO MS. MALMGREN

All right.  January 6, 2020 --

MS. MALMGREN TO JUDGE

Yes, your honor.

JUDGE TO MS. MALMGREN

-- is the due date.

JUDGE TO MR. YAW TOTIMEH

Sir, I've listened to the evidence which came by way through your testimony.  And I've read the documents that you have provided to the court.  And the court is denying relief today.  Your attorney did reserve appeal on your behalf.  The appeal due date is Monday, January 6th, 2020.  If you disagree with the court's decision you can appeal me to a higher court.  And a higher court will evaluate my decision and make a

A208-125-369                         120                         December 6, 2019

EOIR-000199

determination on whether it stands, or they'll overrule it, okay?  Nonetheless, I do wish you good luck.

JUDGE TO COUNSELS

Anything further from either party?

MS. MOORE TO JUDGE

Nothing.

MS. MALMGREN TO JUDGE

No, your honor.  Thank you.

JUDGE FOR THE RECORD

Case adjourned.

JUDGE TO COUNSELS

Thank you, everyone.

<u>HEARING CLOSED</u>

EOIR-000200

## CERTIFICATE PAGE

I hereby certify that the attached proceeding before JUDGE SAGESSE, CATHY,

in the matter of:

DAVID YAW TOTIMEH

A208-125-369

NEW YORK, NEW YORK

was held as herein appears, and that this is the original transcript thereof for the file of

the Executive Office for Immigration Review.

*Emily Hatch*

EMILY HATCH (Transcriber)

Diaz Data Services

May 17, 2021

(Completion Date)

EOIR-000201



6000630113

000001860626

5/14/2015
Removal
YAW TOTIMEH, DAVID
1    Hearing Transcript

**208-125-369**

Lead: 208-125-369

EOIR-000202

*file copy*

MELISSA A. MALMGREN, ESQ.
LAW OFFICE OF SANDY KHINE, PC
299 BROADWAY, SUITE 803
NEW YORK, NY 10007

NON-DETAINED

### UNITED STATES DEPARTMENT OF JUSTICE
### EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
### IMMIGRATION COURT
### NEW YORK, NEW YORK

In the Matter of:                          )
                                           )
**DAVID YAW TOTIMEH,**                     )      File No.:      **A208 125 369**
                                           )
                                           )
                                           )
In Removal Proceedings.                    )

Immigration Judge: Cathy Sagesse                Next Individual Hearing:
                                                December 6, 2019 at 9:00 A.M.

### RESPONDENT'S PROPOSED EXHIBITS



EXHIBIT # 8
DEC 06 2019
IMMIGRATION COURT
NYC

EOIR-000203

TABLE OF CONTENTS

Page

Exhibit I     Amended Statement of the Respondent in Support of Form I-589 Application for Asylum and for Withholding of Removal (with changes highlighted) ...................................................................273

Exhibit J     Amended Form I-589 Application for Asylum, pages 1 to 4 (with changes highlighted) ...................................................................273

EOIR-000205

## Statement of David Yaw Totimeh a/k/a Alhassan Mohammed Yaro

1. My name is David Yaw Totimeh and I am a native and citizen of Ghana. I was born as Alhassan Mohammed Yaro on August 21, 1979 in Nima, Accra, Ghana. I am submitting this statement in support of my request for asylum, withholding of removal, and protection under the Convention Against Torture. I do not know how to read or write, and this statement was prepared on my behalf by my attorney and with the help of an interpreter, Badaru Abubakar.

2. I am requesting asylum because I have been targeted by members of my family who seek to harm me because I no longer practice Islam and they do not want me to inherit our father's property. My brother, Yussif, seeks to build a mosque on the property and see my opposition to this act as an act against our religion. I fear that if I am forced to return to Ghana, my family members will harm me. The authorities in Ghana are unable and unwilling to provide me with any protection.

3. After my father died in 2000, he left land to me. In 2010, my brothers and sisters began arguing over this inheritance. My older brother, Yussif, sought to sell the land to a group who intended to use the land for the building of a new mosque. In 2012, I tried to speak with my brother about this sale, he attacked me. He, along with members of the local mosque, brutally beat me. Thankfully, I managed to run away.

4. My brother, Yussif, is in a group and is a part of the mosque called Research Islamic School in Nima. Everyone in our community knows him because he works directly under the Imam as a secretary.

5. I tried to report the issues with my brother to the police in Nima. The police refused to take a report and told me to take my problems to the Imam. I went to the Imam. My brothers and I had a meeting with the Imam, and the Imam said the land was meant for the mosque. After the meeting, my brother and his friends attacked me. Yussif cut me on the face with a knife. Some booksellers managed to free me from my brother, and I ran away. I tried to go to a clinic, but they refused to help me because I did not have any money.

6. Before I left Ghana, I returned to my home which was located in Nima. I cooked a meal and fed the food to my dog. The dog died. I believe the food was poisoned. I feared for my safety and immediately arranged to leave the country. I went to a friend, Yaw Totimeh. He helped me take on a new name, David Yaw Totimeh. I am not sure how he changed my name, but he provided me with a passport with the name David Yaw Totimeh and Brazilian visa. He also helped arrange for my travel out of the country.

7. I left Ghana on June 14, 2014 and traveled to Brazil. I remained in Brazil for approximately 6.5 months and then traveled to the United States. I traveled through Ecuador, Columbia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico before reaching the U.S./Mexico border.

8. I fear that if I go back to Ghana, I will be attacked by my older siblings and members of the community. They view me as an opponent to their religion, because I refused to allow them to build a mosque on my father's property. Even my younger siblings have been forced into hiding and they risked their lives to prepare affidavits in support of my case. The police in Ghana do not have resources, are corrupt, and are unable to provide me with protection. For these reasons, I am requesting asylum.

This statement was read back to me in the Hausa language, a language that I understand, and everything is true and correct.

David Yaw Totimeh a/k/a Alhassan Mohammed Yaro

J

EOIR-000208

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

**U.S. Department of Justice**
Executive Office for Immigration Review

OMB No. 1615-0067; Expires 09/30/2022

# I-589, Application for Asylum and for Withholding of Removal

**START HERE - Type or print in black ink. See the instructions for information about eligibility and how to complete and file this application. There is no filing fee for this application.**

**NOTE:** [X] Check this box if you also want to apply for withholding of removal under the Convention Against Torture.

## Part A.I. Information About You

| 1. Alien Registration Number(s) (A-Number) (if any) | 2. U.S. Social Security Number (if any) | 3. USCIS Online Account Number (if any) |
|---|---|---|
| 208125369 | | |

| 4. Complete Last Name | 5. First Name | 6. Middle Name |
|---|---|---|
| YAW TOTIMEH | David | |

**7. What other names have you used (include maiden name and aliases)?**
Alhassan Mohammed Yaro, David Totimeh, David Yawtotimeh, David Yaw Totiweh

**8. Residence in the U.S. (where you physically reside)**

| Street Number and Name | Apt. Number |
|---|---|
| 1694 Davidson Avenue | 4A |

| City | State | Zip Code | Telephone Number |
|---|---|---|---|
| Bronx | New York | 10453 | ( 917 ) 3992759 |

**9. Mailing Address in the U.S. (if different than the address in Item Number 8)**

| In Care Of (if applicable): | Telephone Number |
|---|---|
| same as above | ( ) |

| Street Number and Name | Apt. Number |
|---|---|
| | |

| City | State | Zip Code |
|---|---|---|
| | | |

**10. Gender:** [X] Male [ ] Female    **11. Marital Status:** [X] Single [ ] Married [ ] Divorced [ ] Widowed

| 12. Date of Birth (mm/dd/yyyy) | 13. City and Country of Birth |
|---|---|
| 01/28/1982 | Accra, Ghana |

| 14. Present Nationality (Citizenship) | 15. Nationality at Birth | 16. Race, Ethnic, or Tribal Group | 17. Religion |
|---|---|---|---|
| Ghanaian | Ghanaian | Hausa | None |

**18.** Check the box, a through c, that applies:   **a.** [ ] I have never been in Immigration Court proceedings.
   **b.** [X] I am now in Immigration Court proceedings.    **c.** [ ] I am **not** now in Immigration Court proceedings, but I have been in the past.

**19.** Complete 19 a through c.

   **a.** When did you last leave your country? (mmm/dd/yyyy) **06/14/2014**    **b.** What is your current I-94 Number, if any? **41874000933**

   **c.** List each entry into the U.S. beginning with your most recent entry. *List date (mm/dd/yyyy), place, and your status for each entry.* (Attach additional sheets as needed.)

| Date | 04/07/2015 | Place | San Ysidro CA | Status | Asylum Seeker | Date Status Expires | None |
|---|---|---|---|---|---|---|---|
| Date | | Place | | Status | | | |
| Date | | Place | | Status | | | |

| 20. What country issued your last passport or travel document? | 21. Passport Number LOST | 22. Expiration Date (mm/dd/yyyy) |
|---|---|---|
| Ghana | Travel Document Number LOST | LOST |

| 23. What is your native language (include dialect, if applicable)? | 24. Are you fluent in English? | 25. What other languages do you speak fluently? |
|---|---|---|
| Hausa | [ ] Yes [X] No | None |

| For EOIR use only. | For USCIS use only. | Action: Interview Date: _____ Asylum Officer ID No.: _____ | Decision: Approval Date: _____ Denial Date: _____ Referral Date: _____ |
|---|---|---|---|
| | | | |

Form I-589 (Rev. 09/10/19) N

EOIR-000209



## Part A.II. Information About Your Spouse and Children

**Your spouse**   ☒ I am not married. *(Skip to **Your Children** below.)*

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Date of Birth *(mm/dd/yyyy)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Other names used *(include maiden name and aliases)* |

| 9. Date of Marriage *(mm/dd/yyyy)* | 10. Place of Marriage | 11. City and Country of Birth | |
|---|---|---|---|
| 12. Nationality *(Citizenship)* | 13. Race, Ethnic, or Tribal Group | 14. Gender ☐ Male ☐ Female | |

15. Is this person in the U.S.?
☐ Yes *(Complete Blocks 16 to 24.)*  ☐ No *(Specify location):*

| 16. Place of last entry into the U.S. | 17. Date of last entry into the U.S. *(mm/dd/yyyy)* | 18. I-94 Number *(if any)* | 19. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 20. What is your spouse's current status? | 21. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 22. Is your spouse in Immigration Court proceedings? ☐ Yes ☐ No | 23. If previously in the U.S., date of previous arrival *(mm/dd/yyyy)* |

24. If in the U.S., is your spouse to be included in this application? *(Check the appropriate box.)*

☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*

☐ No

**Your Children.** List all of your children, regardless of age, location, or marital status.

☒ I do not have any children. *(Skip to Part. A.III., Information about your background.)*

☐ I have children.  Total number of children: _____

(NOTE: *Use Form I-589 Supplement A or attach additional sheets of paper and documentation if you have more than four children.*)

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

13. Is this child in the U.S. ?  ☐ Yes *(Complete Blocks 14 to 21.)*  ☐ No *(Specify location):*

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? *(Check the appropriate box.)*

☐ Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*

☐ No

## Part A.II. Information About Your Spouse and Children (Continued)

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

13. Is this child in the U.S. ? ☐ Yes (Complete Blocks 14 to 21.) ☐ No (Specify location): _____

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)

☐ Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)

☐ No

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

13. Is this child in the U.S. ? ☐ Yes (Complete Blocks 14 to 21.) ☐ No (Specify location): _____

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)

☐ Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)

☐ No

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

13. Is this child in the U.S. ? ☐ Yes (Complete Blocks 14 to 21.) ☐ No (Specify location): _____

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)

☐ Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)

☐ No

Form I-589 (Rev. 09/10/19) N Page 3

EOIR-000211

## Part A.III Information About Your Background

1. List your last address where you lived before coming to the United States. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. *(List Address, City/Town, Department, Province, or State and Country.)*
   (NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Number and Street *(Provide if available)* | City/Town | Department, Province, or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| Adenta | Accra *(part-time)* | | Ghana | /2012 | 06/2014 |
| Nima | Accra | | Ghana | /1982 | 06/2014 |

2. Provide the following information about your residences during the past 5 years. List your present address first.
   (NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Number and Street | City/Town | Department, Province, or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| 1694 Davidson Ave 4A | Bronx | New York | USA | 02/2017 | Present |
| 2042 Morris Ave 2B | Bronx | New York | USA | 08/2015 | 01/2017 |
| ICE Detention | Santa Ana | California | USA | 06/2015 | 04/2015 |
| | | | | | |
| | | | | | |

3. Provide the following information about your education, beginning with the most recent school that you attended.
   (NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Name of School | Type of School | Location *(Address)* | Attended From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|
| Kanda High School | General Studies | Accra Ghana | /1990 | /1996 |
| Burma Camp Primary School | Primary School | Accra Ghana | /1987 | /1990 |
| | | | | |
| | | | | |

4. Provide the following information about your employment during the past 5 years. List your present employment first.
   (NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Name and Address of Employer | Your Occupation | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|
| Self Employed, Accra, Ghana | Used Clothing Sales | | /2014 |
| | | | |
| | | | |

5. Provide the following information about your parents and siblings (brothers and sisters). Check the box if the person is deceased.
   (NOTE: *Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Full Name | City/Town and Country of Birth | Current Location |
|---|---|---|
| *Mother* Adiza Mohammed | Ghana | ☐ Deceased Ghana |
| *Father* Mohammed Yaro | Nigeria | ☒ Deceased |
| *Sibling* Yussif Yaro | Nima, Accra, Ghana | ☐ Deceased Nima Accra Ghana |
| *Sibling* Fusseini Yaro | Nima, Accra, Ghana | ☐ Deceased Ghana |
| *Sibling* Sule Yaro | Nima, Accra, Ghana | ☐ Deceased Ghana |
| *Sibling* Abiba Yaro | Nima, Accra, Ghana | ☐ Deceased Ghana |

279

EOIR-000213

<u>PROOF OF SERVICE</u>

On December 4, 2018, I, Melissa A Malmgren, served a copy of the Respondent's Proposed Exhibit List and any attached pages by U.S. Postal service priority mail and E-Service to the Office of Chief Counsel at the following address: ICE/DHS 26 Federal Plaza Room 1130, New York, New York 10278.

Dated: December 4, 2018

MELISSA A. MALMGREN, ESQ.
LAW OFFICE OF SANDY KHINE, PC
299 Broadway, Suite 803
New York, NY 10007
(212) 786-1500

MELISSA A. MALMGREN, ESQ.                          NON-DETAINED
LAW OFFICE OF SANDY KHINE, PC
299 BROADWAY, SUITE 803
NEW YORK, NY 10007

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
NEW YORK, NEW YORK

In the Matter of:                     )
                                      )
  DAVID YAW TOTIMEH,                  )    File No.:    A208 125 369
                                      )
                                      )
                                      )
  In Removal Proceedings.             )

Immigration Judge: Cathy Sagesse          Next Individual Hearing:
                                          December 6, 2019 at 9:00 A.M.

RESPONDENT'S PROPOSED EXHIBITS

EOIR-000215

TABLE OF CONTENTS

Page

Exhibit I        Amended Statement of the Respondent in Support of Form I-589 Application
for Asylum and for Withholding of Removal
(with changes highlighted) ...................................................................................273


Exhibit J        Amended Form I-589 Application for Asylum, pages 1 to 4
(with changes highlighted)   .................................................................................273

EOIR-000216

## Statement of David Yaw Totimeh a/k/a Alhassan Mohammed Yaro

1. My name is David Yaw Totimeh and I am a native and citizen of Ghana. I was born as Alhassan Mohammed Yaro on August 21, 1979 in Nima, Accra, Ghana. I am submitting this statement in support of my request for asylum, withholding of removal, and protection under the Convention Against Torture. I do not know how to read or write, and this statement was prepared on my behalf by my attorney and with the help of an interpreter, Badaru Abubakar.

2. I am requesting asylum because I have been targeted by members of my family who seek to harm me because I no longer practice Islam and they do not want me to inherit our father's property. My brother, Yussif, seeks to build a mosque on the property and see my opposition to this act as an act against our religion. I fear that if I am forced to return to Ghana, my family members will harm me. The authorities in Ghana are unable and unwilling to provide me with any protection.

3. After my father died in 2000, he left land to me. In 2010, my brothers and sisters began arguing over this inheritance. My older brother, Yussif, sought to sell the land to a group who intended to use the land for the building of a new mosque. In 2012, I tried to speak with my brother about this sale, he attacked me. He, along with members of the local mosque, brutally beat me. Thankfully, I managed to run away.

4. My brother, Yussif, is in a group and is a part of the mosque called Research Islamic School in Nima. Everyone in our community knows him because he works directly under the Imam as a secretary.

5. I tried to report the issues with my brother to the police in Nima. The police refused to take a report and told me to take my problems to the Imam. I went to the Imam. My brothers and I had a meeting with the Imam, and the Imam said the land was meant for the mosque. After the meeting, my brother and his friends attacked me. Yussif cut me on the face with a knife. Some booksellers managed to free me from my brother, and I ran away. I tried to go to a clinic, but they refused to help me because I did not have any money.

6. Before I left Ghana, I returned to my home which was located in Nima. I cooked a meal and fed the food to my dog. The dog died. I believe the food was poisoned. I feared for my safety and immediately arranged to leave the country. I went to a friend, Yaw Totimeh. He helped me take on a new name, David Yaw Totimeh. I am not sure how he changed my name, but he provided me with a passport with the name David Yaw Totimeh and Brazilian visa. He also helped arrange for my travel out of the country.

7. I left Ghana on June 14, 2014 and traveled to Brazil. I remained in Brazil for approximately 6.5 months and then traveled to the United States. I traveled through Ecuador, Columbia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico before reaching the U.S./Mexico border.

8. I fear that if I go back to Ghana, I will be attacked by my older siblings and members of the community. They view me as an opponent to their religion, because I refused to allow them to build a mosque on my father's property. Even my younger siblings have been forced into hiding and they risked their lives to prepare affidavits in support of my case. The police in Ghana do not have resources, are corrupt, and are unable to provide me with protection. For these reasons, I am requesting asylum.

This statement was read back to me in the Hausa language, a language that I understand, and everything is true and correct.

David Yaw Totimeh a/k/a Alhassan Mohammed Yaro

EOIR-0200248

EOIR-000219

Department of Homeland Security
U.S. Citizenship and Immigration Services

U.S. Department of Justice
Executive Office for Immigration Review

OMB No. 1615-0067; Expires 09/30/2022

# I-589, Application for Asylum and for Withholding of Removal

**START HERE - Type or print in black ink.** See the instructions for information about eligibility and how to complete and file this application. There is no filing fee for this application.

**NOTE:** ☒ Check this box if you also want to apply for withholding of removal under the Convention Against Torture.

## Part A.I. Information About You

| 1. Alien Registration Number(s) (A-Number) (if any) | 2. U.S. Social Security Number (if any) | 3. USCIS Online Account Number (if any) |
|---|---|---|
| 208125369 | | |

| 4. Complete Last Name | 5. First Name | 6. Middle Name |
|---|---|---|
| YAW TOTIMEH | David | |

**7.** What other names have you used (include maiden name and aliases)?
Alhassan Mohammed Yaro, David Totimeh, David Yawtotimeh, David Yaw Totiweh

**8.** Residence in the U.S. (where you physically reside)

| Street Number and Name | Apt. Number |
|---|---|
| 1694 Davidson Avenue | 4A |

| City | State | Zip Code | Telephone Number |
|---|---|---|---|
| Bronx | New York | 10453 | ( 917 ) 3992759 |

**9.** Mailing Address in the U.S. (if different than the address in Item Number 8)

| In Care Of (if applicable): | Telephone Number |
|---|---|
| same as above | ( ) |

| Street Number and Name | Apt. Number |
|---|---|
| | |

| City | State | Zip Code |
|---|---|---|
| | | |

**10.** Gender: ☒ Male ☐ Female  **11.** Marital Status: ☒ Single ☐ Married ☐ Divorced ☐ Widowed

| 12. Date of Birth (mm/dd/yyyy) | 13. City and Country of Birth |
|---|---|
| 01/28/1982 | Accra, Ghana |

| 14. Present Nationality (Citizenship) | 15. Nationality at Birth | 16. Race, Ethnic, or Tribal Group | 17. Religion |
|---|---|---|---|
| Ghanaian | Ghanaian | Hausa | None |

**18.** Check the box, a through c, that applies: **a.** ☐ I have never been in Immigration Court proceedings.
**b.** ☒ I am now in Immigration Court proceedings. **c.** ☐ I am **not** now in Immigration Court proceedings, but I have been in the past.

**19.** Complete 19 a through c.

**a.** When did you last leave your country? (mmm/dd/yyyy) 06/14/2014 **b.** What is your current I-94 Number, if any? 41874000933

**c.** List each entry into the U.S. beginning with your most recent entry. List date (mm/dd/yyyy), place, and your status for each entry. (Attach additional sheets as needed.)

| Date | Place | Status | Date Status Expires |
|---|---|---|---|
| 04/07/2015 | San Ysidro CA | Asylum Seeker | None |
| Date | Place | Status | |
| Date | Place | Status | |

| 20. What country issued your last passport or travel document? | 21. Passport Number LOST | 22. Expiration Date (mm/dd/yyyy) |
|---|---|---|
| Ghana | Travel Document Number LOST | LOST |

| 23. What is your native language (include dialect, if applicable)? | 24. Are you fluent in English? | 25. What other languages do you speak fluently? |
|---|---|---|
| Hausa | ☐ Yes ☒ No | None |

| For EOIR use only. | For USCIS use only. | Action:<br>Interview Date: _____<br>Asylum Officer ID No.: _____ | Decision:<br>Approval Date: _____<br>Denial Date: _____<br>Referral Date: _____ |
|---|---|---|---|
| | | | |

Form I-589 (Rev. 09/10/19) N

## Part A.II. Information About Your Spouse and Children

**Your spouse**  ☒ I am not married. (Skip to **Your Children** below.)

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Date of Birth *(mm/dd/yyyy)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Other names used *(include maiden name and aliases)* |

| 9. Date of Marriage *(mm/dd/yyyy)* | 10. Place of Marriage | 11. City and Country of Birth |
|---|---|---|

| 12. Nationality *(Citizenship)* | 13. Race, Ethnic, or Tribal Group | 14. Gender ☐ Male ☐ Female |
|---|---|---|

**15. Is this person in the U.S.?**
☐ Yes *(Complete Blocks 16 to 24.)*  ☐ No *(Specify location):*

| 16. Place of last entry into the U.S. | 17. Date of last entry into the U.S. *(mm/dd/yyyy)* | 18. I-94 Number *(if any)* | 19. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 20. What is your spouse's current status? | 21. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 22. Is your spouse in Immigration Court proceedings? ☐ Yes ☐ No | 23. If previously in the U.S., date of previous arrival *(mm/dd/yyyy)* |

**24. If in the U.S., is your spouse to be included in this application?** *(Check the appropriate box.)*

☐ Yes *(Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*

☐ No

**Your Children.** List **all** of your children, regardless of age, location, or marital status.

☒ I do not have any children. *(Skip to Part. A.III., Information about your background.)*

☐ I have children.   Total number of children: _____.

**(NOTE:** *Use Form I-589 Supplement A or attach additional sheets of paper and documentation if you have more than four children.)*

| 1. Alien Registration Number (A-Number) *(if any)* | 2. Passport/ID Card Number *(if any)* | 3. Marital Status *(Married, Single, Divorced, Widowed)* | 4. U.S. Social Security Number *(if any)* |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth *(mm/dd/yyyy)* |
| 9. City and Country of Birth | 10. Nationality *(Citizenship)* | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

**13. Is this child in the U.S. ?** ☐ Yes *(Complete Blocks 14 to 21.)*  ☐ No *(Specify location):* _____

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. *(mm/dd/yyyy)* | 16. I-94 Number *(If any)* | 17. Status when last admitted *(Visa type, if any)* |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? *(mm/dd/yyyy)* | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

**21. If in the U.S., is this child to be included in this application?** *(Check the appropriate box.)*

☐ Yes *(Attach one photograph of your child in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)*

☐ No

EOIR-000221

## Part A.II. Information About Your Spouse and Children (Continued)

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

13. Is this child in the U.S. ? ☐ Yes (Complete Blocks 14 to 21.) ☐ No (Specify location): _____

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)

☐ Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)

☐ No

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

13. Is this child in the U.S. ? ☐ Yes (Complete Blocks 14 to 21.) ☐ No (Specify location): _____

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)

☐ Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)

☐ No

| 1. Alien Registration Number (A-Number) (if any) | 2. Passport/ID Card Number (if any) | 3. Marital Status (Married, Single, Divorced, Widowed) | 4. U.S. Social Security Number (if any) |
|---|---|---|---|
| 5. Complete Last Name | 6. First Name | 7. Middle Name | 8. Date of Birth (mm/dd/yyyy) |
| 9. City and Country of Birth | 10. Nationality (Citizenship) | 11. Race, Ethnic, or Tribal Group | 12. Gender ☐ Male ☐ Female |

13. Is this child in the U.S. ? ☐ Yes (Complete Blocks 14 to 21.) ☐ No (Specify location): _____

| 14. Place of last entry into the U.S. | 15. Date of last entry into the U.S. (mm/dd/yyyy) | 16. I-94 Number (If any) | 17. Status when last admitted (Visa type, if any) |
|---|---|---|---|
| 18. What is your child's current status? | 19. What is the expiration date of his/her authorized stay, if any? (mm/dd/yyyy) | 20. Is your child in Immigration Court proceedings? ☐ Yes ☐ No | |

21. If in the U.S., is this child to be included in this application? (Check the appropriate box.)

☐ Yes (Attach one photograph of your spouse in the upper right corner of Page 9 on the extra copy of the application submitted for this person.)

☐ No

Form I-589 (Rev. 09/10/19) N  Page 3

EOIR-000222

## Part A.III. Information About Your Background

1. List your last address where you lived before coming to the United States. If this is not the country where you fear persecution, also list the last address in the country where you fear persecution. *(List Address, City/Town, Department, Province, or State and Country.)*
   *(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Number and Street *(Provide if available)* | City/Town | Department, Province, or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| Adenta | Accra *(part·time)* | | Ghana | /2012 | 06/2014 |
| Nima | Accra | | Ghana | /1982 | 06/2014 |

2. Provide the following information about your residences during the past 5 years. List your present address first.
   *(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Number and Street | City/Town | Department, Province, or State | Country | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|---|
| 1694 Davidson Ave 4A | Bronx | New York | USA | 02/2017 | Present |
| 2042 Morris Ave 2B | Bronx | New York | USA | 08/2015 | 01/2017 |
| ICE Detention | Santa Ana | California | USA | 06/2015 | 04/2015 |
| | | | | | |
| | | | | | |

3. Provide the following information about your education, beginning with the most recent school that you attended.
   *(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Name of School | Type of School | Location *(Address)* | Attended From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|---|
| Kanda High School | General Studies | Accra Ghana | /1990 | /1996 |
| Burma Camp Primary School | Primary School | Accra Ghana | /1987 | /1990 |
| | | | | |
| | | | | |

4. Provide the following information about your employment during the past 5 years. List your present employment first.
   *(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Name and Address of Employer | Your Occupation | Dates From *(Mo/Yr)* | To *(Mo/Yr)* |
|---|---|---|---|
| Self Employed, Accra, Ghana | Used Clothing Sales | | /2014 |
| | | | |
| | | | |

5. Provide the following information about your parents and siblings (brothers and sisters). Check the box if the person is deceased.
   *(NOTE: Use Form I-589 Supplement B, or additional sheets of paper, if necessary.)*

| Full Name | City/Town and Country of Birth | Current Location |
|---|---|---|
| *Mother* Adiza Mohammed | Ghana | ☐ Deceased Ghana |
| *Father* Mohammed Yaro | Nigeria | ☒ Deceased |
| *Sibling* Yussif Yaro | Nima, Accra, Ghana | ☐ Deceased Nima Accra Ghana |
| *Sibling* Fusseini Yaro | Nima, Accra, Ghana | ☐ Deceased Ghana |
| *Sibling* Sule Yaro | Nima, Accra, Ghana | ☐ Deceased Ghana |
| *Sibling* Abiba Yaro | Nima, Accra, Ghana | ☐ Deceased Ghana |

EOIR-000223

EOIR-000224

<u>PROOF OF SERVICE</u>

On December 4, 2018, I, Melissa A Malmgren, served a copy of the Respondent's Proposed Exhibit List and any attached pages by U.S. Postal service priority mail and E-Service to the Office of Chief Counsel at the following address:  ICE/DHS 26 Federal Plaza Room 1130, New York, New York 10278.

Dated: December 4, 2018

MELISSA A. MALMGREN, ESQ.
LAW OFFICE OF SANDY KHINE, PC
299 Broadway, Suite 803
New York, NY 10007
(212) 786-1500

MELISSA A. MALMGREN, ESQ.                                          NON-DETAINED
LAW OFFICE OF SANDY KHINE, PC
299 BROADWAY, SUITE 803
NEW YORK, NY 10007

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
NEW YORK, NEW YORK

| In the Matter of: | ) | |
| | ) | |
| DAVID YAW TOTIMEH, | ) | File No.: **A208 125 369** |
| | ) | |
| | ) | |
| | ) | |
| In Removal Proceedings. | ) | |

Immigration Judge: **Cathy Sagesse**      Next Individual Hearing:
                                          December 6, 2019 at 9:00 A.M

**RESPONDENT'S PROPOSED EXHIBITS**



EXHIBIT # 7

DEC 06 2019

IMMIG.                    CRT

EOIR-000226

**DAVID YAW TOTIMEH (A208 125 369)**

## TABLE OF CONTENTS

PAGE(S)

**Exhibit H      Birth Certificate of Respondent**..........................................................................271

**Proof of Service** ...................................................................................................................272

EOIR-000227

H

EOIR-000228

E16/ 0501854



**Republic of Ghana**

No: 021501-3074-2018

# CERTIFIED COPY OF ENTRY IN REGISTER OF BIRTHS

| | | |
|---|---|---|
| **Entry No.** 3074 | **Registry:** MADINA-L.N.M.A | |

| | | |
|---|---|---|
| **CHILD's NAME** (Name in full. Write first names first and surname last) | ALHASSAN MOHAMMED YARO | **Sex** MALE |

| | | |
|---|---|---|
| **FATHER** | **Name:** | MOHAMMED YARO |
| | **Occupation:** | TRADER |
| | **Nationality:** | GHANA |
| | **Religion:** | MOSLEM |
| **MOTHER** | **Maiden Name:** | ADIZA MOHAMMED |
| | **Nationality:** | GHANA |

| | |
|---|---|
| **When Born** | 21ST AUGUST 1979 |
| **Where Born** (Write address in full) | LADIES MATERNITY HOME MADINA LA-NKWANTANANG, GREATER ACCRA REGION |
| **INFORMANT** (Name in full. Relationship to the child, if any) | ADIZA MOHAMMED MOTHER |
| **Date of Registration** | 17TH JULY 2018 |
| **Signature of Registrar** | AUGUSTINE KWESI YENTUMI |
| **Margin** | DRA/0215/13/07/18/1298/RRA/16/07/18/47343 |

I ___ SETH BOSOMPEM KISSI ___ **Registrar of Births and Deaths**

for Ghana do hereby certify that the foregoing is a true copy of the entry No. ___ 3074 ___ in the

Register of Births for ___ MADINA-L.N.M.A ___ in the ___ LA NKWANTANANG MUNICIPAL ASSEMBLY ___

Registration District in Ghana, and the Register is now legally in my custody.

Given under my hand and Seal in Accra in Ghana this ___ 20TH ___ day of ___ JULY 2018 ___

**Registrar of Births and Deaths**

L.S.

EOIR4000229

## PROOF OF SERVICE

On November 7, 2019, I, Melissa A. Malmgren, served a copy of the Respondent's Proposed Exhibits and any attached pages by U.S. Postal Service Priority Mail to the Office of Chief Counsel at the following address: ICE/DHS 26 Federal Plaza Room 1130, New York, New York 10278.

Dated: November 7, 2019

MELISSA A. MALMGREN
LAW OFFICE OF SANDY KHINE, PC
299 Broadway, Suite 803
New York, NY 10007
(212) 786-1500

272

MELISSA A. MALMGREN, ESQ.
LAW OFFICE OF SANDY KHINE, PC
299 BROADWAY, SUITE 803
NEW YORK, NY 10007

NON-DETAINED

# UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
### IMMIGRATION COURT
### NEW YORK, NEW YORK

In the Matter of:                )
                                 )
**DAVID YAW TOTIMEH,**           )        File No.:    **A208 125 369**
                                 )
                                 )
                                 )
      In Removal Proceedings.    )

Immigration Judge:                       Next Individual Hearing:
                                         December 6, 2019 at 9:00 A.M

### RESPONDENT'S PROPOSED EXHIBITS

EXHIBIT #

DEC 06 2019

IMMIGRATION COURT
NYC

**DAVID YAW TOTIMEH (A208 125 369)**

## TABLE OF CONTENTS

PAGE(S)

**Exhibit F**    **Corroborating Affidavit** ........................................................ 243-244

Affidavit of Bright Kuevor with copy of Republic of Ghana Driver License .....243

**Exhibit G**    **Country Condition Reports** ................................................. 245-269

**Chronic Poverty Research Center**, *Challenges and opportunities in inheritance rights in Ghana* (February 2011), available at http://www.chronicpoverty.org/uploads/publication_files/PN%20Inheritance-Ghana.pdf [last accessed November 6, 2019].......................................................245

"Customary law governs the majority of Ghanaians' cases of intestate (no will) inheritance due to customary governance of land and the limited reach of statutory structures. Land in Ghana belongs to lineage groups and therefore cannot be inherited without the approval of customary governance bodies."

"Lack of awareness, illiteracy, and time and financial costs are most often cited as the key obstacles to people in accessing their rights as laid out in statutory law."

"Local leaders are often the first to be approached when claims or disputes arise. Yet, this does not mean that access is easy or equitable."

"Who is included and excluded from inheriting particular assets depends on legal property rights, as well as cultural norms concerning social roles and relationships."

**The Institute of Economic Affairs**, *Survey Report on Key Socio-Economic and Governance Issues in Ghana* (May 2016), pp. i-xiii, available at https://ieagh.org/wp-content/uploads/2017/02/IEA-Socio-Economic-Survey-Main-Report-19-01-17-Final-Edits.pdf [last accessed November 6, 2019] .......255

"Only 24.8% of respondents who experienced theft, physical attack, burglary or had anything stolen from them at home reported the incident to the police."

"More than seven out of every ten (74.3%) respondents who suffered physical attack or burglary and did not report to the police had various reasons for not doing so. Notable among the reasons are that they did not have enough time to report crimes (13.8%); they thought that it was a waste of time through repeated visits (27.9%) while 12.5% said that there was no police man or police station in the area or the nearest police station too was far."

EOIR-000232

**DAVID YAW TOTIMEH (A208 125 369)**

PAGE(S)

"The police are found to be the least trusted institution out of the 10 institutions covered in the survey. About 46% of respondents had no trust at all in the police. The ruling party (39.8%), the judiciary (38%) and the tax department (38%) also had no trust at all from the public."

**Proof of Service** ..................................................................................................**270**

EOIR-000233

F

IN THE SUPERIOR COURT OF JUDICATURE

IN THE HIGH COURT OF JUSITCE

ACCRA-GHANA, A.D. 2019

-------------------------------------------------

AFFIDAVIT BY BRIGHT KUEVOR TESTIFYING IN

WITNESS TO ALHASSAN MOHAMMED YARO

-------------------------------------------------

I, BRIGHT KUEVOR of house number E233/10, Accra Newtown in the Greater Accra Region of the Republic of Ghana do hereby solemnly and sincerely depose as follows:-

1. That I am the Deponent herein and a Ghanaian by birth and nationality.

2. That Alhassan Mohammed Yaro has been my sales agent; thus promoting my sales business until he breafed me with a very tragic storey of his sibblings threting his life on a land issue.

3. That he had to flee the country due to persistent threats on his life and since he was very intrumental to me, his absence has reduced my sales..

4. That I now learnt he is in the United States of America and allthat I can say is , he is a good and serviceas able gentelemen ..

5. That I pray the United States authroritie s to give him assylum since his return will mean the end of his life, as I see things here.

WHEREFORE, I depose to these facts to the best of my knowledge and be lief.

SWORN AT ACCRA THIS 29TH )
)
DAY OF JULY, 2019 )



D E P O N E N T

BEFORE ME,



COMMISSIONER FOR OATHS.

243



REPUBLIC OF GHANA
DRIVER LICENSE

**KUEVOR BRIGHT**

10/10/1983    KUEV-101083-01-01

GR1

0000000000    GHANAIAN
              AB

06/05/2018  06/05/2022  05/05/2018

05/05/2010    G1727310



| CLASS/TYPES | | DESCRIPTION/CLASS | Categories (in Kgs)/CC |
|---|---|---|---|
| A | | MOPEDS, WITH OR WITHOUT SIDE CARS | 50-250CC AND ABOVE |
| B | | CARS AND 4 X 4 CROSS COUNTRY VEHICLES | CARS NOT EXCEEDING 3000 Kg |
| C | | GOODS CARRYING VEHICLES & BUSES / COACHES | VEHICLES OF 3000-5500 Kg (1-33 PASSENGERS) |
| D | | GOODS CARRYING VEHICLES & BUSES / COACHES | VEHICLES NOT EXCEEDING 8000 Kg |
| E | | GRADERS, LOADERS, FORKLIFTS, TRACTORS, BULLDOZERS, DUMPERS AND ROLLERS | SPECIAL |
| F | | GOODS CARRYING VEHICLES & BUSES / COACHES AND HEAVY ARTICULATOR VEHICLES | VEHICLES OVER 8000 Kg |

THIS LICENCE IS THE PROPERTY OF THE GOVERNMENT OF THE REPUBLIC OF GHANA

29/7/2019

CERTIFIED TRUE COPY
VINCENT DE PAUL BAZOR
COMMISSIONER FOR OATHS

244

G

EOIR-000237



**Chronic Poverty Research Centre**

# Policy Notes

## February 2011

# Challenges and opportunities in inheritance rights in Ghana

## Summary

- Customary law governs the majority of Ghanaians' cases of intestate (no will) inheritance due to customary governance of land and the limited reach of statutory structures.

- Land in Ghana belongs to lineage groups and therefore cannot be inherited without the approval of customary governance bodies. Policy and practical engagement with customary leaders to ensure protection of the land rights of vulnerable individuals, such as widows without children or very young orphaned children, is critical.

- Property and inheritance rights of individuals in cohabiting unions without registered marriages are not protected by statutory law in Ghana, which leaves many women's livelihoods insecure upon a union's dissolution or death of the male partner.

- Ghana's Intestate Succession Act requires revision to reflect current realities. A revised law must set out simple procedures to protect the inheritance rights of women and children.

- Decentralised access to administrative and judicial services is important to provide basic forms of support and protection for individuals to safeguard their rights, such as birth and marriage registrations, and alternative dispute resolution mechanisms.

## Introduction

Inheritance is a major means for the transfer, or exclusion from the transfer, of people's accumulated physical capital. The transfer of physical assets from the parent to the child generation can provide the start-up material for the younger generation's more independent future livelihoods and economic productivity (Fafchamps and Quisumbing, 2005). However, exclusion from assets inheritance can exacerbate vulnerability to chronic poverty and the intergenerational transmission of poverty (Bird et al., 2004).

In some countries, inheritance laws and customary practices can exclude individuals, and specifically women and orphaned children, from inheriting the property (including land, housing and other productive resources) that they had access to while their husbands or fathers were alive (see Cooper, 2008 and 2010).

This has been linked to economic decline and poverty traps (Bird et al., 2004; Human Rights Watch, 2003; Strickland, 2004). Reforming statutory and customary systems can address gender discrimination in inheritance practices (Benschop and Sait, 2006; Bird et al., 2004; Davies, 2005; Mutangadura, 2004; Rose, 2006). This is happening in many Sub-Saharan African countries, with several states recently amending their statutory laws, and rights-based organisations taking various initiatives to improve equity in inheritance practice. Nevertheless, much remains to be done to address the links between inheritance rights and practices and poverty.

This Policy Note presents findings from a five country study commissioned by the Chronic Poverty Research Centre, which explored how inheritance is practised to enhance or

EOIR-000238